IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION



FILED
JUN - 5 2018
CLERK, US DISTRICT COURT
NORFOLK, VA

LATASHA HOLLOWAY,

    plaintiff,

vs.                      ACTION NO. 2:18-cv-69 AWA-RJK

CITY OF VIRGINIA BEACH, VIRGINIA,

    defendant.

**REPLY OBJECTION AND MEMORANDUM OF LAW IN SUPPORT
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

COMES NOW the Plaintiff, Latasha Holloway, prose, [FRCP] 28 U.S.C. § 1654 and respectfully files her reply objection to the Defendant's motion to dismiss, and in support therefore submits the following:

### I. Background

On November 20, 2017, Plaintiff an African-American registered voter and resident of Virginia Beach, filed her vote dilution and ADA discrimination complaint against the Virginia Beach City Council, alleging that the City's at-large system discriminate against and deprive or tend to deprive African-Americans and other "ethnic minorities" by reason it unfairly dilutes or

minimizes their voting strength" and consistently deprives them an equal opportunity to elect candidates of their choice in violation of Section 2 of the Voting Rights Act of 1965, as amended 42 U.S.C. §1973 et. seq., 42 U.S.C. §1983, the First, Fourteenth and Fifteenth Amendments to the United States Constitution through adoption in the 1906-1962 city charter of the at-large elections scheme as a means to promote racially discriminatory objectives "white-supremacy". The complaint also, alleges the City deprives elderly individuals and all people with disabilities basic accessible or alternate polling places in elections, in violation of the Voting Rights Act of 1965, as amended 42 U.S.C. §1973, 42 U.S.C. §1983, Title II of the Americans with Disabilities Act (ADA), the Voting Accessibility for the Elderly and Handicapped Act of 1984 (VAEHA), and of the First, Fourteenth and Fifteenth Amendments to the United States Constitution while acting under color of state law.

---

I. **TAKE JUDICIAL NOTICE**: Plaintiff alleges that her minority group is politically cohesive and has been consistently denied the election of its preferred candidates by the white majority's use of bloc voting techniques, and that African-American voters are "sufficiently geographically compact to constitute a majority in a reasonably drawn balancing voting district." See. e.g. McDaniels v. Mehfoud, 702 F. Supp. 588, 592 (E.D. Va. 1989). Virginia Const. Art. VII, § 5.

## II. <u>Plaintiff's First Cause of Action</u>

The change in the election system of Virginia Beach took place in several stages, during the period 1906-1962, under the authorization of <u>Virginia Acts</u> (1916), Chapter 55, Virginia Beach Voters supported the creation of a local government plan embodied in state law under which the City of Virginia Beach, Virginia, was consolidated with Princess Ann County in 1963, to form seven boroughs, which vary considerably in population.

Under the Seven-Four Plan of the amended charter involved herein, the new city council consists of 11 members, each of whom is elected at large. Four are elected without regard to residence; each of the seven others must reside in a different borough.

Virginia Beach was chartered as a municipal corporation by the General Assembly of Virginia on January 1, 1963. The city currently operates under the council-manager at-large form of government.

---

III. **TAKE JUDICIAL NOTICE**: It should be noted in 1967, the Court did not address invidious discrimination in voting, it was held the City's plan made no distinction based on race, creed, or economic status or location and the charter was local, and not one for a three-judge court; and this Court in 1967, did address vote dilution and dismissed Lincoln for failure to prosecute. <u>Moody v. Flowers</u>, ante, p. 387 U. S. 97, followed. P. 387 U.S. 114. <u>Dusch v. Davis,</u> 387 U.S. 112, May 22, 1967. See <u>Lincoln v. City of Virginia Beach,</u> No. 2:97cv756(E.D. V.A. Dec. 29, 1997).

Those favoring the new system won a handy majority in the required popular referendum held in November, 1917. As a result in February, 1918, the legislature approved an act implementing at-large election schemes: <u>Virginia Acts</u> (1918), Chapter 34.

The purpose behind the council-manager at-large apartheid scheme, if we were to accept the public statements of its proponents, were those commonly expressed during the "Progressive period:"

a) Ward elections produced "boss rule" and corruption.

b) The the council-manager at-large apartheid form of Government were more "efficient" and "business-like" than the traditional mayor-council system.

c) At-large elections were more "representative" than ward elections in the sense that every voter in the city had an opportunity to cast a ballot for every office to be filled, not just those to be chosen by the residents of his particular ward.

---

I. This suit was filed here in 2017 by an African-American citizen of Virginia Beach, alleging that the "at-large system of electing members of the Virginia Beach City Council unlawfully diluted African-American and other minorities voting strength in violation of Section 2 of the Voting Rights Act of 1965, As amended in 1982, 42 U.S.C. § 1973. <u>Thornburg v. Gingles</u>, 478 U.S. 30, 106 S. Ct. 2752, 92 L. Ed. 2d 733 (1986) <u>City of Norfolk v. Collins</u>, 498 U.S. 938, 111 S. Ct. 340, 112 L. Ed. 2d 305 (1990).

d) The existing separate political subdivisions between Virginia Beach and Princess Anne County were malapportioned. (This could, of course, have been remedied by re-drawing district lines.)

Often acknowledged was an additional consideration that reflects an awareness of the differential electoral impact of at-large systems: city-wide voting of electing businessmen to office. The Chief institutional force behind the change of government in Virginia Beach was, predictably, the Chamber of Commerce.

There was a significant racial ingredient in Virginia Beach's decision to end separate political subdivisions between Virginia Beach and Princess Anne County elections and impose an exclusively at-large scheme, which has operated for over five-decades, 56 years to deprive Plaintiff and others similarly situated equal treatment and an opportunity to vote for a candidate of their choice in violation of Section 2 of the Voting Rights Act of 1965, as amended 42 U.S.C. §1973 et. seq., 42 U.S.C. §1983, and the First, Fourteenth and

Fifteenth Amendments to the United States Constitution through adoption in the 1906-1962 city charter of the at-large elections as a means to promote racially discriminatory objectives.

African-Americans and ethnic minorities similarly situated continue to register and vote in Virginia Beach, although in much smaller numbers, after the implementation of the 1902 Virginia Constitution. Precise registration figures are hard to find, but as late as 1910 African-Americans and ethnic minorities voted in significant numbers in predominately minority political subdivisions, both in the Democratic primary and in the general elections.

In 1912 Virginia adopted a "white primary law," allowing the Democratic Party to set the requirements for voting in its primary elections, with the understanding that it would restrict the ballot of whites. Andrew Buni, The Negro in Virginia Politics, pp. vii , 60-63.

---

II. **TAKE JUDICIAL NOTICE**: When Virginia Beach incorporated in the early 1900s, its boundaries skirted the heavily black community of Seatack. Even now, few blacks live in the original resort strip. In the 2000 U.S. census, 5.4 percent of the resort area's population was black.

III. Plaintiff's Second Cause of Action

Within the overall City's at-large election district, African-American voting age population in Beechwood, Gracetown, New Light, Doyletown, Queen City, Great Neck and Burton Station, included but not limit thereto; is sufficiently large and geographically compact to constitute a 50% majority and/or Seven majority single-member districts. See. e.g. McDaniels v. Mehfoud, 702 F. Supp. 588, 592 (E.D. Va.1989). Virginia Const. Art. VII, § 5.

The City's at-large scheme consistently deprives minorities of equal treatment and an opportunity to vote for a candidate of their choice as guaranteed by the Voting Rights Act, 1965, as amended, 42 U.S. C. §1973, et. seq., 42 U.S.C. §1983, the First, Fourteenth and the Fifteenth Amendment to the United States Constitution while acting under color of state law. See Thornburg v. Gingles, 478 U.S. 30 (1986). Brown v. Thomas, 462 U.S. 835, 842-43 (1983).

---

III. **TAKE JUDICIAL NOTICE**: Plaintiff has shown that a minority representation district can be drawn "in a manner that complies 'with the overriding demands of the Equal Protection Clause. Sanchez v. Colorado, 861 F. Supp. 1516, 1523 (D. Colo. 1994)).

## IV. Plaintiff's Third Cause of Action

The City Council lacks any meaningful proportionate representation, because it does not have an African-American member, and never had a "minority mayor" or "vice-mayor" since it became an incorporated town in 1906, and gained status as an independent city in 1952, seven of the 11 council members represent districts, they must win the citywide vote, too. The other three council members and mayor are elected at-large from candidates residing anywhere within the City, that has the purpose and effect of denying or abridging the rights of African-Americans, ethnic and linguistic minorities to vote on account of race or color in violation of Section 2 of the Voting Rights Act of 1965, as amended 42 U.S.C. § 1973 et. seq., 42 U.S.C. § 1983, the First, Fourteenth and Fifteenth Amendments to the United States Constitution.

---

I. **TAKE JUDICIAL NOTICE**: Plaintiff alleges that from 1906 until 1986 every member of Virginia Beach's city council to hold office was white. In 1986 John Richard Logan Perry, was the first Black elected to Council until 1990, Louisa M. Strayhorn was the first Black female from 1994-1998, and Dr. Amelia Ross-Hammond was the second Black female from 2013 until 2016, and from that time, until this reply objection was filed, the council had no black member. In an at-large system, the majority always has the strength to elect all of its candidates. By taking a historical white bloc voting analysis into consideration, it provides a more accurate portrayal of vote dilution or compelling evidence that the system is operating to dilute black votes. Gingles, 478 U.S. at 56, 106 S.Ct. at 2769.

V. Plaintiff's Fourth Cause of Action

The white majority can vote for candidates anywhere within the City's at-large election district, that precludes a African-Americans choices from having any bearing or significant meaning in an election on par with white voters in the same election, that has the effect of consistently diluting or minimizing blacks, "ethic minorities and linguistic minorities voting strength" in violation of Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S. C. §1973, et. seq., 42 U.S.C. §1983, the First, Fourteenth and Fifteenth Amendments to the United States Constitution and laws.

VI. Plaintiff's Fifth Cause of Action

The white majority can vote for candidates anywhere within the City's at-large election district, that precludes African-Americans choices from having any bearing or significant meaning in an election on par with white voters in the same election, that has the consistent effect of diluting or minimizing blacks, minorities and linguistic minorities" voting strength"

in violation of Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S. C. §1973, et. seq., 42 U.S.C. §1983, the First, Fourteenth and Fifteenth Amendments to the United States Constitution and laws. See Virginian-Pilot, September 8, 2009, News pp 1.

**Checkered History: For Va. Beach blacks, power still elusive.**

**Sept. 8, 2009**

**By Deirdre Fernandes**

**Exhibit (A) In Support:**



https://pilotonline.com/news/article_4eaaf0c4-0c3d-5722-9e67-1e72606620c0.html

---

I. **TAKE JUDICIAL NOTICE**: It should be noted the Defendant must be rejected because it has not denied that the City's at-large election district does not discriminate or unfairly dilutes or minimizes the voting strength of African-Americans and other "ethnic minorities" in violation of Section 2 of the Voting Rights Act of 1965, as amended 42 U.S.C. §1973 et. seq., Id.

VII. Plaintiff's Sixth Cause of Action

The plaintiff alleges the City of Virginia Beach, Virginia (the "City") voting precincts, #0005 Seatack, #0034 Blackwater, #0030 Red Wing, #0011 Cape Henry, #0002 South Beach, #0055 Magic Hollow, including but not limited to #0072 Rudee, lack adequate handicapped parking and basic accessible or alternate polling places in elections, which discriminate against and deprive or tend to deprive people with disabilities because of their disability, that has had a disparate impact against elderly individuals and all people with disabilities, in violation of the Voting Rights Act of 1965, as amended 42 U.S.C. §1973, 42 U.S.C. §1983, Title II of the Americans with Disabilities Act (ADA), and the Voting Accessibility for the Elderly and Handicapped Act of 1984 (VAEHA), and of the First, Fourteenth and Fifteenth Amendments to the United States Constitution while acting under color of state law.

---

**VII. TAKE JUDICIAL NOTICE:** This action alleges disparate impact discrimination. Intent to discrimination is not an element of disparate impact discrimination. The Plaintiff does not allege that the City of Virginia Beach has intentionally discriminated against any person or group or persons under Title VII.

June 5, 2018

/s/ *signature*

Ms. Latasha Holloway
3683 Windmill Drive
Virginia Beach, Virginia 23453
(757) 348-0456

**CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2018, a true copy of the foregoing was mailed to Mark D. Stiles Counsel for defendants, City Attorney Office of the City Attorney 2401 Courthouse Dr Building 1 Virginia Beach, Virginia 23456.(757)385-5687 mstiles@vbgov.com

*signature*

Ms. Latasha Holloway
3683 Windmill Drive
Virginia Beach, Virginia 23453
(757) 348-0456