# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# NORFOLK DIVISION

| | |
|---|---|
| LATASHA HOLLOWAY ) <br> and GEORGIA ALLEN, ) <br>   ) <br>     Plaintiffs, ) <br>   ) <br> v. ) <br>   ) <br> CITY OF VIRGINIA BEACH, ) <br> VIRGINIA BEACH CITY COUNCIL, ) <br> LOUIS JONES, JAMES WOOD, ) <br> JESSICA ABBOTT, BEN DAVENPORT, ) <br> ROBERT DYER, BARBARA HENLEY, ) <br> SHANNON KANE, JOHN MOSS, ) <br> JOHN UHRIN, and ROSEMARY WILSON, ) <br> in their official capacity as members of the ) <br> Virginia Beach City Council, ) <br> DAVID L. HANSEN, in his official capacity as ) <br> City Manager, and DONNA PATTERSON, ) <br> in her official capacity as Director of Elections/ ) <br> General Registrar for the City of Virginia ) <br> Beach, ) <br>   ) <br>     Defendants. ) | Case No.: 2:18-cv-00069 |

_____

## AMENDED COMPLAINT
_____

NOW COME, Plaintiffs Latasha Holloway and Georgia Allen, by their undersigned attorneys, and complain of Defendants City of Virginia Beach, Virginia Beach City Council, Louis Jones, James Wood, Jessica Abbott, Ben Davenport, Robert Dyer, Barbara Henley, Shannon Kane, John Moss, John Uhrin, Rosemary Wilson, in their official capacity as members of the Virginia Beach City Council, David L. Hansen, in his official capacity as City Manager, and Donna Patterson, in her official capacity as Director of Elections/General Registrar for the City of Virginia Beach, as follows:

## I. INTRODUCTION

1. This action challenges the at-large election system used to elect members of the City Council of Virginia Beach ("City Council") and seeks to replace it with a system in which Black, Hispanic or Latino, and Asian American voters are together able to elect their preferred candidates of choice to the City Council. The current at-large scheme impermissibly denies Black, Hispanic or Latino, and Asian-American voters ("Minority Voters") an equal opportunity to participate in the political process and to elect representatives of their choice, in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301 ("Section 2"). *Thornburg v. Gingles*, 478 U.S. 30 (1986).

2. The City Council is the governing authority in Virginia Beach. The City Council makes decisions that profoundly affect the health, well-being, and livelihood of Virginia Beach residents.

3. The City of Virginia Beach is the largest city in Virginia. The City has used an at-large voting system to elect members to the City Council since 1966.

4. The demographics of Virginia Beach have changed tremendously since 1966. The percentage of minorities in the City has more than doubled since the 1970 census, yet only six minority candidates have *ever* been elected to the City Council and no Black candidate has ever been re-elected to serve a second term.

5. According to the 2010 Census, minorities constitute 31.6% of the total population in Virginia Beach and Non-Hispanic Blacks constitute 19.0% of the total population. According to the 2012-2016 American Community Survey, the Non-Hispanic White citizen voting age population ("CVAP") was 69.3%, the Non-Hispanic Black CVAP was 18.3%, the Non-Hispanic Asian CVAP was 5.2%, and the Hispanic CVAP was 4.8%.

6. Yet, Minority Voters in Virginia Beach have been prevented from participating fully in City Council elections because of the way that councilmembers are elected. That election method, in which all councilmembers are elected at-large in citywide elections, unlawfully dilutes the voting strength of Minority Voters and prevents them from electing their candidates of choice to the City Council.

7. The City Council has eleven members. Because voting is racially polarized—white voters as a group and Minority Voters as a group usually prefer different candidates—the at-large method of election has regularly functioned to deprive almost one-third of the city's voting age population from electing candidates of their choice to any of the eleven seats on the City Council.

8. The consistent defeat of minority preferred candidates would not occur if the City Council were elected using ten single-member voting districts and one at-large mayoral race. The minority citizen voting age population is sufficiently large and geographically compact to constitute a majority in at least two single-member districts that would be likely able to elect their candidates of choice to the City Council; the City's Minority Voters are politically cohesive; and the City's white citizen voting age majority votes sufficiently as a bloc to enable it usually to defeat Minority Voters' preferred candidates. Because of these circumstances, as well as the historical, socioeconomic, and electoral conditions in Virginia Beach, the at-large election method for the City Council violates Section 2 of the Voting Rights Act, 52 U.S.C. § 10301 ("Section 2"). *Thornburg v. Gingles*, 478 U.S. 30 (1986).

9. For these reasons, Plaintiffs respectfully pray for this Court to issue: (1) a declaratory judgment that the at-large election system for electing members to the City Council violates their civil rights by unlawfully diluting the voting strength of Minority Voters; (2) an

injunction against the further use of at-large elections for the City Council; (3) an order requiring future elections for the City Council to be conducted under a method that complies with the Constitution and the Voting Rights Act; (4) an award to Plaintiffs of costs, reasonable attorneys' fees, and litigation expenses incurred in bringing this action; and (5) further relief as the Court deems just and equitable.

## II. JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to (1) 28 U.S.C. § 1343(a), because this action seeks to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the Voting Rights Act; and (2) 28 U.S.C. § 1331, because this action arises under the laws of the United States.

11. This Court has jurisdiction to grant both declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

12. This Court has personal jurisdiction over the Defendants.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## III. PARTIES

14. Plaintiff LATASHA HOLLOWAY is a Black registered voter, and a resident of Virginia Beach, Virginia.

15. Plaintiff GEORGIA ALLEN is a Black registered voter, and a resident of Virginia Beach, Virginia. In 2008, Plaintiff Allen was an unsuccessful candidate for an at-large seat on the City Council, despite being the candidate of choice of Minority Voters.

16. Defendant CITY OF VIRGINIA BEACH, a municipal corporation established under the laws of Virginia, is the governing authority of Virginia Beach. Va. Code Ann. §§ 15.2-

1100 to 1131. The City of Virginia Beach is located in southeastern Virginia, and is a political subdivision within the meaning of and subject to the requirements Section 2 of the Voting Rights Act.

17. Defendant VIRGINIA BEACH CITY COUNCIL is the governing body of the City of Virginia Beach.

18. Defendants LOUIS JONES, JAMES WOOD, JESSICA ABBOTT, BEN DAVENPORT, ROBERT DYER, BARBARA HENLEY, SHANNON KANE, JOHN MOSS, JOHN UHRIN, and ROSEMARY WILSON are members of the Virginia Beach City Council. Each councilmember is sued in his or her official capacity only.

19. Defendant DAVID L. HANSEN is the City manager for Defendant Virginia Beach. He is sued in his official capacity only.

20. Defendant DONNA PATTERSON is the Director of Elections/General Registrar for the City of Virginia Beach, responsible for conducting City Council elections, maintaining current registration and elections process for Virginia Beach voters, and ensuring compliance with state and federal voting laws. She is sued in her official capacity only.

## IV. FACTS AND BACKGROUND

**A. The City Council of Virginia Beach**

21. The eleven-member City Council is the governing body for the City of Virginia Beach. The Mayor and the other ten councilmembers are elected at-large to four-year staggered terms. Seven of the eleven councilmembers are required to be residents of the seven districts in Virginia Beach (Bayside, Beach, Centerville, Kempsville, Lynnhaven, Princess Anne, and Rose Hall) but are nonetheless elected at-large. The other four seats, including the Mayor, are elected at-large with no residency requirements.

22. Upon information and belief, elections in Virginia Beach are nonpartisan but candidates often have party affiliations.

23. Virginia Beach operates under a council-manager system of government in which the City Council appoints the City Manager, who is the executive and administrative head of the City, and serves at the pleasure of the Council. The City Manager has the power and the duty to appoint all officers and employees of the City, delegate power to such appointees, and remove his subordinates.

24. The most recent election for seats on the City Council took place on Nov 6, 2018. The next scheduled City Council election will be on November 3, 2020.

**B. Section 2 of the Voting Rights Act**

25. Section 2, 52 U.S.C. § 10301(a), prohibits any "standard, practice, or procedure" that "results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color[.]" A violation of Section 2 is established if it is shown that "the political processes leading to [a] nomination or election" in the jurisdiction "are not equally open to participation by [minority voters] in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." *Id.* § 10301(b).

26. Section 2 prohibits the use of an electoral scheme that dilutes the voting strength of minority voters and thereby deprives them of an equal opportunity to elect representatives of their choice.

27. In Virginia Beach, the at-large method of election for the City Council submerges Minority Voters so that they are rendered ineffective electoral minorities in most elections.

28. The at-large method of election for the City Council violates Section 2 because it denies Virginia Beach's Minority Voters an equal opportunity to participate in the political process and elect councilmembers of their choice.

29. It also violates Section 2 because it dilutes the vote of all Virginia Beach Minority Voters.

C. **Virginia Beach Demographics**

30. Virginia Beach is located in southeastern Virginia. It is the largest city in Virginia with 450,435 residents.

31. Virginia Beach's Black population has grown over the past five decades, from 9.1% in 1970 to 20.2% in 2017. Over the same period, the non-Hispanic white population declined from 90.0% in 1970 to 61.7% in 2017.

32. The Latino and Asian populations have similarly increased over the past several decades in Virginia Beach. The 1970 Census indicates that all races besides white and Black made up 0.9% of the population. Now, Latinos make up 8.2% of the population in Virginia Beach and Asians make up 7.2% of the population.

33. There is a significant minority population in the northwest part of Virginia Beach.

34. According to the 2010 Census, the Non-Hispanic White voting age population ("VAP") was 67.4%, the Non-Hispanic Black VAP was 18.1%, the Non-Hispanic Asian VAP was 6.3%, and the Hispanic VAP was 5.6%

35. According to the 2012-2016 American Community Survey, the Non-Hispanic White citizen voting age population ("CVAP") was 69.3%, the Non-Hispanic Black CVAP was 18.3%, the Non-Hispanic Asian CVAP was 5.2%, and the Hispanic CVAP was 4.8%.

36. The population and the racial demographics for Virginia Beach, which are the basis for Plaintiffs' demonstrative redistricting plan, are summarized in the following table:

**Table 1 – Virginia Beach Population by Race**

| Demographic | Total Population (2010) | | Voting Age Population (2010) | | Citizen Voting Age Population (2012-2016) | |
|---|---|---|---|---|---|---|
| | (number) | (%) | (number) | (%) | (number) | (%) |
| NH White | 282,470 | 64.5% | 224,188 | 67.4% | 220,002 | 69.3% |
| NH Black | 83,210 | 19.0% | 60,212 | 18.1% | 58,169 | 18.3% |
| NH Asian | 26,312 | 6.0% | 20,978 | 6.3% | 16,648 | 5.2% |
| Hispanic or Latino | 28,987 | 6.6% | 18,765 | 5.6% | 15,197 | 4.8% |

**D. Virginia Beach City Council Election History**

37. Minority candidates for the Virginia Beach City Council have had little electoral success.

38. Upon information and belief, in the entire history of Virginia Beach, only five Black City Council candidates (Aaron Rouse, Sabrina Wooten, Dr. Amelia Ross-Hammond, Louisa M. Strayhorn, and John L. Perry), one Asian-American candidate (Ron A. Villanueva), and no Latino candidates have been elected to the City Council.

39. Prescott Sherrod, an African-America businessman in Virginia Beach, was appointed to the City Council in 2011 and was not re-elected to this seat six months later, despite being the minority candidate of choice.

40. Upon information and belief, over that same time period, 72 white councilmembers were elected or appointed to the City Council.

8

41. John L. Perry, Louisa M. Strayhorn, Prescott Sherrod, and Dr. Amelia Ross-Hammond were not re-elected and each served only one term.

42. Aaron Rouse and Sabrina Wooten were elected to the City Council on November 6, 2018 and have not yet stood for re-election.

43. In 1986, John L. Perry was elected as the representative of the Bayside District, becoming the first Black candidate to hold a seat on the City Council.

44. Louisa M. Strayhorn was elected in 1994, becoming only the second Black candidate to hold a City Council seat in Virginia Beach.

45. In 1998, when Louisa M. Strayhorn ran for reelection, upon information and belief, she faced death threats and other forms of intimidation.

46. A newspaper article quoted Louisa M. Strayhorn on the troubling memories of her failed attempt at re-election and the racist backlash from Virginia Beach residents: "I had phone calls saying, 'We're going to make sure that nigger doesn't get elected.' After the election, people would drive by and say, 'See, nigger, we said we'd get you.'"[1]

47. In 2016, Dr. Amelia Ross-Hammond lost reelection to Jessica Abbot, a 27-year-old white candidate. White bloc voting contributed to Abbot's victory.

E. **The At-Large Scheme Prevents Minority Voters from Electing Their Candidates of Choice Under *Thornburg v. Gingles*.**

48. In *Gingles*, the United States Supreme Court identified three necessary preconditions ("the *Gingles* preconditions") for a claim of vote dilution under Section 2:

> (1) The minority group must be "sufficiently large and geographically compact to constitute a majority in a single-member district";

---

[1] Bruce Murphy, *Even in the Most Integrated City, Race Is Still a Thorny Issue*, MILWAUKEE J. SENTINEL (Jan. 14. 2003), http://mumford.albany.edu/census/2003newspdf/jsonlineSeries/011403MURPHYjsonline.pdf.

(2) The minority group must be "politically cohesive"; and

(3) The majority must vote "sufficiently as a bloc to enable it . . . usually to defeat the minority's preferred candidate." 478 U.S. at 50, 51 (citation omitted).

Each of these preconditions exist here.

49. Virginia Beach's minority population is sufficiently numerous and geographically compact to form a majority of the total population and citizen voting age population in at least two single-member City Council districts in a demonstrative 10-district plan *See* Exhibit A.

50. Plaintiffs Allen and Holloway live within the boundaries of a potential majority-minority district. *See* Exhibit A (Plaintiffs' residences are marked by stars indicating their location within the bounds of the demonstrative map).

51. A statistical analysis demonstrates that voting patterns in the City Council elections are racially polarized, with Minority Voters consistently voting for a particular (often Black) candidate of choice. White bloc voting in support of their preferred candidates has repeatedly led to the defeat of candidates preferred by Minority Voters.

52. Virginia Beach's Minority Voters are politically cohesive.

53. Hispanic and Asian voting patterns track Black voting patterns. Hispanic-white vote polarization tends to be greater than Black-white vote polarization. Asian-white voter polarization is statistically indistinguishable from Black-white vote polarization.

54. Together, Minority Voters vote overwhelmingly for different candidates than those supported by white voters. This is true even when two Black candidates run against each other and one is not the Black voters' candidate of choice. This is also true when there is no white bloc voting, *see* discussion of Chuck Smith *infra ¶* 58.

55. Black, Hispanic, and Asian voters vote together as a coalition, and not just for minority candidates in general.

56. Whatever costs are borne by Black voters in the current at-large election system is shared by Hispanic and Asian voters: minority candidates that are strongly preferred by Black, Hispanic, and Asian voters are systematically losing elections.

57. Virginia Beach's white electorate votes as a bloc in support of different candidates than those supported by Minority Voters. Bloc voting by white members of the electorate routinely defeats candidates preferred by Minority Voters.

58. In the past five elections (2010-2018), 22% (16 out of 74) of all City Council candidates were Black, yet only three out of twenty-two winning candidates (14%) were Black:[2] Dr. Amelia Ross-Hammond, Aaron Rouse, and Sabrina Wooten. Dr. Ross-Hammond only served a single four-year term before being defeated in 2016 by a white 27-year-old candidate who was not the Minority candidate of choice. Mr. Rouse and Ms. Wooten were only elected in 2018 and therefore have not stood for re-election.

59. Every Black candidate who has run for the City Council since 2010, with the exception of one Black Republican candidate, faced racially polarized voting and was usually defeated by the white voting bloc.

60. The one Black candidate who did not face racially polarized voting, Chuck Smith, ran for a City Council seat in 2012. He was the sole opponent of Dr. Amelia Ross-Hammond, who won the seat and became only the third Black candidate and the fourth minority ever to be elected to the City Council. Chuck Smith was not the candidate of choice of Minority Voters.

---

[2] Two races (for the Bayside and Beach Districts) in the November 6, 2018 election are too close to call as of the filing of this complaint, but the two possible winners in each case are white candidates and so have been included in this total.

61.     Racial polarization very likely impacted the outcome of a 2010 City Council race between Tanya Bullock (candidate of choice for Minority Voters) and the white incumbent City Council member Barbara Henley. Because Bullock had so little cross-over support from white voters, she was defeated.

62.     There is also evidence of racial polarization in elections with multiple candidates.

63.      For example, in the 2008 at-large election between Harry Diezel, white incumbent, Andrew Jackson, a Black challenger, and Jose Flores, a Black Hispanic challenger, for the Kempsville seat, Black voters did not support the incumbent, but split their votes between Jackson and Flores. Asian and Hispanic voters voted similarly.

64.     Racially polarized voting was apparent in the 2010 election for two of the four at-large City Council seats without residency requirements. Seven candidates ran for this at-large seat. The top two candidates won the election. The two candidates that received the highest number of votes were white, while the two candidates receiving the lowest number of votes were Black. Andrew Jackson, one of the losing Black candidates, was strongly opposed by white voters even though he was the clear candidate of choice for Minority Voters. James Cabiness was the other Black candidate in this race. Although he was not the candidate of choice for Minority Voters, he received more support from Minority Voters than other candidates did.

65.     James Cabiness ran for election again in 2014, but instead of running for the at-large position with no residency requirement, he ran for the Rose Hall District. Cabiness ran against Shannon Kane, a white candidate, and another Black candidate. Minority Voters strongly supported the Black candidate (James Cabiness) and opposed the white candidate (Shannon Kane) who ultimately won. Minority Voters' support for the other candidates in the race was low and not statistically and significantly different from white support.

12

66. Upon information and belief, City Council elections predating 2008 exhibited similar patterns of racially polarized voting between white voters and Minority Voters.

67. Exogenous elections also exhibit racial polarization.

68. For example, Black voters in Virginia Beach strongly preferred Barack Obama to both John McCain in 2008 and Mitt Romney in 2012. White voters strongly preferred McCain and Romney.

69. In the 2016 Congressional election in Virginia Beach, Black voters strongly preferred Shaun Brown, a Black woman, over Scott Taylor, a white man. White voters strongly supported Taylor over Brown. Taylor won with 62.3% of the overall vote.

70. Upon information and belief, Minority Voters as a whole voted similarly to Black voters in these exogenous elections.

**F. The Totality of the Circumstances Further Demonstrates the Dilutive Effect of the At-Large System on Virginia Beach Minority Voters' Opportunity to Participate in the Political Process and Elect Candidates of Their Choice.**

71. In addition to the presence of the three *Gingles* preconditions, the totality of the circumstances in this case supports Plaintiffs' claim that Minority Voters have less opportunity than other members of the electorate to participate in the political process and elect candidates of choice to the City Council in violation of Section 2.

72. The electoral districting scheme for the City Council interacts with social and historical conditions to cause an inequality in the opportunity of Minority Voters to elect representatives of their choice as compared to white voters.

73. The State of Virginia and the City of Virginia Beach have a long and well-documented history of discrimination against Blacks, Latinos, and Asians.

13

74. Despite the 1870 ratification of the Fifteenth Amendment, which prohibited voter discrimination based on race, Virginia continued to employ literacy tests, poll taxes, and other discriminatory devices to obstruct Black political participation. While progress has been made, this obstruction has persisted for more than a century, with many cities and counties embracing electoral schemes that have been challenged by Virginia citizens and the United States Department of Justice for unlawful discrimination.

75. In recent years, the Virginia General Assembly discriminated against Black voters through the passage of an unconstitutional racially gerrymandered redistricting scheme. *Bethune-Hill v. Virginia State Board of Elections*, 2018 WL 3133819 (June 26, 2018), *cert. granted*, No.18-281 (2018).

76. Minorities in Virginia Beach bear the effects of longstanding societal, economic, and educational discrimination, effects that are apparent in the areas of education, employment, housing, and health. Such discriminatory effects hinder Minority Voters' ability to participate effectively in the political process.

77. The denial of the right of Virginia Beach minority residents to have an equal opportunity to participate in the political process and elect candidates of their choice to the City Council has resulted in a City Council that is not responsive to the particular needs of the minority residents.

78. The City Council is responsible for making decisions about a variety of issues that significantly impact Virginia Beach residents, including public spending, quality of life, healthcare, education, and safety.

79. For the past several decades, Black residents of Virginia Beach have, without success, petitioned the City Council to consider changing the at-large system for electing councilmembers to a district-based system.

80. Elections for the City Council have been marked by racial appeals.

81. Latinos in Virginia and Virginia Beach have been notoriously discriminated against when renting apartments.

82. As a result of the history of official and private discrimination, minority residents of Virginia Beach have lower rates of educational attainment than white residents and experience poverty and unemployment at higher rates than white residents. These effects of discrimination hinder the ability of Virginia Beach minority residents to participate effectively in the political process.

## COUNT ONE:

## VIOLATION OF SECTION 2 OF THE VOTING RIGHTS ACT OF 1965

83. Plaintiffs' repeat and re-allege each and every allegation contained in Paragraphs 1 to 80 above, as if fully set forth herein.

84. Virginia Beach's Black, Hispanic or Latino, and Asian population is sufficiently numerous and geographically compact to allow for the creation of two single-member districts in which Minority Voters would constitute a majority of both the total population and the citizen voting age-population. Virginia Beach, Minority Voters are politically cohesive, and elections in Virginia Beach show a clear pattern of racially polarized voting.

85. The totality of the circumstances establish that the at-large election scheme currently in place has the effect of denying Minority Voters an equal opportunity to participate in

15

the political process and to elect representatives of their choice by diluting their voting strength, in violation of Section 2.

86. Unless enjoined by order of this Court, Defendants will continue to act in violation of Section 2 by administering, implementing, and conducting future elections for the City Council using the current, unlawful at-large scheme.

## DEMAND FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request that the Court enter an order:

(a) Declaring that Virginia Beach's at-large method of electing members to the City Council violates Section 2 of the Voting Rights Act;

(b) Enjoining Defendants, their agents and successors in office, and all persons acting in concert with, or as an agent of, any Defendants in this action from administering, implementing, or conducting any future elections in the City of Virginia Beach under the current at-large method of election;

(c) Ordering the implementation of an election system for the City Council that complies with Section 2 of the Voting Rights Act;

(d) Ordering that all future elections for the City of Virginia Beach comply with Section 2 of the Voting Rights Act;

(e) Granting Plaintiffs' attorneys' fees, costs, and litigation expenses pursuant to 42 U.S.C. § 1988(b) and 52 U.S.C. § 10310(e); and

(f) Granting any other relief that the Court may deem just and equitable.

This 13th day of November, 2018.

Respectfully submitted,

*Attorneys for Plaintiffs*

/s/ Charquia V. Wright
State Bar No. 92972
J. Gerald Hebert
State Bar No. 38432
Paul M. Smith
Danielle M. Lang
CAMPAIGN LEGAL CENTER
1411 K St. NW, Ste. 1400
Washington, DC 20005
(202) 736-2200
cwright@campaignlegal.org
ghebert@campaignlegal.org
psmith@campaignlegal.org
dlang@campaignlegal.org

/s/ Ruth M. Greenwood
Ruth M. Greenwood
Annabelle E. Harless
CAMPAIGN LEGAL CENTER
73 W. Monroe St., Ste. 302
Chicago, IL 60603
(312) 561-5508
rgreenwood@campaignlegal.org
aharless@campaignlegal.org

*Attorneys for Plaintiffs*

**Appendix A**

