IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| **Latasha Holloway, et al.,** | |
| **Plaintiffs,** | |
| v. | Civil Action No. 2:18-cv-0069 |
| **City of Virginia Beach, et al.,** | |
| **Defendants.** | |

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO BIFURCATE TRIAL

COME NOW the Defendants, City of Virginia Beach, Virginia Beach City Council, Louis Jones, James Wood, Jessica Abbott, Aaron Rouse, Robert Dyer, Barbara Henley, Shannon Kane, John Moss, David Nygaard, Sabrina Wooten, Rosemary Wilson, in their official capacity as members of the Virginia Beach City Council, David L. Hansen, in his official capacity as City Manager, and Donna Patterson, in her official capacity as Director of Elections/General Registrar for the City of Virginia Beach (collectively "Defendants"), by counsel, and in support of their Motion to Bifurcate Trial, pursuant to Federal Rule of Civil Procedure 42(b), thereby separating the adjudication of the threshold *Thornburg v. Gingles* preconditions from the totality-of-the-circumstances inquiry, state as follows:

### BACKGROUND

Plaintiffs Latasha Holloway and Georgia Allen bring this suit against Defendants, contending that the City of Virginia Beach's ("City") at-large system of electing councilmembers

violates Section 2 of the Voting Rights Act of 1965 by diluting the voting power of the City's Minority Voters.[1]

Plaintiffs' action "seeks to replace [the at-large election system] with a system in which Black, Hispanic or Latino, and Asian American voters are *together able* to elect their preferred candidates of choice to the City Council." (Am. Compl. ¶ 1) (emphasis added). Plaintiffs further allege that "Virginia Beach's Black, Hispanic or Latino, and Asian population is sufficiently numerous and geographically compact to allow for the creation of two single-member districts in which Minority Voters would constitute a majority of both the total population and the citizen voting age-population." (Am. Compl. ¶ 84.) Moreover, Plaintiffs allege that "Virginia Beach's Minority Voters are politically cohesive," and that "Hispanic and Asian voting patterns track Black voting patterns." (Am. Compl. ¶¶ 52, 53.)

To support their allegation that "Virginia Beach's minority population is sufficiently numerous and geographically compact to form a majority of the total population and citizen voting age population in at least two single-member City Council districts," (Am. Compl. ¶ 49), Plaintiffs offer a map with two "demonstration" districts wherein the citizen voting age population ("CVAP") of Blacks, Hispanics or Latinos, and Asians <u>together</u> comprise 50.13% and 50.21%, respectively, of the total CVAP, (Am. Comp. Ex. 1).

Nowhere in the Amended Complaint do Plaintiffs allege that it is possible to draw a ten-district (or less) map with at least one district wherein either Blacks, Hispanics or Latinos, or Asians *alone* comprise a majority of the total CVAP.

---

[1] Plaintiff Latasha Holloway filed, *pro se*, the original Complaint in this matter on February 15, 2018, naming the City of Virginia Beach as the sole defendant. After the City filed its motion to dismiss, Ms. Holloway obtained counsel and was joined by Georgia F. Allen as Plaintiff. Plaintiffs then filed the Amended Complaint, which, among other changes, added the present co-Defendants.

## APPLICABLE LAW

**I. The Two Phases of Vote Dilution Claims**

There are two phases to Voting Rights Act Section 2 claims challenging at-large election systems: first, the *Gingles* preconditions and second, the "totality of the circumstances" inquiry. The *Gingles* preconditions are frequently referred to as "necessary preconditions" and "threshold requirements" for the establishment of a Section 2 vote-dilution claim. The Defendants request that this Court use its authority under Federal Rule of Civil Procedure 42(b) to separate the adjudication of these threshold *Thornburg v. Gingles* preconditions from the totality-of-the-circumstances inquiry in this case.

Plaintiffs rely upon an alleged tri-partite coalition of Blacks, Hispanics or Latinos, and Asians to create a majority-minority voting district by the slimmest of margins. The lack of any favorable precedent using this novel, tripartite approach—along with the Fourth Circuit's general disfavor of bi-partite coalition strategies in Section 2 cases—provides this Court good cause to require Plaintiffs to carry their burden of establishing the threshold *Gingles* preconditions before proceeding further to the "totality of the circumstances" inquiry.[2]

As this Court recognized in *Lincoln v. City of Virginia Beach*, No. 2:97-cv-756, "A vote dilution challenge to an at-large system <u>cannot proceed</u> unless the plaintiff first establishes three preconditions" promulgated in *Gingles*. At 7.[3] The *Thornburg v. Gingles* preconditions, which

---

[2] Defendants are further motivated to seek a bifurcated trial of this matter given that a large share of the Plaintiffs' First Requests for Production were related to the second of these two phases. Defendants have served objections to these requests on the Plaintiffs and Defendants have also sought entry of a protective order to limit discovery to the threshold issue of the *Gingles* preconditions. *See* ECF No. 78. The Motion for Protective Order is still pending before the Court as of the date of this Motion to Bifurcate the trial of this matter.

[3] As in this case, the Plaintiff in *Lincoln v. City of Virginia Beach,* No. 2:97-cv-756, alleged that the City's at-large system of elections diluted the voting strength of minorities. In dismissing the suit with prejudice for failure to prosecute the claim, the Court opined that Plaintiff was unlikely to succeed on the merits of the claim, in part because "it is not feasible to create a single-member

Plaintiffs must prove, are as follows: (1) the minority group is sufficiently large and geographically compact to constitute a majority in a single-member district; (2) the minority group is politically cohesive; and (3) the white majority votes sufficiently as a bloc to enable it usually to defeat the minority's preferred candidate. 478 U.S. 30, 51 (1986). These threshold inquiries are focused mostly on data regarding voting patterns and demographic information. Only after a plaintiff satisfies the three *Gingles* preconditions do courts evaluate whether, under the "totality of the circumstances," the minority vote is diluted in contravention of Section 2. *Levy v. Lexington County*, 589 F. 3d 708, 713 (4th Cir. 2009). *See also*, *Hall v. Virginia*, 385 F.3d 421 (2004) (dismissing plaintiffs' vote dilution suit for failure to state a claim where the three *Gingles* preconditions could not be satisfied.).

The United States Court of Appeals for the Fourth Circuit describes the "totality of the circumstances" inquiry as "a searching practical evaluation of the past and present reality which demands a comprehensive, not limited, canvassing of relevant facts." *United States v. Charleston County*, 365 F.3d 341, 348 (2004) (quotations omitted).

The Supreme Court's *Gingles* opinion lists seven non-exhaustive factors, taken from a Senate report accompanying the bill, for courts to consider in the totality inquiry:

> 1. the extent of any history of official discrimination in the state or political subdivision that touched the right of the members of the minority group to register, to vote, or otherwise to participate in the democratic process;
> 2. the extent to which voting in the elections of the state or political subdivision is racially polarized;
> 3. the extent to which the state or political subdivision has used unusually large election districts, majority vote requirements, anti-single shot provisions, or other voting practices or procedures that may enhance the opportunity for discrimination against the minority group;
> 4. if there is a candidate slating process, whether the members of the minority group have been denied access to that process;

---

district in which all non-White residents constitute at least a 50% majority." Thus, it appeared that the first *Gingles* precondition, discussed *infra*, could not be satisfied.

> 5. the extent to which members of the minority group in the state or political subdivision bear the effects of discrimination in such areas as education, employment and health, which hinder their ability to participate effectively in the political process;
> 6. whether political campaigns have been characterized by overt or subtle racial appeals;
> 7. the extent to which members of the minority group have been elected to public office in the jurisdiction.
>
> Additional factors that in some cases have had probative value as part of Plaintiffs' evidence to establish a violation are: whether there is a significant lack of responsiveness on the part of elected officials to the particularized needs of the members of the minority group, whether the policy underlying the state or political subdivision's use of such voting qualification, prerequisite to voting, or standard, practice or procedure is tenuous. S.Rep., at 28-29, U.S.Code Cong. & Admin.News 1982, pp. 206-207.

478 U.S. at 37. The totality inquiry, then, is a far-reaching evaluation of a locality's history, political process, and social conditions—and is rendered entirely moot in this case if Plaintiffs fail to satisfy the *Gingles* preconditions with their novel, multiracial-coalition strategy.

Plaintiffs' vote dilution claim under Section 2 of the Voting Rights Act feasibly can be separated into two separate trials given the two-step legal analysis explicated by applicable case law. Moreover, there is good cause for this Court's separation of the *Gingles* preconditions inquiry from the "totality" inquiry in order to promote a more efficient, cost effective, and expedient outcome.

## II. The Legal Standard and Precedents for Bifurcating Trials

Federal Rule of Civil Procedure 42(b) provides that a court may order a separate trial of one or more separate issues or claims "for convenience, to avoid prejudice, or to expedite or economize." A trial court has broad discretion to bifurcate issues and its decision will only be set aside for clear abuse. *See Dixon v. CSX Transp., Inc.*, 990 F.2d 1440, 1443 (4th Cir. 1993), *cert denied*, 510 U.S. 915 (1993).

Courts in the Fourth Circuit have bifurcated issues and claims for a variety of reasons, commonly to avoid the inconvenience and expense of litigating an issue that may be rendered moot by the resolution of an antecedent issue. For example, in *Seneca Ins. Co. v. Shipping Boxes LLC*, a breach of contract case against an insurance company, this Court granted a motion to bifurcate the issue of the insurer's alleged bad faith—and potential attorney's fees arising therefrom—because it would be unnecessary to adjudicated the issue of bad faith if the court did not first find that plaintiff was owed coverage on the disputed insurance claim. 30 F. Supp. 3d 506, 513 (E.D. Va. 2014). *See also St. John's African Methodist Episcopal Church v. Guideone Specialty Mut. Ins. Co.*, 902 F. Supp. 2d 783, 787 (E.D. Va. 2012). In *Jones v. Chapman*, the Maryland District Court held that bifurcation of a § 1983 claim would "conserve resources and promote judicial economy" where a plaintiff's prevailing on claims against individual police officer defendants was a "prerequisite to establishing liability" against the Commissioner of the Baltimore Police Department in a supervisory role, a so-called *Monell* claim. 2016 U.S. Dist. LEXIS 126127, *17-18 (D. Md. Sept. 15, 2016). And in *Novopharm Ltd. v. TorPharm, Inc.*, the District Court for the Eastern District of North Carolina opined that, in a patent infringement case, "litigating the complex damages issues would place a heavy burden on Novopharm to produce voluminous documents. That the production and synthesis of these materials may ultimately become unnecessary militates in favor of bifurcating the trial of this suit." 181 F.R.D. 308, 311 (E.D.N.C. May 20, 1998).

Courts in the Fourth Circuit and elsewhere have similarly granted motions to bifurcate on a wide variety of claims with an eye towards judicial economy and expediency. *See Audio MPEG, Inc. v. Dell Inc.*, 254 F. Supp. 3d 798, 805-806 (E.D. Va. 2017) (noting that "courts have frequently found it to be in the interest of economy and convenience, both to the court and to the

parties, and in furtherance of the most expeditious disposition of complex litigation of this kind, to sever the antitrust and misuse issues from the issues of [patent] validity and infringement"); *Zenith Ins. Co. v. Old Republic Ins. Co.*, 2017 U.S. Dist. LEXIS 103782, *6 (N.D. Cal. July 5, 2017) (granting motion to bifurcate because the determination of one factual dispute "present[ed] a significant opportunity to defer further litigation costs if it either proves dispositive or increases the potential for settlement"); *Hoskins v. Allstate Prop. & Cas. Ins. Co.*, 2006 U.S. Dist. LEXIS 80327, *8 (E.D. Ky. Nov. 2, 2006) (holding that "separate trials on the bad faith and breach of contract claims will expedite ultimate resolution of the claims involved in this action.").

Finally, in *Rios-Andino v. Orange County*, a vote dilution claim under Section 2 of the Voting Rights Act, the Florida Middle District Court bifurcated the *Gingles* preconditions from the 'totality of the circumstances' inquiry. 51 F. Supp. 3d 1215, 1218 n. 2 (M.D. Fla. 2014). When the plaintiffs failed to satisfy the Gingles preconditions, judgment was entered for the defendants without the 'totality' inquiry being adjudicated. *Id.*

## ARGUMENT

I. **Plaintiffs' Multiracial Coalition Strategy for Satisfying the *Gingles* Preconditions Is Unprecedented, Creates a Heavy Burden for Plaintiffs, and Presents the Court with a Complex Array of Issues.**

Plaintiffs' effort to satisfy the *Gingles* preconditions by relying upon a multiracial coalition consisting of three minority groups—Blacks, Hispanics or Latinos, and Asians—is extraordinary, and apparently unprecedented.[4]

---

[4] Defendants' search of case law for Section 2 vote dilution claims did not reveal a single case where a plaintiff successfully satisfied the *Gingles* preconditions based upon a coalition of Blacks, Hispanics, and Asians—or, for that matter, of any coalition comprised of three groups of minority voters.

Defendants do not believe that Plaintiffs can succeed on a three-minority coalition based claim, especially in light of this Court's ruling, in *Hall v. Virginia*. 276 F. Supp. 2d 528, 536 (2003) (ruling that "[t]he question, then, is whether the disfavor that has befallen vote dilution claims in 'influence districts' likewise precludes such claims with respect to 'coalition districts.' The Court FINDS that it does.") In affirming this Court's decision in *Hall*, the United States Court of Appeals for the Fourth Circuit opined, "[W]hen minority voters, as a group, are too small or loosely distributed to form a majority in a single-member district, they have no ability to elect candidates of *their own* choice, but must instead rely on the support of other groups to elect candidates. Under these circumstances, minorities cannot claim that their voting strength . . . has been diluted in violation of Section 2." *Hall v. Virginia*, 385 F.3d 421, 429 (2004) (emphasis original). The Plaintiffs minority-coalition strategy therefore appears to be suspect, if not entirely precluded, in light of the precedents of this Court and the Fourth Circuit.

Were this Court to accept the facial validity of Plaintiffs' tri-racial coalition strategy, Plaintiffs would face enormous obstacles in meeting their evidentiary burden on each of the three *Gingles* preconditions. Even in those Circuits that have recognized the validity of a multiracial coalition strategy, plaintiffs alleging political cohesion among three minority groups have uniformly failed to establish such cohesion. *Brewer v. Ham*, 876 F.2d 448 (5th Cir. 1989) (finding no political cohesion amongst Blacks, Latinos, and Asians); *Perez v. Abbott*, 267 F. Supp. 3d 750 (W.D. Tex. 2017) (same); *Balderas v. Tex.*, 2001 U.S. Dist. LEXIS 25006 (E.D. Tex., Nov. 28, 2001); *Pope v. County of Albany*, 2011 U.S. Dist. LEXIS 93103 *13 (N.D.N.Y. Aug. 18, 2011) (finding Plaintiff's evidence insufficient to establish cohesion amongst Black and Hispanic voters), aff'd on other grounds, 687 F.3d 565 (2d. Cir. 2012).

Defendants expect to contest forcefully the existence of each of the three *Gingles* conditions. With regard to the first *Gingles* prong, the geographic compactness requirement, Plaintiffs' own pleading telegraphs the challenge they will face in meeting their "burden of demonstrating that their proposed [district] benchmark is <u>reasonable and workable</u>." *Holder v. Hall*, 512 U.S. 874, 952-953 (1994) (emphasis added). To wit, Plaintiffs' Amended Complaint offers an incomplete district map, showing two districts only, with combined Black-Hispanic-Asian populations of 50.1% and 50.2%, respectively. (Am. Compl., Ex. 1.) The United States Supreme Court has held that "the § 2 compactness inquiry should take into account traditional districting principles such as maintaining communities of interest and traditional boundaries." *Abrams v. Johnson*, 521 U.S. 74, 92 (1997) (quotation omitted). As Plaintiffs' proffered benchmark is scrutinized accordingly, these reed-thin majority-minority districts leave Plaintiffs with virtually no margin of error. Defendants do not presently know what, if any, traditional districting principles Plaintiffs considered in drawing their proposed districts. Race may have been the overriding factor, however, as Plaintiffs presumably would have drawn majority-minority districts with larger minority populations could they have done so.

Regarding the second *Gingles* precondition, the cohesiveness of the proposed tri-racial minority group, Plaintiffs' novel approach augers a highly complex factual analysis, driven by expert witnesses and a host of other evidence. In any vote dilution case, of course, courts evaluate the political cohesiveness of the minority group. That evaluation necessarily becomes more involved, however, when two minority groups are alleged to form a politically cohesive group. An additional layer of statistical and factual complexity exists where three minority groups are joined. Upon information and belief, the statistical analysis of voting patterns in

Virginia Beach will be especially nuanced because of the unique demographics of the City along with the non-partisan nature of City Council elections.

Finally, the Court's inquiry regarding the third *Gingles* precondition, whether white bloc voting defeats the minority vote, will be similarly fraught with statistical and evidentiary complexity.

## II.  Judicial economy and expediency will be well served by bifurcating the two distinct phases of this trial.

Defendants do not believe that Plaintiffs can meet their substantial evidentiary burden of proving the existence of the three *Gingles* preconditions. As such, Defendants expect that, upon completion of discovery on the first phase of this litigation, they will convince the Court that—given Plaintiffs' inability to satisfy the three required *Gingles* preconditions—summary judgment is appropriate. And in the event that Defendants obtain summary judgment (or otherwise prevail at a putative trial of the initial phase of the litigation), the second phase of this litigation—i.e. the "totality of the circumstances" inquiry—will be entirely moot.

Setting aside, however, the Plaintiffs' chances of success on the *Gingles* factors at summary judgment or at a bifurcated trial on that issue, the interests of judicial economy and expediency will be well served by bifurcating the *Gingles* preconditions inquiry from the totality of the circumstances inquiry. As evidenced by the list of non-exhaustive factors considered during the totality-of-the-circumstances phase, cited *supra*, and the discussion, *supra*, of the contours of the *Gingles* preconditions inquiry in this case, both phases of this trial will present the Court with a set of substantial and complex issues to consider. Both the presentation of evidence and the discovery process that proceeds it will be, for each phase of a bifurcated trial, an immense undertaking for the Defendants and the Plaintiffs alike. Moreover, an examination of

the *Gingles* preconditions and totality factors reveals that these inquiries can be almost entirely separate in nature, with minimal evidentiary overlap.

Given the significance, enormity, and complexity of the issues presented by Plaintiffs' allegations—and the additional fact that the Court need not conduct any evaluation of the totality of the circumstances if it rules that Plaintiffs have not met their burden to satisfy the *Gingles* preconditions—bifurcation of this matter into two phases is appropriate.

## CONCLUSION

WHEREFORE, for all the reasons set forth above, the Defendants hereby respectfully request that this Court bifurcate this claim, separating the adjudication of the threshold *Thornburg v. Gingles* preconditions from the totality-of-the-circumstances inquiry and for such other relief as the Court deems appropriate.

Respectfully submitted,

CITY OF VIRGINIA BEACH, VIRGINIA BEACH CITY COUNCIL, LOUIS JONES, JOHN UHRIN, BEN DAVENPORT, JAMES WOOD, JESSICA ABBOTT, AARON ROUSE, ROBERT DYER, DAVID NYGAARD, BARBARA HENLEY, SHANNON KANE, JOHN MOSS, SABRINA WOOTEN, and ROSEMARY WILSON, in their official capacity as members of the Virginia Beach City Council, DAVID L. HANSEN, in his official capacity as City Manager, and DONNA PATTERSON, in her official capacity as Director of Elections/General Registrar for the City of Virginia Beach,

By: _____/s/_____
             Of Counsel

**Mark D. Stiles** (VSB No. 30683)
City Attorney
**Christopher S. Boynton** (VSB No. 38501)

Deputy City Attorney
**Gerald L. Harris** (VSB No. 80446)
Associate City Attorney
**Joseph M. Kurt** (VSB No. 90854)
Assistant City Attorney
*Attorneys for the City of Virginia Beach*
Office of the City Attorney
Municipal Center, Building One
2401 Courthouse Drive
Virginia Beach, Virginia 23456
(757) 385-4531 (Office)
(757) 385-5687 (Facsimile)
mstiles@vbgov.com
cboynton@vbgov.com
glharris@vbgov.com
jkurt@vbgov.com

CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of May, 2019, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

**Joseph Gerald Hebert**
**Danielle Marie Lang**
**Paul March Smith**
**Annabelle Harless**
**Ruth Merewyn Greenwood**
Campaign Legal Center
1411 K Street, NW
Suite 1400
Washington, DC 20005
(202) 736-2200 (telephone)
(202) 736-2222 (facsimile)
ghebert@campaignlegal.org
dlang@campaignlegal.org
psmith@campaignlegal.org
aharless@campaignlegal.org
rgreenwood@campainlegal.org

                                     /s/
                                Joseph M. Kurt

**Mark D. Stiles** (VSB No. 30683)
City Attorney
**Christopher S. Boynton** (VSB No. 38501)
Deputy City Attorney
**Gerald L. Harris** (VSB No. 80446)
Associate City Attorney
**Joseph M. Kurt**
Assistant City Attorney (VSB No. 90854)
*Attorneys for the City of Virginia Beach*
Office of the City Attorney
Municipal Center, Building One, Room 260
2401 Courthouse Drive
Virginia Beach, Virginia 23456
(757) 385-8803 (Office)
(757) 385-5687 (Facsimile)
mstiles@vbgov.com
cboynton@vbgov.com
glharris@vbgov.com
jkurt@vbgov.com