## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## NORFOLK DIVISION

Latasha Holloway, et al.,

      Plaintiffs,

v.

City of Virginia Beach, et al.,

      Defendants.

Civil Action No. 2:18-cv-0069

### MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS' SUPPLEMENTAL EXPERT REPORTS AND OPINIONS

COME NOW the Defendants, and in support of their Motion to Exclude Plaintiffs' Supplemental Expert Reports and Opinions, state as follows:

This Court set July 15, 2019, as the deadline for Plaintiffs to produce their expert reports and disclosures, and September 9, 2019, as the expert discovery cutoff. On March 16, 2020, many months after both deadlines lapsed, Plaintiffs served "supplemental" expert reports from two experts, Anthony Fairfax and Douglas Spencer. These "supplemental" reports were premised on new analyses and new illustrative districts that Fairfax prepared in response to his own failure to draw the illustrative districts in his original reports to include Plaintiff Georgia Allen's residential address. Plaintiffs served these "supplemental" reports without leave of Court to do so.

The Plaintiffs' so-called "supplemental" experts reports constitute out-of-time disclosures, offering new analyses and conclusions that Plaintiffs had a duty to disclose in their initial expert disclosures, and most certainly before the close of expert discovery. These newly offered opinions are not the kind of supplements contemplated by Fed. R. Civ. P. 26(e), *i.e.*, supplements to correct discrete error or omission. These "supplemental" expert reports contain

wholly new analyses regarding key inquiries in this case.  Because these out-of-time disclosures violate Rule 26 and are neither justifiable nor harmless, and for the reasons that follow, the Court should enter an order precluding Plaintiffs from offering any opinions or analysis at trial based on these improper "supplemental" expert reports.

## BACKGROUND

On June 24, 2019, this Court entered its *Order Amending Rule 16(B) Scheduling Order* (ECF No. 89) (the "Scheduling Order,"), by consent of the parties, fixing deadlines for fact and expert discovery.  The cutoff for fact discovery was September 3, 2019, and the expert discovery cutoff was September 9, 2019. (*Id.*)  Defendants' original expert reports were due July 15, 2019, and any rebuttal expert reports were due on August 12, 2019. (*Id.*)  Pursuant to the Court's imposed October 22, 2019, deadline for dispositive motions, the Defendants filed their motion for summary judgment, (ECF No. 114), which the Court denied in its March 11, 2019, Order, (ECF No. 126).  Trial is currently set to begin October 6, 2020, with pretrial disclosures due September 2, 2020. (ECF No. 142.)

On March 16, 2020, more than six months after the expert discovery cutoff and eight months after Plaintiffs' expert disclosure deadline, Plaintiffs served supplemental reports from each of their experts, Anthony Fairfax ("Fairfax") and Douglas Spencer ("Spencer").  These two supplemental reports, in relevant part, corrected an error in Fairfax's analysis: that "none of the hypothetical redistricting plans in my [i.e., Fairfax's] previous [rebuttal] report included Plaintiff Georgia Allen's address in a majority Hispanic, Black, and Asian ("HBA") Citizen Voting Age Population ("CVAP") district..." (Ex. 1 at 1.)  This was not a minor error; the inclusion of Ms. Allen's address required him to generate three new districts to serve as illustrative districts and invalidated all of the illustrative districts Fairfax previously purported to include Ms. Allen's home address. (*Id.* at 3.)  Indeed, the *only* illustrative districts offered in

2

this case by Fairfax that include Ms. Allen's address were the ones produced in the out-of-time supplemental report.  Spencer's supplemental report, in turn, served chiefly to conduct performance analyses on Fairfax's newly drawn districts (even though Spencer had not conducted performance analyses on Fairfax's earlier disclosed districts, as contained in Fairfax's rebuttal report). (*See generally* Ex. 2.)

Fairfax's new districts required *new analyses*—not just minor corrections—by both experts, and were served months after deadlines for Plaintiffs' original expert reports, rebuttal expert reports, and expert discovery cutoff deadlines all had passed.  First, Fairfax was unequivocal that none of the illustrative plans offered in his two prior reports included districts that contained Plaintiff Allen's address despite having known her address the entire time. (Ex. 3, 15:5-15.)   In order to draw Plaintiff Allen's address into these new illustrative districts, Fairfax had to modify numerous areas of the proposed districts, including adding or removing different block groups and voter tabulation districts ("VTDs"), and splitting VTDs. (Ex. 3, 13:16—14:25.) Fairfax also acknowledged that, although including Allen was his sole purpose for drawing the new districts, he made changes necessary to remain mindful of traditional districting criteria. (Ex. 3, 17:1-8.) Finally, Fairfax acknowledged that in drawing new districts that contained Allen's address, it was necessary to modify adjacent districts as well. (Ex. 3, 18:3-8.)

In turn, Spencer's supplemental report includes analysis of the performance of the new districts that Fairfax provided in his supplemental report. (*See generally* Ex. 2.)  Spencer states in his supplemental report that Fairfax's newly offered illustrative plans "were not available when I wrote my earlier reports." (Ex. 2 at 2.)  Notably, Spencer's performance analysis is entirely new, and in fact, Spencer did not even attempt a performance analysis previously as to the illustrative districts Fairfax offered in his rebuttal report.  (*See generally* Exs. 4, 5.)  In

3

essence, Spencer used the occasion of Fairfax's supplemental report to perform an entire type of analysis that he had neglected to perform as to Fairfax's illustrative districts when they were initially disclosed in Fairfax's rebuttal report.

## ARGUMENT

I.    *Defendants are prejudiced by Plaintiffs' untimely disclosure of new expert analyses.*

Plaintiffs served their new expert analyses many months after Plaintiffs' expert disclosures and expert discovery had closed and, importantly, after the August 12, 2019 deadline for Defendants' expert reports. Scheduling Order at 1.  These "supplemental" reports also were produced nearly five months after the cutoff for dispositive motions, robbing Defendants of the opportunity to seek summary judgment based upon Plaintiffs' experts' new illustrative districts and performance analysis. (ECF. No. 114.)  As confirmed in deposition testimony, Plaintiffs' supplemental reports included 3 new illustrative districts.  Fairfax's new districts are not a correction of a discrete error but constitute entirely new analysis.  That Allen's address is now contained within the new districts' borders is not the only salient characteristic of these new illustrative plans.  The manifold changes Fairfax was required to make in order to draw these new districts—including adding areas and splitting VTDs—all impact the constitutional viability of these districts and are subject to challenge.

In turn, Spencer's performance analysis of these new districts is an entirely new analysis—as Spencer's June 9, 2020 deposition testimony confirms.[1]  Defendants have a right, under the Federal Rules and the Scheduling Order, to rebut the work of both experts with their

---

[1] In his deposition testimony, Spencer explained the elaborate analytical process that goes into his production of performance datapoints for these new districts. Using geographic information systems ("GIS") software, Spencer overlays census data onto maps of Virginia Beach, overlays Fairfax's new districts, uses software to confirm boundary alignment, and then aggregates votes totals for each district. [Ex. 6, 21:3-11.]

own expert disclosures, an opportunity Defendants lost by Plaintiffs' decision to produce these new reports long after the close of expert discovery. Had these reports been timely produced, Defendants' experts could have applied their own choice of analysis to rebut the reports including, among other things: replicating Plaintiffs' experts' aggregation of block-level data; challenging assumptions about data used; rebutting Plaintiffs' experts' position on the cohesiveness of African American, Asian and Hispanic voters; and challenging the compactness of the new districts, etc. As can be seen in Defendants' expert reports, attached as Exhibits 7 and 8, Defendants' experts' analyses relied heavily on the shape and composition of Fairfax's maps and the related analysis by Spencer, all of which has now changed. (*See, e.g.*, Ex. 7 at 3 (showing Defendants' expert Quentin Kidd's a reliance on Spencer's data and analysis to show that Spencer failed to establish voter cohesion among African American, Asian and Hispanic voters) and Ex. 8 at 1 (showing Defendants' expert Peter Morrison's reliance on Fairfax's shape files and demographic data related to his illustrative districts).) Similarly, an opportunity to pursue summary judgment based upon the illustrative districts and performance analysis that Plaintiffs *actually intend to rely upon* at trial was never available to the Defendants because of Plaintiffs' late disclosures.

II.    *The so-called "supplemental" reports of Plaintiffs experts constitute untimely expert disclosures and not supplemental disclosures as contemplated by Rule 26(e).*

Plaintiffs have titled the new reports "supplemental reports," perhaps in an effort to suggest they are permissible supplemental disclosures contemplated by Fed. R. Civ. P. 26(e). They are not. These reports do not merely correct a minor error or omission; they constitute an entirely new analysis that is directly germane to their Section 2 claim. As these new analyses were not initially disclosed, as required, they are untimely. And because these out-of-time disclosures are not justified and are prejudicial to Defendants, they should be excluded from

use at trial and for other litigation purposes.

Fed. R. Civ. P. 26(a)(2)(B) requires that expert witnesses must produce a report

containing, *inter alia*, "a complete statement of all opinions the witness will express and the

basis and reasons for them." (emphasis added.)  Parties are required to provide such expert

disclosures according to the sequence established by the Court. Fed. R. Civ. P. 26(a)(2)(D).  In

this case, Plaintiffs' expert disclosures were due July 15, 2019 (ECF No. 72 at ¶ 2) and the

cutoff for expert discovery was September 9, 2019. (Scheduling Order at 1.)  Notwithstanding

those deadlines, Plaintiffs served the "supplemental" reports of Fairfax and Spencer on March

16, 2020, eight months after their initial expert disclosure deadline and six months after the

expert discovery cutoff.

Rule 37(c)(1) provides that where "a party fails to provide information or identify a

witness as required by Rule 26(a) or (e), the party is not allowed to use that information or

witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was

substantially justified or is harmless."[2]

Plaintiffs' extremely untimely disclosures were neither justified nor harmless.  As

Fairfax himself explained—in deposition testimony given after disclosure of the supplemental

report—his failure to include Allen's residential address in any of the illustrative districts he

offered in his initial report was an error entirely of his own making. (Ex. 3, 15:16—16: 1.)

Fairfax possessed Allen's correct address when he prepared his original report and that address

has not changed. (Ex. 3, 16: 2-4.)

---

[2] Because the disclosure of expert reports in this case is governed by the Court's scheduling order, Plaintiffs' violation also implicates Fed. R. Civ. P. 16(f). *See Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 309 (M.D.N.C. 2002).  Rule 16(f), in turn, gives courts the discretion to impose any of the sanctions provided for in Rule 37(b)(2)(A), including "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(ii).

While Plaintiffs may contend that the omission of Ms. Allen from Fairfax's initial analysis and illustrative plans is simply a minor clerical error or omission subject to correction under Rule 26(e), the truth is that the error required Fairfax to conduct entirely new analysis and generate new illustrative districts—work that then necessitated a new expert report by Spencer to analyze the performance of the new illustrative districts – an analysis that Spencer did not perform as to the original illustrative districts contained in Fairfax's Rebuttal Report. (*See generally* Ex. 5.)  That new analysis is outside the ambit of the type of omissions or errors that can be corrected by a supplemental expert report.  In *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306 (M.D.N.C. 2002), the court distinguished between a proper supplementation of discovery and an improper attempt to take a figurative "second bite at the apple" (or in this case, <u>third</u> bite):

> Rule 26(e) envisions supplementation when a party's discovery disclosures happen to be defective in some way so that the disclosure was incorrect or incomplete and, therefore, misleading.  It does not cover failures of omission because the expert did an inadequate or incomplete preparation.

*Id.* at 310.  The *Akeva* court excluded a "supplemental" expert report that added new testing data while maintaining the expert's original opinion, holding that "[t]o construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would reek [sic] havoc in docket control and amount to unlimited expert opinion preparation." *Id.*  The *Akeva* court found the offered 'supplementation' to be an out-of-time disclosure and excluded the report. *Id.* at 310, 312. *See also, e.g., Ullman v. Auto-Owners Mutual Insurance Co.,* 2007 U.S. Dist. LEXIS 25590, *13 (S.D. Ohio 2007) (excluding a report offered as a Rule 26(e) "supplementation" that included new analysis, warning that a party's "presentation of a new or transformed opinion by 'supplementation' must be examined closely"); *East West, LLC v. Rahman,* No. 1:11cv1380 (JCC/TCB), 2012 WL 4105129, *7

(E.D. Va. Sept. 17, 2012) (excluding "supplemental" expert report, produced beyond the expert

disclosure deadline, that contained "new information, new issues, and new expert analysis").

In further explaining why a new report offering new analysis—without justification—

did not fall under the umbrella of Rule 26(e), the court cited extensively to language from yet

another opinion whose reasoning supports Defendants' position:

> Although Fed. R. Civ. P. 26(e) requires a party to "supplement or correct"
> disclosure upon information later acquired, that provision does not give license
> to sandbag one's opponent with claims and issues which should have been
> included in the expert witness' report (indeed, the lawsuit from the outset).

> To rule otherwise would create a system where preliminary reports could be
> followed by supplementary reports and there would be no finality to expert
> reports, as each side, in order to buttress its case or position, could "supplement"
> existing reports and modify opinions previously given. This practice would
> surely circumvent the full disclosure requirement implicit in Rule 26 and would
> interfere with the Court's ability to set case management deadlines, because new
> reports and opinions would warrant further consultation with one's own expert
> and virtually require new rounds of depositions. That process would hinder
> rather than facilitate settlement and the final disposition of the case.

2007 U.S. Dist. LEXIS 25590, at *13-14 (quoting *Allgood v. General Motors Corp.*, 2007

U.S. Dist. LEXIS 8123, at *3-4 (S.D. Ind. Feb 2, 2007) (quoting *Beller v. United States,* 221

F.R.D. 689, 695 (D.N.M. 2003)).

*Ullman* went on to describe the prejudice incurred by defendants because of the out-of-

time report offered in that case:

>  Plaintiffs' conduct frustrates the purpose and intent of the Federal Rules and the
> Court's Orders. It is not mere "supplementation" when a party submits a
> manifestly incomplete report lacking analysis or a supporting rationale, waits for
> the summary judgment deadline to pass, and then submits a fuller report that
> contains actual reasoning. Whether by strategic design or as an inescapable
> result of Hartman's work product, Plaintiffs have placed Defendant at a
> disadvantage.

2007 U.S. Dist. LEXIS 25590, *10 (emphasis added).

Here, there has been no excuse offered for Fairfax's failure to draw illustrative districts

that included Ms. Allen's address.  These fundamental revisions of expert analysis based upon Fairfax's error and Spencer's omission of any performance analysis in their respective rebuttal reports placed the Defendants at a significant disadvantage.  Defendants were forced to operate under an incorrect understanding about which districts Plaintiffs intend to offer at trial—though they were led to believe that they had possession of the operative analyses.  Not until eight months after the expiration of the expert disclosure deadline did Defendants receive the actual districts and corresponding performance analysis that Plaintiffs actually intend to rely upon at trial.

While neither Fairfax's nor Spencer's earlier reports lacked analysis altogether, they both lacked *the analysis that Plaintiffs actually hope to rely upon* at trial, the disclosure of which Defendants required all along in order to effectively advance their defense of this claim. Stated differently, Fairfax's new districts and Spencer's new performance analyses constitute entirely new opinions on fundamental elements of Plaintiffs' claim—not a "supplement" reasonably contemplated within Rule 26(e).

III.    *Application of the* Bresler *factors strongly militates in favor of these reports' exclusion at trial and for other litigation purposes.*

As recognized in *Bresler v. Wilmington Trust Co.*, 855 F.3d 178 (4th Cir. 2017), "a party who fails to comply with the expert witness disclosure rules is prohibited from 'us[ing] that information or witness to supply evidence ... at a trial, unless the failure was substantially justified or harmless." *Id.* at 190, quoting Fed. R. Civ. P. 37(c)(1).  In evaluating whether a failure to make timely disclosures is substantially justified or harmless, courts are guided by the following factors: (1) the surprise to Defendants; (2) the Defendants' ability to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the untimely disclosed evidence; and (5) Plaintiffs' explanation for their failure

to disclose the evidence in a timely manner. *Id.* An application of these factors to the circumstances surrounding Plaintiffs' out-of-time disclosures militates in favor of excluding these new analyses.

The first four factors relate primarily to the harmlessness exception. *Id.* The last factor informs the substantial justification inquiry. *Id.*

With regard to the harmlessness inquiry, the factors involving surprise, ability to cure, and the importance of the disclosed materials each cut decisively in Defendants' favor. First of all, Defendants' surprise was total, as Fairfax's original report purported to show the operative illustrative districts Plaintiffs sought to rely upon in litigating their claim. Defendants had no idea before the close of expert discovery that such an egregious error had been made and that the Plaintiffs eventually would attempt to rely upon new districts. Defendants and their experts were not able to perform any evaluation of these new districts until five months after the deadline for filing dispositive motions. In fact, Defendants knew nothing about the contours of the newly proffered districts before March 16, 2020. Stated differently, at the time Defendants were required to file their summary judgment motion, they had no basis to know whether the district that Plaintiffs *actually hope to rely upon* could be challenged on constitutional or other grounds. Put simply, Plaintiffs' late change of opinions caused Defendants to fly blind.

Defendants have worked diligently to mitigate—at least with regard to trial—the harm created by Plaintiffs' out-of-time disclosures. Specifically, Defendants quickly arranged, in the midst of the COVID-19 pandemic, follow-up depositions of Fairfax and Spencer. During those depositions, it was confirmed that the change in Plaintiffs' expert reports was substantial and required new analyses by both experts involved. *See, e.g.*, *supra* at 3-4. First, Defendants should not have been required to expend their time, effort, and resources towards such remedial efforts—resources that are clearly under strain due to lost revenue due to COVID-19. And, of

course, the Plaintiffs' failure to follow the rules is itself significant harm, as it undermines the finality of the expert reports in this case (a concern raised by *Ullman,* 2007 U.S. Dist. LEXIS 25590, at *13-14) and leaves Defendants forced to guess at what arguments and evidence Plaintiffs intend to use at trial.  More critically, having now confirmed the depth of new analyses required of Plaintiffs' new disclosure, it is clear that Defendants are harmed in not having this new analysis prior to serving their rebuttal reports.

The importance of Fairfax's and Spencer's new analysis is beyond doubt.  Admittedly, courts must evaluate this factor from the perspective of both parties. *Rambus, Inc. v. Infineon Techs. AG*, 145 F. Supp. 2d 721, 734 (E.D. Va. 2001).  But whatever importance Plaintiffs attach to these new reports, they must in equal measure concede that crucial information was denied to the Defendants until it was far too late to make effective use of it in their motion for summary judgment or in preparing to rebut it at trial.  It is no injustice, therefore, to deny Plaintiffs the use of these new analyses at trial.

Plaintiffs' expert (Fairfax) candidly admits his error in failing to include Ms. Allen's home address in any of his original or rebuttal illustrative districts.  As there are no factors outside of Plaintiffs' control that led to this rule violation, there plainly exists no substantial justification for serving new expert analyses six months after the close of expert discovery.  To borrow the poetic language employed by Plaintiffs in a recent memorandum, "Whether it resulted from lethargy, negligence, or design," Plaintiffs failure to timely produce key expert analyses  "does not justify burdening" Defendants with the task of responding to these new analysis in the months preceding trial—and five months after they filed their motion for summary judgment. (ECF No. 154 at 8.)  The offending reports and opinions should be excluded, and Plaintiffs' witnesses should be precluded from testifying about the analysis and conclusions in those reports.

11

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court, pursuant to

Fed. R. Civ. P. 16(f) and 37(c), enter an order excluding the new analyses contained in the new,

"supplemental" expert reports of Fairfax and Spencer—specifically, the entirety of Fairfax's

report and all of Spencer's analyses of Fairfax's newly offered districts—from use at trial or for

any other evidentiary purpose and to grant such further relief as the Court deems proper.

Respectfully submitted,

CITY OF VIRGINIA BEACH, VIRGINIA
BEACH CITY COUNCIL, and LOUIS
JONES, JAMES WOOD, JESSICA ABBOTT,
ROBERT DYER, BARBARA HENLEY,
MICHAEL BERLUCCHI, JOHN MOSS, GUY
TOWER, AARON ROUSE, ROSEMARY
WILSON, SABRINA WOOTEN, TOM
LEAHY, and DONNA PATTERSON, all in
their official capacities

By: /s/ Joseph M. Kurt
            *Of Counsel*

**Mark D. Stiles** (VSB No. 30683)
City Attorney
**Christopher S. Boynton** (VSB No. 38501)
Deputy City Attorney
**Gerald L. Harris** (VSB No. 80446)
Associate City Attorney
**Joseph M. Kurt** (VSB No. 90854)
Assistant City Attorney
*Attorneys for the City of Virginia Beach*
Office of the City Attorney
Municipal Center, Building One
2401 Courthouse Drive
Virginia Beach, Virginia 23456
(757) 385-4531 (Office)
(757) 385-5687 (Facsimile)
mstiles@vbgov.com
cboynton@vbgov.com
glharris@vbgov.com
jkurt@vbgov.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of July, 2020, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

**Ruth M. Greenwood**
CAMPAIGN LEGAL CENTER
125 Cambridgepark Drive, Suite 301
Cambridge, MA 02140
rgreenwood@campaignlegal.org

**Annabelle E. Harless**
CAMPAIGN LEGAL CENTER
55 W. Monroe St., Ste. 1925
Chicago, IL 60603
Telephone: (312) 312-2885
aharless@campaignlegal.org

**Joseph Gerald Hebert**
**Paul March Smith**
**Robert Weiner**
**Danielle Marie Lang**
**Christopher Lamar**
**Erin Rebecca Chlopak**
**Simone Tyler Leeper**
CAMPAIGN LEGAL CENTER
1411 K Street, N.W.
Suite 1400
Washington, D.C. 20005
Telephone: (202) 736-2200
Facsimile: (202) 736-2222
ghebert@campaignlegal.org
psmith@campaignlegal.org
rweiner@campaignlegal.org
dlang@campaignlegal.org
clamar@campaignlegal.org

*Counsel for Plaintiffs*

 */s/ Joseph M. Kurt*
**Mark D. Stiles** (VSB No. 30683)
City Attorney
**Christopher S. Boynton** (VSB No. 38501)
Deputy City Attorney
**Gerald L. Harris** (VSB No. 80446)
Associate City Attorney
**Joseph M. Kurt**  (VSB No. 90854)
Assistant City Attorney
*Attorneys for the City of Virginia Beach*
Office of the City Attorney

13