**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | |
|---|---|
| Latasha Holloway, et al., | |
| *Plaintiffs,* | |
| v. | Civil Action No. 2:18-cv-0069 |
| City of Virginia Beach, et al., | |
| *Defendants.* | |

**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE
PLAINTIFFS' SUPPLEMENTAL EXPERT REPORTS AND OPINIONS**

Shortly after Plaintiffs challenged Defendants' untimely identification of 20 new witnesses, eight months beyond the discovery deadline, and four months before trial, Defendants moved to exclude two supplemental expert reports that Plaintiffs submitted on March 16, 2020, more than four months ago. Defendants filed this motion even though they had not previously objected to, and in the interim had deposed the experts about, those supplemental reports. If Defendants hope to induce the Court to trade off one motion for the other, the strategy rests on a radically false equivalency.

By waiting until May 29, 2020, to identify not one or two, but 20 new witnesses they could and should have identified long ago, Defendants potentially impose an enormous burden on Plaintiffs.[1] Defendants cite no extenuating circumstance that can justify this prolonged omission. In stark contrast, one of Plaintiffs' experts, Mr. Tony Fairfax, submitted the disputed supplemental

---

[1] The Defendants identified 21 new witnesses in their third supplemental disclosures, but Plaintiffs have moved to exclude only 20 of those witnesses because one, Amelia Ross-Hammond, was also identified by Plaintiffs' timely 26(a) disclosures.

1

report in March 2020 to provide and analyze demographic data not available at the time of his earlier reports, to reflect the *new* address of Plaintiff Latasha Holloway who moved after the prior reports, and to correct an inadvertent omission identified during his deposition by Defendants' questioning. The other expert, Dr. Doug Spencer, supplemented his report to take account of the new information from Mr. Fairfax. Plaintiffs notified Defendants as soon as they became aware that Plaintiff Holloway had moved her residence and that Mr. Fairfax would produce a supplemental report, and they provided the supplemental reports almost seven months before trial.

To negate any conceivable prejudice, Plaintiffs—at the same time they disclosed the supplemental expert reports—offered Defendants the opportunity to depose both experts. Without any objection, Defendants accepted that offer, deposing Dr. Spencer on June 9, 2020, and Mr. Fairfax on June 24, 2020. Plaintiffs more than met their obligation under Fed. R. Civ. P. 26(e) to correct or supplement the record, without prejudicing Defendants.

Defendants only began expressing concern about Plaintiffs' so-called "practice of supplementing this matter" after Plaintiffs objected to Defendants' seriously delinquent identification of 20 new witnesses. When Plaintiffs refused to drop their objection to this massive and untimely imposition in exchange for Defendants' agreement not to object to the supplemental expert reports, and then moved to exclude those witnesses, Defendants went on the offensive. The timeline strongly suggests that Defendants' motion is nothing more than a bargaining chip or diversionary tactic.

This Court should deny Defendants' motion because the two supplemental expert reports by Mr. Fairfax and Dr. Spencer properly supplement existing opinions under Fed. R. Civ. P. 26(e). In any event, by conducting supplemental depositions of the experts, Defendants either cured any

conceivable prejudice from the supplementation, or waived any objection, or both.[2] For that reason, too, the Court should deny Defendants' motion to exclude the supplemental reports.

## BACKGROUND

On July 15, 2019, to satisfy the standard in *Thornburg v. Gingles*, 478 U.S. 30 (1986), for proving a violation of Section 2 of the Voting Rights Act, Plaintiffs submitted an expert report by Mr. Fairfax that identified two illustrative districts in Virginia Beach with a majority Latino (Hispanic), Black, and Asian ("HBA") population, demonstrating it was possible to create such a district, ECF No. 115-1 (Fairfax Initial Report), Dr. Spencer's initial report, submitted the same day, analyzed racially polarized voting in Virginia Beach, and included a performance analysis of Mr. Fairfax's illustrative majority-HBA districts, using recent voting patterns to demonstrate that those districts would allow the HBA community to elect their candidates of choice to the City Council. ECF No. 115-6 at 32-34 (Spencer Initial Report). As required by the Court's scheduling order, ECF No. 89, all three of Plaintiffs' experts submitted rebuttal reports on August 26, 2019. Mr. Fairfax's rebuttal report responded to a report from Defendants' expert Peter Morrison, and included additional illustrative majority-HBA districts. ECF No. 115-2 (Fairfax Rebuttal Report). Dr. Spencer's rebuttal report responded to a report from Defendants' expert Quentin Kidd, and included an additional electoral performance analyses (including 2018 election data) of Mr. Fairfax's illustrative districts. ECF No. 115-7 (Spencer Rebuttal Report). Defendants deposed Mr.

---

[2] *See, e.g.*, Ex. 1 (April 22, 2020 email to Plaintiffs' counsel from Chris Boynton regarding deposition of Dr. Spencer), Ex. 2 (May 2020 email correspondence regarding deposition of Mr. Fairfax) (both showing no objection or reservation of rights by Defendants in relation to either of the two supplemental expert reports); *but see* ECF No. 154-3 (Defendants, for the first time, reserving the right to request that the Court strike Plaintiffs' supplemental reports if Plaintiffs sought Court intervention for Defendants' untimely disclosure of 20 new witnesses).

Fairfax about his initial and rebuttal expert reports on September 24, 2019. *See, e.g.*, ECF No. 115-3 (Fairfax Dep.).

Subsequently, three events prompted two of Plaintiffs' experts to supplement their previous reports. First, at Mr. Fairfax's deposition on September 24, 2019, Defendants asked him repeatedly whether both Plaintiffs were included in his illustrative districts. Their persistent questions caused Mr. Fairfax to recheck his maps after the deposition. He realized then, for the first time, that he had inadvertently excluded Plaintiff Allen (but not Plaintiff Holloway) from an illustrative district. ECF No. 115-3 (Fairfax Dep.) at 179:19-180:22; 215:2-217:8; 223:8-13. Second, in late November 2019, Plaintiff Holloway moved to a new address in Virginia Beach. ECF No. 161-1 (Fairfax Supplemental Report) at 3-4 (noting new address for Ms. Holloway). Ms. Holloway initially informed Plaintiffs' counsel that she was moving in October 2019. Plaintiffs' counsel quickly informed both Defendants and Mr. Fairfax of this new development. Although Ms. Holloway ultimately moved to a house on the same street as her previous residence, in October 2019, she was unsure exactly where or when she was moving. Thus, Plaintiffs' counsel believed that it was necessary for Mr. Fairfax to ensure that her new address remained in a majority-HBA illustrative district. Third, on January 31, 2020, the Census Bureau released new five-year estimates from the American Community Survey (ACS) for 2014-2018.[3]

To provide the Court with the most accurate and helpful expert testimony, deal with the residential move by Plaintiff Holloway, and confirm that it was feasible to draw a demonstrative

---

[3] Citizen Voting Age by Race and Ethnicity, 2014-2018, Census Bureau (January 31, 2020), https://www.census.gov/programs-surveys/decennial-census/about/voting-rights/cvap/2014-2018-CVAP.html. Five-year ACS data is used by map-drawers to obtain Citizen Voting Age Population ("CVAP") estimates, which are in turn used in building and/or assessing the racial breakdown of a district. Prior to this release, the most recent five-year ACS estimates were the 2013-2017 dataset, used by Plaintiffs' experts in their initial and rebuttal reports.

majority-HBA district in which both Plaintiffs reside, Mr. Fairfax modified his initial map. He also included the most up-to-date ACS data.[4] Then, using the newly released 2014-2018 ACS data, Dr. Spencer conducted for the modified illustrative districts the same performance analysis that he did in his original and rebuttal reports for the illustrative districts Mr. Fairfax had previously drawn. Both experts followed the same exact methods and used the same data sources as in their previous two reports.

On October 24, 2019, soon after learning of Plaintiff Holloway's upcoming move, Plaintiffs notified Defendants of their plan to supplement Mr. Fairfax's report.[5] Ex. 3 (Oct. 24, 2019 email to Defs. counsel). On March 16, 2020, just six weeks after the Census Bureau's release of the new ACS demographic data, Plaintiffs provided Defendants with Mr. Fairfax's and Dr. Spencer's supplemental reports, Ex. 4 (March 16, 2020 email to Defs. counsel). This was six months in advance of the September 9, 2020 deadline for supplemental disclosures. ECF No. 142 (Current Scheduling Order); Fed. R. Civ. P. 26(e)(2) (noting "duty to supplement extends both to information included in the report and to information given during the expert's deposition" and "changes . . . must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due."). At that time, Plaintiffs also proactively offered Defendants the opportunity to schedule supplemental depositions for both Mr. Fairfax and Dr. Spencer. Ex. 4. Six weeks later, on April 22, 2020, Defendants—without objection or reservation—accepted Plaintiffs' offer to depose Dr. Spencer. Ex. 1. Three weeks after that, on May 13, 2020, Defendants said they wanted to depose

---

[4] Indeed, in their recent Motion to Dismiss, the Defendants allege that this case is moot because a new Census will occur in 2020. This underscores the usefulness of having the most recent five-year 2014-2018 ACS data in the record. In addition, the 2014-2018 ACS data show the continuing trend of a large minority population in Virginia Beach, and that even later in the decade, it is entirely possible to draw multiple majority-HBA districts in the city.
[5] Plaintiff Holloway had several delays in her actual move and thus Plaintiffs' counsel was unable to provide Mr. Fairfax her new address until November 19, 2019.

Mr. Fairfax as well. Ex. 2. As noted above, Dr. Spencer's deposition occurred on June 9, 2020 and Mr. Fairfax's, on June 24, 2020, both via videoconference. *See, e.g.*, Ex. 5 (Spencer Supp. Dep.); Ex. 6 (Fairfax Supp. Dep.).

On May 29, 2020, eight months after the September 3, 2019 discovery deadline, ECF No. 104, Defendants served Plaintiffs with a third supplement to their initial disclosures, identifying 20 new witnesses they may rely on at trial. Plaintiffs properly and promptly objected to the new witness disclosures, ECF No. 154-2 (Pls. June 8, 2020 letter). Defendants responded on June 10, 2020, the day after they deposed Dr. Spencer, claiming *for the first time* that Plaintiffs' supplemental expert disclosures were improper. ECF No. 154-3 (Defs. June 10, 2020 letter). Notably, Defendants waited to register this objection until six weeks after they agreed to depose the two experts, 12 weeks after Plaintiffs submitted the supplemental reports, seven months after Plaintiffs initially notified them that supplemental testimony was coming, and only after deposing one of Plaintiffs' experts about his supplemental report. When Plaintiffs declined to engage in this lopsided trade, Defendants moved to exclude the supplemental reports. *See* ECF No. 162 at 3 (Defendants noting that they suggested the parties "stand-down" and rescind their respective supplementation disputes).

Plaintiffs' disclosures were thus proper under the federal rules. Further, Defendants, without objection, already took advantage of the opportunity to depose the witnesses regarding those disclosures, which cured any possible prejudice and waived any challenge. The Court therefore should deny Defendants' motion.

## ARGUMENT

I. **Plaintiffs Supplemental Expert Reports Were Proper Under Fed. R. Civ. P. 26(e).**

A. The supplemental expert reports fulfilled Plaintiffs' obligation under Fed. R. Civ. P. 26(e) to supplement and correct the record.

The supplemental expert reports from Mr. Fairfax and Dr. Spencer fulfilled Plaintiffs' obligation to supplement and correct the record under Fed. R. Civ. P. 26(e), which authorizes— and requires—a party to "supplement or correct its disclosure in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete or incorrect." As the Fourth Circuit has explained, "Rule 26(e) envisions supplementation to add additional or corrective information." *Campbell v. United States*, 470 F. App'x 153, 157 (4th Cir. 2012); *see also EEOC v. Freedman*, 961 F. Supp. 2d 783, 797 (D. Md. 2013) ("Supplementation under the Rules means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure.") (citation omitted). Rule 26(e) explicitly applies to expert disclosures:

> *Expert Witness*. For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

Fed. R. Civ. P. 26(e)(2).

Mr. Fairfax's and Dr. Spencer's supplemental reports comply with the plain language of Rule 26(e). The reports incorporate census data that were unavailable prior to close of expert discovery, take account of the new address Plaintiff Holloway moved to in November 2019, correct for an inadvertent omission in Mr. Fairfax's original report regarding Ms. Allen's address

and correct deposition testimony. In other words, the reports properly "add[ed] additional [and] corrective information." *Campbell*, 470 F. App'x at 157.

First, Mr. Fairfax and Dr. Spencer both incorporated new information that was unavailable when they submitted their initial and rebuttal reports. Specifically, both experts used the most recent 5-year 2014-2018 ACS dataset to provide up-to-date determinations on the size, geographic compactness, and political cohesiveness of Plaintiffs' demonstrative districts. ECF No. 161-1 (Fairfax Supp. Report) at 2. The Census Bureau did not release this dataset until January 31, 2020, nearly four months after expert discovery closed on October 1, 2019, ECF No. 104 (Scheduling Order). Mr. Fairfax also updated his maps to identify Plaintiff Holloway's new address, confirming that she remained within a majority-HBA district after moving in late 2019, again after the close of expert discovery.[6] In addition, Mr. Fairfax's supplemental report corrected the inadvertent omission of Ms. Allen's residence in the demonstrative districts in his initial and rebuttal reports. Though Mr. Fairfax included both Ms. Holloway and Ms. Allen in his demonstrative districts attached to Plaintiffs' Amended Complaint, ECF No. 62 at 18, he inadvertently omitted Ms. Allen's address from a demonstrative majority-HBA district when he modified his map for his initial report. Ex. 6 (Fairfax Supp. Dep.) at 16:5-10.[7] After Defendants' questioning called attention to this omission during Mr. Fairfax's deposition, he looked into the Plaintiffs' addresses

---

[6] Even with her new address, Ms. Holloway's residence has always been in a majority-HBACVAP district in all of Mr. Fairfax's plans. ECF No. 161-1 (Fairfax Supp. Report) at 5.

[7] It is clear that Mr. Fairfax thought both Plaintiffs were included in all demonstrative districts provided in his initial and rebuttal reports. As mentioned above, Mr. Fairfax included both Plaintiffs in the demonstrative map attached as Appendix A in the Amended Complaint, and the Defendants questioned him extensively about this map at his deposition. ECF No. 62 (Amended Complaint) at 18; ECF No. 115-3 (Fairfax Dep.) at 105:19-109:21; 110:10-112:9; 216:1-217:8. He amended the map in Appendix A to account for the new 2013-2017 ACS data. *Id*. At that point, Mr. Fairfax believed that both Plaintiffs' addresses were included in the demonstrative districts. *See, e.g.,* ECF No. 115-3 (Fairfax Dep.) at 179:19-180:22; 215:1-217:9; 228:6-12.

in relation to the illustrative districts and generated a supplemental report, concluding (again) that it was feasible to include Ms. Allen's address in a majority-HBA district. ECF No. 161-1 (Fairfax Supp. Report) at 6. To do so, Mr. Fairfax made some "minimal modifications" to one corner of the district in his initial map—the kind of adjustment that is commonplace in map-drawing. Ex. 6 (Fairfax Supp. Dep.) at 12-14; ECF No. 161-1 (Fairfax Supp. Report) at 3 (identifying changes as "minor modifications and insignificant district statistical alterations"), 6 (noting that the "Illustrative Plan, Alternative Plan 1, and Alternative Plan 2 were easily modified to include Georgia Allen" and that "Ms. Allen's address was in close proximity to majority-HBACVAP[8] District 2 in many of the plans in my initial and rebuttal reports"), 12 ("at least one majority-HBACVAP district can be easily drawn that contains both Plaintiffs' residences"). As Mr. Fairfax explained in the Defendants' deposition of him focusing entirely on the supplemental reports, these modifications did not significantly change how the majority-HBA districts performed based on traditional redistricting criteria, Ex. 6 (Fairfax Supp. Dep.) at 28:7-14, and in fact, "most of the districts [in the map] did not change" at all. *Id*. at 18:15-16.[9]

Dr. Spencer's supplemental report reflected an electoral performance analysis of Mr. Fairfax's modified demonstrative districts, which, logically, could only be available after Mr. Fairfax created them using the new data.[10] ECF No. 161-2 (Spencer Supp. Report). Defendants falsely claim that Dr. Spencer conducted "an entirely new analysis." *See* Defs. Mem. at 5. He did

---

[8] Hispanic/Latino, Black, and Asian Citizen Voting Age Population.

[9] Notably, District 1 in all of the plans drawn by Mr. Fairfax did not change at all. Only District 2 was modified. ECF No. 161-1 (Fairfax Supp. Report) at 6.

[10] There is also a short section in the report that makes a clarification. In his initial deposition, Dr. Spencer answered a question about two candidates in a 2010 election, but reserved the right to check the lack statistical significance of these two data points before confirming that answer. In his supplemental report he reported that he had checked, as he said he would, and confirmed that the difference between the two data points was not statistically significant.

nothing of the kind. The performance analysis and methodology utilized by Dr. Spencer in all three of his reports are exactly the same, except for the use of the newly available 2014-2018 ACS data, and Dr. Spencer's opinions remain the same throughout. In his initial and rebuttal reports, Dr. Spencer first compared voter support for each of the minority candidates of choice who lost between 2008 and 2018 to the minority CVAP in each of the illustrative districts. ECF No. 115-6 (Spencer Initial Report) at 32-34; ECF No. 115-7 (Spencer Rebuttal Report) at 10, 16; ECF No. 161-2 at 6. He disaggregated the election results for candidates of choice of the minority community into lower geographical units and then aggregated those votes into the modified illustrative majority-HBA districts. With these aggregated numbers, he determined whether a minority candidate of choice would likely win or lose in the illustrative districts drawn by Mr. Fairfax. *Id*. Dr. Spencer undertook the same analysis of Mr. Fairfax's modified districts in his supplemental report. ECF No. 161-2 (Spencer Supp. Report) at 4-15. In all three reports (initial, rebuttal and supplemental), Dr. Spencer concluded that minority voters in Virginia Beach would be more likely to elect candidates of their choice in Mr. Fairfax's illustrative districts than under the current at-large system. *Id.*; ECF No. 115-6 at 32-34; ECF No. 115-7 at 10, 16.

Defendants are no more faithful to the facts in asserting that Dr. Spencer "used the occasion of Fairfax's supplemental report to perform an entire type of analysis that he had neglected to perform as to Fairfax's illustrative districts when they were initially disclosed in Fairfax's rebuttal report." Defs. Mem. at 4. First, Mr. Fairfax "initially disclosed" his illustrative districts in his initial, not his rebuttal, report. Second, Dr. Spencer included a performance analysis of these districts in *both* his initial *and* rebuttal reports. *See, e.g.*, ECF No. 115-6 (Spencer Initial Report) at 32-34; ECF No. 115-7 (Spencer Rebuttal Report) at 10, 16. Third, the modified districts in Mr. Fairfax's supplemental report were a distinct disclosure to correct and supplement his initial

reports. And logically, Dr. Spencer could only conduct his performance analysis of the modified districts once they existed.

Finally, Defendants' reliance on *Akeva L.L.C. v. Mizuno Corporation,* 212 F.R.D. 306 (M.D.N.C. Dec. 20, 2002), is misplaced. In *Akeva*, the court rejected a supplemental report because the expert had "conduct[ed] *another type* of test," that did not appear in the initial report. *Id.* at 310 (emphasis added). Here, Plaintiffs' experts used the *same* tests and methodologies to update their initial reports to correct a minor error and incorporate newly available information. These are the kinds of supplemental disclosures contemplated under Fed. R. Civ. P. 26(e).

   B.   Plaintiffs' disclosure of the supplemental export reports was timely under Fed. R. Civ. P. 26(e)(2).

Plaintiffs' disclosure of supplemental export reports was timely under the plain language of Fed. R. Civ. P. 26(e)(2), which provides that supplementations to "information included in [an expert's] report and to information given during the expert's deposition" must be disclosed "by the time the party's pretrial disclosures under Rule 26(a)(3) are due." *See N.O. v. Alembik*, No. 1:15-cv-868, 2016 WL 1388777, at *2 (E.D. Va. Jan. 15, 2016) (supplemental expert disclosures provided before the deadline for pretrial disclosures are "timely" within the meaning of Rule 26(e)). The Rule 26(a)(3) deadline in this case is September 9, 2020. ECF No. 142 (Current Scheduling Order). Plaintiffs served the two supplemental reports at issue nearly six months before this deadline, on March 16, 2020. Ex. 4 (March 16, 2020 email to Defs. Counsel), and only 45 days after the Census Bureau released its new ACS data. The supplemental reports were thus timely.

Further, even though there is no advance notice requirement for serving supplemental expert reports, Plaintiffs promptly notified Defendants on October 24, 2019 that Mr. Fairfax's supplemental report would be forthcoming. Ex. 3. Plaintiffs also notified Defendants that Ms.

Holloway would be moving, and that the supplemental report would reflect her new address as soon as it was available.[11] *Id.* In sum, Plaintiffs not only disclosed the supplemental reports well in advance of the discovery deadline, they also provided Defendants with an additional five months' notice of the disclosure. At no point during this entire period, or any time before Plaintiffs expressed concern about Defendants' 20 untimely witnesses, did Defendants reserve the right to object to Plaintiffs' supplementation.

## II.    Even if Plaintiffs' Supplemental Expert Reports Were Deemed Untimely, the Court Should Allow Their Use Because They Are Both Substantially Justified and Harmless.

Even if the Court were to find Plaintiffs' supplemental expert reports untimely under Fed. R. Civ. P. 26(e), it should permit their use at trial and for evidentiary purposes. Fed. R. Civ. P. 37(c) provides that, "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e)," the party may use that information to supply evidence on a motion, at a hearing, or at a trial if "the failure was substantially justified or is harmless." Courts consider five factors in determining whether an untimely disclosure is substantially justified or harmless under Rule 37, including:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003); *Factory Mut. Ins. Co. v. DLR Contracting, Inc.*, No. 3:04CV834, 2005 WL 2704502, at *14 (E.D. Va. Oct. 20, 2005); *Swimways Corp. & Vap Creative*, *Ltd. v. Zuru, Inc.,* No. 2:13–cv–334, 2014 WL 12573390, at *3 n.2 (E.D. Va. July 10, 2014).

As Defendants note, "the first four factors relate primarily to the harmlessness exception" and the "last factor informs the substantial justification inquiry." Defs. Mem. at 10. A court need

---

[11] *See* n.5.

not "tick through each of the [] factors," *Wilkins v. Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014), and a disclosure can be proper under Rule 37 without meeting all of them. *See, e.g.*, *Worldwide Network Servs., LLC v. Dyncorp Int'l, LLC*, 365 F. App'x 432, 445 (4th Cir. 2010) (finding plaintiff's Rule 26 violation justified even though defendant "was surprised" by the new testimony). Plaintiffs' supplemental reports meet this test. There was no surprise to Defendants. Even if they could claim surprise, Defendants *already cured* it by deposing Plaintiffs experts. The supplemental reports can cause no disruption for trial. The up-to-date information in the supplemental reports will be useful for this Court in that it includes the most recent five-year ACS CVAP estimates. And the only reason the information was disclosed after the discovery deadline is that it was not known or did not yet exist.

      A.  <u>Plaintiffs' disclosures are harmless.</u>

The "harmlessness" factors largely reflect two propositions that are as compelling in litigation as they are on the playground: Parties cannot complain unless they are hurt, and parties cannot *begin* complaining *after* they have accepted the offer of amends. Here, Defendants do both. They seek relief for a non-existent injury, after they already availed themselves of the remedy, which need not have been offered in any event.

Defendants claim that their "surprise was total," and that they "had no idea before the close of expert discovery" of Plaintiff Allen's omission from the demonstrative districts in Mr. Fairfax's initial reports. Defs. Mem. at 10. This claim is not credible. At Mr. Fairfax's September 24, 2019 deposition, Defendants asked him *five times* whether both Plaintiffs were included in the illustrative districts. The questioning strongly suggested that Defendants believed there was an omission. In fact, the implication was so strong that it prompted Mr. Fairfax to double check whether Plaintiff Allen resided in his illustrative districts, whereupon he realized that "one of [the

Plaintiffs] may be out."[12] ECF No. 115-3 (Fairfax Dep.) at 223:13. Further, as noted above, Plaintiffs' counsel contacted Defendants on October 24, 2019 to inform them that Ms. Holloway was moving, and that they would file a supplemental expert report addressing *both* Plaintiffs' residences. Ex. 3. Finally, both supplemental reports are entirely consistent with Plaintiffs' position and expert opinions since the outset of this case, *i.e.* that the residences of Ms. Holloway and Ms. Allen are within majority-HBA illustrative districts. *See In re Mercedes-Benz,* No. 99–4311, 2006 WL 2129100, at *9 (D.N.J. July 26, 2006) (holding that defendants "cannot now claim to be surprised" by new information "because that information is entirely consistent with plaintiffs' position throughout this litigation.").

Regardless, by deposing both experts a second time, Defendants cured any surprise they may have experienced. Defendants claim they had to "work[] diligently to mitigate . . . harm" caused by the supplemental disclosures, "quickly arrang[ing], in the midst of the COVID-19 pandemic, follow up depositions of Fairfax and Spencer." Defs. Mem. at 10. But Plaintiffs proactively offered the depositions to the Defendants, and Defendants did not once object to the supplementation or any other aspect of the procedure—not when Plaintiffs initially notified them that the supplements would be forthcoming, and not when Plaintiffs actually disclosed the reports. In fact, Defendants only indicated their desire to depose Dr. Spencer six weeks after receiving his supplemental expert report, Ex. 1, and did not inform Plaintiffs of their wish to depose Mr. Fairfax until May 13, 2020. Ex. 2. Further, the depositions over videoconference were arranged, and Defendants had three months to prepare for the depositions from the time they received the supplemental reports.

---

[12] Ex. 3 at 180:4-8, 215:8-17, 217:3-4, 223:8-10, 228:6-8.

This Court has found the untimely opinion of a plaintiffs' expert witness admissible, in part because defendants' "'opportunity to fully depose [the expert witness], and explore the full nature of his opinions' . . . eliminated any surprise, cured any defect, and substantially reduced or outright eliminated any prejudice to defendants." *Alembik*, 2016 WL 1388777, at *2 (quoting *Barta v. Sears, Roebuck & Co.*, 307 F. Supp. 2d 773, 783 (E.D. Va. 2004)). In case after case, courts have ordered depositions as a remedy for an allegedly late expert disclosure. *See, e.g.*, *Deal v. Louisiana ex rel. Dep't of Justice*, No. 11-743, 2014 WL 5363966 (M.D. La. Oct. 21, 2014) (declining to exclude a supplemental report where the party that provided the supplement made the expert available for a deposition); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-cv-05944SC, 2015 WL 13756254, at *4 (N.D. Cal. Aug. 13, 2015) (same). Though not required here, Plaintiffs offered that option in October 2019, and Defendants took advantage of it, deposing both of Plaintiffs' experts in June 2020. Only after those depositions, and after Plaintiffs' motion to exclude the 20 new witnesses was filed, did Defendants profess surprise and object to the supplemental reports.

Nevertheless, Defendants assert an outstanding injury "in not having this new analysis prior to serving their rebuttal reports." Defs. Mem. at 11. Defendants even present a wish list of analyses their experts would have performed had they only had the chance. *Id.* at 5. This claim is implausible. Defendants could have conducted these analyses prior to the close of expert discovery – *they simply chose not to.* The analyses address the aggregation techniques and methodology employed by Plaintiffs' experts, and both experts used the same techniques and methodology in their supplemental report as in their initial report. Thus, unlike the plaintiff in *Ullman v. Auto-Owners Mutual Insurance Co.*, No. 2:05-cv-1000, 2007 WL 1057397 (S.D. Ohio Apr. 5, 2007) on which they rely, Defendants are in no different a position now than they were before the

supplemental reports.[13] Plaintiffs' experts similarly made no new "assumptions about data" in the supplemental reports. They simply updated their datasets to include the most recent and previously unavailable five-year 2014-2018 ACS data. The findings of Plaintiffs' experts regarding "the cohesiveness of African American, Asian and Hispanic voters" also have not changed. Defs. Mem. at 5. And Dr. Kidd's decision to rely entirely on Dr. Spencer's analysis of cohesion is immaterial, as Spencer's supplemental report does not address cohesion. It concerns only his performance analysis on the modified districts.[14] That performance analysis focused on whether minority candidates prevailed in the illustrative districts, not whether black, Hispanic and Asian voters voted together and were politically cohesive. Neither of Defendants' two expert witnesses in their expert reports or at their depositions challenged Dr. Spencer's performance analysis; nor did they conduct any independent analyses of their own (they merely critiqued plaintiffs' expert reports). Having not conducted the analysis when the district contained one plaintiff, Defendants are not credible in claiming that they would have done so when it contained both. *See, e.g.*, ECF No. 118-8 (Kidd Report); ECF No. 118-5 (Kidd Dep.); Ex. 7 (Morrison Report); Ex. 8 (Morrison Dep.).[15]

---

[13] Dr. Spencer used a "spatial join" process to aggregated Census block data in his initial, rebuttal, and supplemental reports. *See, e.g.*, ECF No. 115-6 (Spencer Initial Report) at 38; ECF No. 115-7 (Spencer Rebuttal Report) at 10, 16; Ex. 5 (Spencer Supp. Dep.) at 47:11-24. Mr. Fairfax used the Maptitude for Redistricting program to disaggregate and reaggregate block data in the initial, rebuttal, and supplemental reports. ECF No. 151-1(Fairfax Initial Report) at 4; ECF No. 115-2 (Fairfax Rebuttal Report) at 3; Ex. 6 (Fairfax Supp. Dep.) at 47:16-51:13. The process for creating their respective reports did not change. Instead, Mr. Fairfax used new information – the new ACS data and Ms. Allen's correct address – to draw new illustrative districts. Dr. Spencer then used new information – Mr. Fairfax's new illustrative districts – to confirm that his previous conclusion did not change as a result of Mr. Fairfax's new maps.

[14] Indeed, Dr. Kidd has no expertise on the methodology for conducting racially polarized voting analysis. ECF No. 118-5 (Kidd Dep.) at 37:16-38:13. He did not even attempt to calculate his own homogenous precinct, ecological regression, or ecological inferences estimates, *id*. at 52:1-9, and he did not even open the file Dr. Spencer produced containing his estimates. *Id*. at 53:6-18.

[15] Mr. Morrison never included any opinions about VTD splits, compactness, equal population, or any other district statistic besides HBACVAP and the method for calculating it in his report. Ex. 7 (Morrison Report). Thus, it is beyond belief for Defendants to claim that if Mr. Fairfax's districts

Defendants also make much of their perceived lost opportunity to file a motion for summary judgment based on information in Plaintiffs' supplemental reports, but this claim is illogical. Plaintiffs' initial and rebuttal reports demonstrated that at least Ms. Holloway resides in a majority-HBA district that is "sufficiently large and compact." *Hall v. Virginia,* 385 F.3d 421, 426 (4th Cir. 2004) (quoting *Gingles*, 478 U.S. at 50-51)). Thus, regardless of the supplemental reports, Plaintiff Holloway has *always* demonstrated that her claim meets *Gingles* prong 1. Defendants did not move for summary judgment on *Gingles* prong 1 previously. Their motion for summary judgment focused entirely on prongs 2 and 3 (political cohesion of minority voters and whether whites vote as a bloc to usually defeat minority candidates of choice), and did not challenge any evidence under *Gingles* prong 1. ECF No. 115 (Defs. Mot. for Summ. J.). As Ms. Holloway's position as to *Gingles* prong 1 has not changed, it is not credible that Defendants would move for summary judgment with regard to her standing now. And it would have made no sense, and still would make no sense, to move only as to Plaintiff Allen, because regardless of any ruling as to her, the case would still satisfy *Gingles* prong 1 because of Ms. Holloway's standing. Further, if, as Defendants claim, they believed Ms. Allen was included in one of Mr. Fairfax's illustrative districts, there was no reason to refrain from moving for summary judgment if they thought they had a viable argument. And if they did not think she was included, then there was no reason to refrain from moving on that ground. Defendants' inertia is not evidence of injury resulting from Plaintiffs' disclosure.[16]

---

had originally included Ms. Allen's address (like all experts thought they did), he would have done so. Further, Mr. Morrison actually did not perform a large chunk of the "analysis" he did provide. *See, e.g.*, Ex. 8 (Morrison Dep.) at 129:1-137:9.

[16] Defendants filed a motion for summary judgment on October 22, 2019. ECF No. 114. Two days later, Plaintiffs notified Defendants that they will be providing supplemental expert reports. In their reply in support to their motion for summary judgment, Defendants did not express concern about the then forthcoming supplemental reports.

Plaintiffs' supplemental reports were harmless with respect to the final two factors as well. The supplemental reports could not disrupt, or even threaten to disrupt, the trial since it was still seven months away when the new reports were submitted. If anything, the most recent CVAP data will allow the Court to conclude that all three *Gingles* factors remain satisfied, even with more recent data available. The reports also clarify that, as explained in the Complaint, Plaintiff Allen's residence can be included in the demonstrative majority-HBA district that includes Ms. Holloway's (new and old) address(es). Moreover, that this district includes both Plaintiffs' residences in it is not separately important to Defendants because Plaintiff Holloway is included in the district in all of the illustrative maps from Mr. Fairfax's initial and rebuttal reports. In other words, since Plaintiff Holloway has standing, there is no need for the court to assess whether anyone else does. In sum, Plaintiffs' disclosures are harmless under each of the relevant factors.

      B.  <u>Plaintiffs' disclosures are substantially justified.</u>

Plaintiffs' disclosures are justified given the circumstances. With respect to the new ACS data and Ms. Holloway's unexpected change of residence, Plaintiffs' experts promptly updated their reports to respond to changed circumstances beyond their control. The Census Bureau did not release the 2014-2018 ACS estimates until January 31, 2020, nearly four months after the close of expert discovery. And Ms. Holloway moved unexpectedly in late 2019, again after the close of expert discovery. Mr. Fairfax's omission of Ms. Allen from his initial demonstrative districts was a genuine accidental omission, missing her address by only a few blocks, and Mr. Fairfax worked swiftly to correct his omission after Defendants' repeated questioning brought it to his attention.

## CONCLUSION

Plaintiffs supplemental expert reports are appropriate and timely under Fed. R. Civ. P. 26(e). The timing of Defendants' motion suggests that it is purely tactical, devoid of substance. Defendants waited months to file an objection to these disclosures, until after they had already remedied any conceivable harm by deposing both experts a second time, and only after Plaintiffs objected to the Defendants' untimely disclosure of 20 new witnesses 10 weeks before trial.

Accordingly, this Court should deny Defendant's motion to exclude.

Dated: August 5, 2020

Respectfully submitted,

Ruth M. Greenwood                       /s/ J. Gerald Hebert
CAMPAIGN LEGAL CENTER                    J. Gerald Hebert
125 Cambridgepark Drive, Suite 301       VSB. No. 38432
Cambridge, MA 02140                      Paul M. Smith
rgreenwood@campaignlegal.org             Robert Weiner
                                         Danielle Lang
                                         Christopher Lamar
Annabelle E. Harless                     Simone Leeper*
CAMPAIGN LEGAL CENTER                    CAMPAIGN LEGAL CENTER
55 W. Monroe St., Ste. 1925              1101 14th Street NW, Suite 400
Chicago, IL 60603                        Washington, DC 20005
(312) 312-2885                           (202) 736-2200 (Office)
aharless@campaignlegal.org               (202) 736-2222 (Facsimile)
                                         ghebert@campaignlegal.org
                                         psmith@campaignlegal.org
                                         rweiner@campaignlegal.org
                                         dlang@campaignlegal.org
                                         clamar@campaignlegal.org

                                         *Attorneys for Plaintiffs*

                                         **\*Licensed to practice in Florida
                                         only; Supervised by a member of
                                         the D.C. Bar.**

## CERTIFICATE OF SERVICE

I hereby certify that on the August 5, 2020, I will electronically file the foregoing with the

Clerk of the Court using the CM/ECF system, which will then send a notification of such filing to

the following:

**Mark D. Stiles** (VSB No. 30683)
**Christopher S. Boynton** (VSB No. 38501)
**Gerald L. Harris** (VSB No. 80446)
**Joseph M. Kurt** (VSB No. 90854)
Office of the City Attorney
Municipal Center, Building One, Room 260 2401 Courthouse Drive
Virginia Beach, Virginia 23456
(757) 385-8803 (Office)
(757) 385-5687 (Facsimile)
mstiles@vbgov.com
cboynton@vbgov.com
glharris@vbgov.com
jkurt@vbgov.com

Katherine L. McKnight (VSB No. 81482)
Richard B. Raile (VSB No. 84340)
BAKER & HOSTETLER, LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 861-1500
Facsimile: (202) 861-1783
kmcknight@bakerlaw.com
rraile@bakerlaw.com

Patrick T. Lewis (pro hac vice pending)
BAKER & HOSTETLER, LLP
127 Public Square, Suite 2000
Cleveland, OH 44114
Telephone: (216) 621-0200
Facsimile: (216) 696-0740
plewis@bakerlaw.com

/s/ J. Gerald Hebert
*Counsel for Plaintiffs*

20