**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | |
|---|---|
| Latasha Holloway, et al., <br><br> Plaintiffs, <br><br> v. <br><br> City of Virginia Beach, et al., <br><br> Defendants. | Civil Action No. 2:18-cv-0069 |

### DEFENDANTS' REPLY TO PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS' SUPPLEMENTAL EXPERT REPORTS AND OPINIONS

In their memorandum in opposition ("Plaintiffs' Brief") to Defendants' Motion to Exclude, Plaintiffs argue that their grossly out-of-time supplemental expert reports and opinions constitute garden-variety corrections pursuant to Rule 26(e)—and thus are subject to the deadlines set forth in Rule 26(a)(3). Plaintiffs also argue that, in any case, Defendants are not prejudiced by disclosures of key expert opinions and analyses that came six months after the close of expert discovery. These arguments rest on an extraordinary premise that, though never expressly stated, rings loud throughout Plaintiffs' Brief: that with respect to the illustrative plans that Plaintiffs *actually intend to proffer* at trial, key details of these plans— such as voting district contours and demographics, whether Plaintiff Georgia Allen resides in one of the illustrative districts, and data regarding how given districts 'perform' in elections—all are mere trifles. In Plaintiffs' view, it is enough that they had previously offered expert opinions on these matters as to other, *now abandoned districts* that were drawn with a supposedly similar methodology. Because expert opinions on these very issues are central to a vote dilution claim under Section 2 of the Voting Rights Act—as Plaintiffs no

doubt are aware—their argument that these are routine supplements that do not prejudice Defendants is entirely without merit.

Plaintiffs' Brief also addresses at length a minor detail included in Anthony Fairfax's so-called "supplemental" report: his confirmation that Plaintiff Latasha Holloway's new address remains in Fairfax's original illustrative district. It must be noted that Defendants made no objection to the supplementation of Holloway's new address, nor did they raise this topic in their memorandum in support. Although there is no dispute in this regard, Plaintiffs' discussion of the Holloway supplementation is nevertheless quite useful in that it provides as contrast an example of expert supplementation that properly falls within the scope of Rule 26(e). In short, Plaintiffs' Holloway-related supplementation (a new address that doesn't change the illustrative or alternative districts) stands in sharp contrast both to Fairfax's using "supplementation" of wholly new district maps incorporating Plaintiff Allen's long-standing address and to Spencer's "supplementation" of new performance analyses of Fairfax's brand new maps. Neither of Plaintiffs' supplemental reports were provided to Defendants' experts before their expert reports came due.

Plaintiffs' Brief also repeatedly invites a comparison between their out-of-time expert disclosures and Defendants' disclosure of 20 fact witnesses, to which Plaintiffs object. This is an odd strategy on Plaintiffs' part, as it highlights their gamesmanship—seeking on the one hand to hold against Defendants their efforts at mitigating the harms caused by Plaintiffs' untimely disclosures, while at the same time asking the Court to reward their indolence in making no effort to mitigate the harms they contend they have suffered.

Plaintiffs' Brief candidly acknowledges that Fairfax's failure to draw any illustrative district that included Plaintiff Allen's residence address was his error alone. Moreover,

2

Plaintiffs offer no explanation for why, after being alerted to this error at his September 2019 deposition, Plaintiffs did not serve upon Defendants the allegedly corrective supplemental reports for another <u>six months</u>. Nor have Plaintiffs explained Spencer's failure to conduct or disclose performance analyses of any of the districts Fairfax disclosed in his rebuttal report or why he should be allowed to cure that omission with a supplemental report necessitated by Fairfax's inexplicable prior error.

Plaintiffs acknowledge that courts evaluate the admissibility of out-of-time disclosures by evaluating both the prejudice borne by the receiving party and the justification for the offering party's late disclosure. Plaintiffs' Brief unwittingly demonstrates that both considerations militate strongly in favor of the exclusion of these so-called 'supplemental' expert reports.

## ARGUMENT

> I. *Plaintiffs' characterization of their out-of-time disclosures as mere corrections of error or omission pursuant to Rule 26(e) disregards the scope, content and nature of the expert reports at issue.*

Plaintiffs labor to cast their experts' supplemental reports as constituting only minor amendments that are governed by Rule 26(e)'s duty to supplement—and thus subject to the September 9, 2020 deadline provided by the Court, pursuant to Rule 26(a)(3). Plaintiffs' Brief at 11. They contend that because "Plaintiffs' experts used the *same* tests and methodologies to update their initial reports to correct a minor error," they have not fundamentally altered their original reports. Plaintiffs' Brief at 11 (emphasis original). If these amendments could reasonably be deemed "minor changes," Plaintiffs' analysis would be correct. However, both supplements contain fundamental alterations to the original and rebuttal expert opinions and

analyses offered by these two experts, and accordingly go far beyond the scope of changes allowed by supplement under Rule 26(e).

As a preliminary matter, the fallacy of Plaintiffs' underlying logic is demonstrated by a simple hypothetical. Consider an expert in a products liability case who realizes that he has accidentally performed tests on the brake system of the wrong model automobile. By the Plaintiffs' logic, so long as the expert employed the "same methodology" and reached a "consistent conclusion," his supplementation of his erroneous initial report—with testing analysis performed on the correct model's brake system—would constitute a minor correction of an error as contemplated by Rule 26(e) and not a fundamentally new analysis.

To be sure, an analysis of the brake system on the wrong model car might, in some sense, be thought of as a *simple* error. Quite obviously, though, it is also a *fundamental* error—requiring as it does a new analysis to be performed. Such is the case with Fairfax's *simple* error of not including Plaintiff Allen's address in an illustrative district: it is also a *fundamental* error that required both him and Douglas Spencer to perform new analyses based upon new district maps.[1]

By focusing on the alleged sameness of the general methodologies and conclusions, Plaintiffs miss the critical point that an expert's analysis and opinions are not subject to critique merely based upon *the type of* methodology employed, but also based upon *the specific application* of and conclusions reached by the methodology in question. One party's expert might well agree that an opposing expert used the correct type of method or technique, but still

---

[1] By itself, the change from offering an illustrative map *that does not* place Plaintiff Allen in a majority-minority district to a map *that does* place her in such a district constitutes a legally significant change of opinion in the context of a Section 2 Voting Right Act claim. Plaintiffs' tacitly admit the importance of this central fact by having directed Fairfax to redraw all of his illustrative maps to include her address.

challenge the skill, accuracy, and legitimacy of the method's application. Applying this principle to the present case, even assuming *arguendo* that Defendants agreed Fairfax and Spencer used proper methodologies and applied those methods properly in their initial reports, that would by no means constitute a 'blessing' of any subsequent applications of such methodologies—as Plaintiffs unmistakably suggest.

Furthermore, when it comes to the unique craft of drawing district maps, as Fairfax was charged with doing, there simply is no such thing as using the "same methodology." As is evident from Fairfax's description of his process, there are many variables involved in drawing voting districts that pass constitutional and Voting Rights Act standards and adhere to whatever other requirements may be present. As Fairfax's explanation in deposition testimony demonstrates, drawing an illustrative district that included Allen's address required him to modify numerous areas of the proposed districts, split various block groups and voter tabulation districts ("VTDs"), and incorporate traditional districting criteria (presumably Constitutional districting standards). Ex. 3, 13:16-14:25, 17:1-8. Fairfax also acknowledged that it was necessary to modify adjacent districts as well. Ex. 3, 18:3-8. Simply put, Fairfax's supplemental report disclosed a completely new set of illustrative district maps.

So while Fairfax may have been following the same general methodology when he drew new districts for his supplemental report, he could not simply plug in new inputs in a rote manner and get a predetermined outcome. Numerous judgment calls and creative decisions are necessarily involved in creating a district map that a given expert contends satisfies all applicable criteria. These judgment calls are not the trifling details Plaintiffs portray them as; they frequently are the very basis for dispute in all manner of voting rights cases. The judgment calls Fairfax made in producing new maps are subject to scrutiny.

5

Plaintiffs also candidly acknowledge that Fairfax's drawing of new district maps resulted in Spencer performing wholly new performance analyses for districts that—for the first time—actually contained Plaintiff Allen's residential address.  Importantly, Spencer did not previously perform a performance analysis of the five alternative district maps that Fairfax disclosed in his rebuttal report.  Yet Plaintiffs refuse to concede that Spencer's processing of *"new data"* (from illustrative districts that did not previously exist) to derive *new voter support datapoints* (*see* Ex. 2) constitutes a *new analysis*. Plaintiffs' Brief at 9-10.  Plaintiffs admit that Spencer "logically" could only perform the proper "electoral performance analysis" once he had possession of Fairfax's new districts. Plaintiffs' Brief at 11.  But while this fact seemingly absolves Spencer of personal fault, it does not alter the fundamentally new nature of his so-called "supplements." Plaintiffs gloss over the reality that Spencer entirely omitted from his earlier (rebuttal) report any performance analysis of the five (5) alternative district maps Fairfax provided in his rebuttal report (which are the very maps Fairfax had to re-draw as part of his supplemental report).  Plaintiffs' excuse for Spencer's new performance analysis as having been necessitated by Fairfax's error does nothing to cure or explain the fact that Spencer produce altogether new analyses.[2]

Plaintiffs' supplementation of Plaintiff Holloway's address—and Fairfax's confirmation that the new address remained in his illustrative district—is the very type of supplementation that Rule 26(e) contemplates. In contrast, the wholly new maps and analyses produced by Fairfax and Spencer, though perhaps necessitated by a simple error, plainly are

---

[2] In his original report, Spencer conducted a performance analysis for the one illustrative plan that Fairfax provided in his original report. However, after Fairfax produced five (5) alternative illustrative maps in his rebuttal report, Spencer did not produce a corresponding performance analysis for any of these five (5) new maps in his rebuttal report. See Exhibit 5 to Defendants' Memorandum in Support at 16.  Plaintiffs erroneously claim that he did. Plaintiffs' Brief at 10.

6

opinions and analyses of a scope and complexity far beyond that contemplated by Rule 26(e). Their disclosures, six months after the close of expert discovery, constitute out-of-time expert opinions that are subject to Rule 37(c)(1)'s provision for the exclusion of such opinions from further use in litigation.

> II. *Defendants are significantly prejudiced by Plaintiffs' out-of-time expert reports.*

Plaintiffs stridently and repeatedly assert that "Plaintiffs' disclosures are harmless under each of the relevant [*Bresler*] factors." Plaintiffs' Brief at 18. However, the prejudice Plaintiffs' out-of-time disclosures caused to Defendants' is readily apparent. The fact that Plaintiffs' experts offered wholly new districts and performance analyses—supplanting the old districts and absence of performance analyses—on March 16, 2020, means that Defendants and their experts did not have access to the operative districts and performance analyses either during the period open for expert discovery or prior to Defendants' deadline to move for summary judgment. The notion that, in the context of a Section 2 vote dilution claim, not possessing the operative expert opinions on these matters is not prejudicial simply defies all reason.

Plaintiffs have the temerity to claim that "Defendants are in no different a position now as they were before the supplemental reports." Plaintiffs' Brief at 15-16. This, according to Plaintiffs, is because both their experts "used the same techniques and methodology in their supplemental report as in their initial report." Plaintiffs' Brief at 15. Plaintiffs here reassert the same fallacy that blinds them to the fundamentally altered nature of their experts' reports. The quality and reliability of an expert report are not measured solely by *the type of* technique or methodology used in developing opinions or analyses. It is *the application* of the methodologies and techniques—and the unique resultant opinions—that matter. That neither a

7

single illustrative district map currently relied upon by Plaintiffs nor one performance analysis for the operative district maps was produced while expert discovery was open is plainly prejudicial to Defendants. Defendants are unable to rewind time to incorporate these maps and analyses in their summary judgment motion. Defendants also have no current Court-sanctioned process for rebutting all of these new opinions. And even were the Court to provide a new opportunity for Defendants' experts to rebut these new opinions, trial is now less than 60 days away and there is an attendant cost and distraction incurred by forcing Defendants' experts to rebut these new maps and analyses. For all these reasons, Defendants are not spared prejudice because they and they experts were allegedly aware of the general type of methodology that Plaintiffs' experts employ.

Defendants were, unknowingly, flying blind during the open period for expert disclosures and discovery and at the time they filed their summary judgment motion. Plaintiffs attempt to minimize this prejudice by noting that "Defendants did not move for summary judgment on *Gingles* Prong 1" and by weighing in on what Defendants' litigation strategy might have been had they had possessed what Plaintiffs now offer as their operative expert opinions. Plaintiffs' Brief at 17. In so doing, Plaintiffs endeavor in vain to put back together Humpty Dumpty's broken pieces. They ignore obvious possibilities, such as the following: what if Defendants' experts had been given the opportunity during the period of open expert discovery to examine the viability of an illustrative map that actually placed Plaintiff Allen's residence in a majority-minority district? Obviously, any faults they found therein might well have served as an alternative basis for a motion for summary judgment. Conveniently for Plaintiffs, that ship had long sailed by the time they made the disclosures at issue.

The incorporation of new ACS data in Fairfax's new districts—far from saving

Plaintiffs' out-of-time disclosures—only emphasizes all the more that Humpty Dumpty cannot be put back together again, even to serve Plaintiffs' project of speculating what Defendants' litigation strategy might have been. This is so because the Defendants' missed opportunity must be viewed *ex ante*—namely, from the situation as it would have appeared at the time of the filling of any dispositive motion. As Plaintiffs' make clear, the new ACS data was not available during the period of open expert discovery or before dispositive motions were due. Had Fairfax not made the crucial error in his initial and rebuttal reports of excluding Plaintiff Allen from an illustrative district, his illustrative maps (and Spencer's performance analysis based thereupon) would not have included the 2014-2018 ACS data. Rather, any timely expert opinions would have been based on the ACS data from 2013-2017. Those never-properly-performed analyses then would have been the basis for the Court's ruling on a putative dispositive motion. *And what would Fairfax's illustrative districts based on that 2013-2017 data have looked like?* Perhaps conveniently for Plaintiffs, we will never know. Defendants were entitled to receive the proper analysis on these crucial issues at the proper time. Plaintiffs should not gain strategic advantage from their experts' own sloppy work. The upshot is that, although it is true that the 2014-2018 ACS dataset only became available after expert discovery closed, its inclusion in Plaintiffs' supplementation only further muddies the waters with regard to Defendants' missed opportunity *at the summary judgment phase*. Plaintiffs' attempt to 'game-out' Defendants' strategy can provide no clarity to this matter.

Plaintiffs also advertise their obliviousness to Defendants' disadvantage by emphasizing that *Spencer* "logically" could only properly produce his new analysis once Fairfax provided the operative districts. This undoubtedly is true. No less true, however, is that *Defendants and their experts* could not properly evaluate Fairfax's and Spencer's work until they possessed the operative districts and performance analyses. Plaintiffs take it as a

given that, had Plaintiffs' experts initially performed their analyses correctly—which would have included the 2013-2017 ACS data—Defendants would have had no grounds to challenge the resultant finding. Again, we will never know.

Considering all this, Plaintiffs' claim that Defendants "cured any possible prejudice" by re-deposing Plaintiffs' experts rings hollow. While Defendants' diligent efforts perhaps mitigated some of the harm *going forward*, there is nothing they could do to recover lost opportunities to properly defend this case at earlier stages of litigation.

Another further manifestation of Plaintiffs' blindness to the prejudice caused to Defendants is seen in their reliance upon this Court's opinion in *Barta v. Sears Roebuck & Co.*, which they cite for the proposition that the opportunity to depose the Plaintiffs' experts 'eliminated any surprise, cured any defect, and substantially reduced or outright eliminated any prejudice to defendants." 307 F. Supp. 2d 773, 783 (E.D. Va. 2004). It is self-evident that this proposition cannot at all apply with respect to the summary judgment phase of this litigation— long passed by the time Plaintiffs made the disclosures at issue. Furthermore, in *Barta*, this Court heard argument for both the motion to strike experts' evidence and the parties' cross-motions for summary judgment at the same hearing and entered a joint order on these disparate issues. No. 3:03-cv-408, ECF Nos. 48 and 51. Stated differently, in that case, the defendant had received the supplemental reports being challenged *before* summary judgement was argued and decided. *See* 307 F. Supp. 2d 773.

Plaintiffs' supplemental disclosures related to Plaintiff Holloway's change of address did not meaningfully prejudice Defendants. In sharp contrast, those disclosures based on Fairfax's failure to include Plaintiff Allen's residential address in an illustrative district caused Defendants irreparable harm.

      III.     *Plaintiffs offer no justification for either Fairfax's original error or the six-month delay in offering a correction.*

Once again, Plaintiffs' supplementation related to Plaintiff Holloway's change of address contrasts starkly with those supplementations flowing from Fairfax's error regarding Plaintiff Allen's long-standing residence address. In the former instance, Plaintiffs' later disclosure was plainly justified because the information was new and didn't require redrawing of any illustrative districts. On the other hand, it is unclear how Plaintiffs' assertion that Fairfax's failure to include Allen's address in his illustrative districts was a "genuine accidental omission" *justifies or cures* the out-of-time disclosure. Plaintiffs' Brief at 18. Where a truly minor detail that does not change the operative analyses is at issue, perhaps this "honest-mistake" justification might suffice. The United States District Court for the Middle District of North Carolina has admonished, however, that Rule 26(e) does not provide cover for "failures of omission because the expert did an inadequate or incomplete preparation." *Akeva L.L.C. v. Mizuno*, 212 F.R.D. 306, 310 (M.D.N.C. Dec. 20, 2012). Fairfax's inexcusable omission falls squarely into this category.

Moreover, while Defendants are inclined to believe that Fairfax's error was an honest—though gravely important—mistake, that fact does nothing to explain why Plaintiffs did not supplement his report until six months after the deposition that Plaintiffs' claim alerted Fairfax to his error. Plaintiffs' Brief at 2. Plaintiffs provide no reason for this delayed supplementation. Were it the case that they found the 2013-2017 five-year ACS data unfavorable to their purposes, it may have been an advantage to wait for the newer ACS data to seek a tactical benefit from his error. Importantly, Plaintiffs have failed to (ever) provide a correction to Fairfax's illustrative maps based on the 2013-2017 ACS data that was in effect during the expert discovery period. Stated plainly, Plaintiffs should not be permitted to use

Fairfax's failure to include Plaintiff Allen in his illustrative districts to introduce a slow moving Trojan horse that contains freshly drawn districts based upon newly released ACS data—long after expert discovery and the summary judgment phase of trial had concluded.

> IV. *Plaintiffs' argument regarding waiver attempts to cast fault on Defendants for Plaintiffs' failures and omissions.*

Plaintiffs argue that Defendants waived any objection to their out-of-time disclosures by working diligently to re-depose Plaintiffs' experts. The policy ramifications of this putative standard are astonishing. Were the standard Plaintiffs propose adopted, any party that believes it is prejudiced by an out-of-time disclosure would have an enormous incentive to sit on their hands and do nothing because efforts to mitigate the resultant prejudice would constitute a waiver of their objections. Sound trial practice dictates the opposite result: that a party impacted by an untimely disclosure should first work to mitigate any prejudicial impact and then seek Court relief to the extent necessary. Notably, Plaintiffs have doubled-down on their mitigation-as-waiver argument by repeatedly refusing to depose any of the additional fact witnesses formally identified in Defendants' Third Supplement to their Initial Disclosures. Simply put, a rule that benefits those who refuse to mitigate prejudicial impacts while punishing those who diligently work to mitigate prejudice emphatically fails to serve public policy or promote sound trial practice.

Plaintiffs additionally argue that Defendants have waived objection by waiting until July 2020 to file their motion. Oddly, Plaintiffs would have the Court start the "clock" on October 24, 2019—the date they alerted Defendants that a supplemental report *would eventually* be provided at an unspecified date. Plaintiffs' Brief at 11-12. In Plaintiffs' view, the five additional months of delay in producing supplementation (that already would have been late in October 2019) somehow works against the Defendants—rather than against the

Plaintiffs. Plaintiffs advance this argument despite the fact that Defendants did not then have the supplemental reports until March 2020 and could not possibly have known the actual contents of those reports until they were received. Plaintiffs' contention defies all notions of decency and fair-play. Defendants have not waived their objections either by making diligent efforts to mitigate harm via re-deposing Plaintiffs' experts or by *Plaintiffs' long delay* in producing the supplemental reports they promised in October 2019.

## CONCLUSION

A careful review of the Plaintiffs' Brief reveals that they cannot substantively deny that their so-called "supplemental" expert reports are: (1) substantial changes to their earlier opinions, (2) out-of-time, (3) prejudicial to the Defendants, and (4) without material justification. Defendants renew their request that the Court exclude the new analyses and opinions contained in these reports—namely, all newly proposed district maps found in Fairfax's supplemental report and all performance analyses of these newly offered maps found in Spencer's supplemental report—from use at trial or for any other evidentiary purpose and to grant such further relief as the Court deems proper.

Respectfully submitted,

CITY OF VIRGINIA BEACH, VIRGINIA BEACH CITY COUNCIL, and LOUIS JONES, JAMES WOOD, JESSICA ABBOTT, ROBERT DYER, BARBARA HENLEY, MICHAEL BERLUCCHI, JOHN MOSS, GUY TOWER, AARON ROUSE, ROSEMARY WILSON, SABRINA WOOTEN, TOM LEAHY, and DONNA PATTERSON, all in their official capacities

By: /s/ Joseph M. Kurt
       *Of Counsel*

**Mark D. Stiles** (VSB No. 30683)
City Attorney
**Christopher S. Boynton** (VSB No. 38501)
Deputy City Attorney
**Gerald L. Harris** (VSB No. 80446)
Associate City Attorney
**Joseph M. Kurt** (VSB No. 90854)
Assistant City Attorney
*Attorneys for the City of Virginia Beach*
Office of the City Attorney
Municipal Center, Building One
2401 Courthouse Drive
Virginia Beach, Virginia 23456
(757) 385-4531 (Office)
(757) 385-5687 (Facsimile)
mstiles@vbgov.com
cboynton@vbgov.com
glharris@vbgov.com
jkurt@vbgov.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of August, 2020, I will send a copy of the following supplement to Defendants' Initial Disclosures by email to the following:

**Joseph Gerald Hebert**
**Danielle Marie Lang**
**Paul March Smith**
**Annabelle Harless**
**Ruth Merewyn Greenwood**
**Christopher Lamar**
**Robert Neil Weiner**
Campaign Legal Center
1411 K Street, NW
Suite 1400
Washington, DC 20005
(202) 736-2200 (telephone)
(202) 736-2222 (facsimile)
ghebert@campaignlegal.org
dlang@campaignlegal.org
psmith@campaignlegal.org
aharless@campaignlegal.org
rgreenwood@campainlegal.org
clamar@campaignlegal.org
*Attorneys for Plaintiffs*

       */s/ Joseph M. Kurt*
**Mark D. Stiles** (VSB No. 30683)
City Attorney
**Christopher S. Boynton** (VSB No. 38501)
Deputy City Attorney
**Gerald L. Harris** (VSB No. 80446)
Associate City Attorney
**Joseph M. Kurt**
Assistant City Attorney (VSB No. 90854)
*Attorneys for the City of Virginia Beach*
Office of the City Attorney
Municipal Center, Building One, Room 260
2401 Courthouse Drive
Virginia Beach, Virginia 23456
(757) 385-8803 (Office)
(757) 385-5687 (Facsimile)
mstiles@vbgov.com
cboynton@vbgov.com
glharris@vbgov.com
jkurt@vbgov.com