IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED
AUG 17 2020
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**LATASHA HOLLOWAY, et al.,**

Plaintiffs,

v.   CIVIL ACTION NO. 2:18-cv-69

**CITY OF VIRGINIA BEACH,
VIRGINIA, et al.,**

Defendants.

### *MEMORANDUM OPINION AND ORDER*

Before the Court is Defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1). ECF No. 149. Having reviewed the parties' filings in this case, the Court finds that this matter is ripe for judicial determination.

### I. FACTUAL AND PROCEDURAL HISTORY

Virginia Beach City Council, which includes the Mayor and eleven council members, is the City's governing body that makes decisions affecting the health, well-being, and livelihood of Virginia Beach's residents. ECF No. 1 at ¶¶ 2, 21. Each City Council member is elected using an at-large voting system. *Id.* at ¶ 21. Three Council Members and the Mayor do not have district residency requirements. *Id.* The other seven members are required to live in the districts they represent: Bayside, Beach, Centerville, Kempsville, Lynnhaven, Princess Anne, and Rose Hill. *Id.*

On November 20, 2017, Plaintiff Latasha Holloway, a Black registered voter and resident of Virginia Beach, initiated a *pro se* suit against the City of Virginia Beach under Section 2 of the Voting Rights Act of 1965 ("VRA"). ECF No. 1. On November 13, 2018, Plaintiff Holloway, along with Plaintiff George Allen, a Black unsuccessful candidate for an at-large seat on the City Council, retained counsel and filed an Amended Complaint. ECF No. 62. According to Plaintiffs'

1

Amended Complaint, the City of Virginia Beach's at large election for City Council violates Section 2 of the VRA by diluting the voting strength of Black, Latino, and Asian American voters ("Minority Voters") and therefore prevents minority voters from participating in the political process and electing representatives of their choice. *Id.* Plaintiffs' request that the Court (1) declare that the Virginia Beach's at-large method of electing members to the City Council violates Section 2 of the VRA; (2) enjoin Defendants from administering any future elections in the City of Virginia Beach under the current at-large method; (3) order the implementation of an election system for City Council that complies with Section 2 of the VRA; and (4) order that all future elections for the City of Virginia Beach comply with Section 2 of the VRA. *Id.* at 16. On January 24, 2019, Defendants filed an Answer denying Plaintiffs' claims. ECF No. 67.

On June 30, 2020, Defendants filed a Motion to Dismiss for Lack of Jurisdiction and a supporting memorandum. ECF No. 149–150. Plaintiffs opposed the motion on July 14, 2020. ECF No. 156. On July 20, 2020, Defendants filed a reply. ECF No. 158.

Trial is scheduled to commence on October 6, 2020. ECF No. 142. The next election for City Council is scheduled for November 3, 2020.

## II.   LEGAL STANDARD

Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992); *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, 892 F.3d 613, 619 n.5 (4th Cir. 2018). There are several constitutional justiciability doctrines that emanate from this constitutional provision. This includes the doctrines of standing, ripeness, and mootness, and a prohibition against district courts issuing advisory opinions. *See United States v. McClure*, 241 F. App'x 105, 107 (4th Cir. 2007).

The standard of review for a challenge to the Court's Article III jurisdiction may be raised under either Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction or Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *See Perry-Bey v. City of Norfolk, Va.*, 678 F. Supp. 2d 348, 360 (E.D. Va.), aff'd, 333 F. App'x 733 (4th Cir. 2009). When a defendant seeks dismissal under Rule 12(b)(1), the plaintiff bears the burden of proving subject matter jurisdiction. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 767, 768 (4th Cir. 1991). To determine whether subject-matter jurisdiction exists, a district court "may consider evidence outside the pleadings without converting the proceedings to one for summary judgment." *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005) (citation omitted); *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)(a court may still "consider documents attached to the complaint . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic"); *see also* Fed. R. Civ. P. 10(c). If a court determines that it lacks jurisdiction over a matter, it must dismiss the action.

### III. DISCUSSION

Section 2 of the VRA provides that "[n]o voting…standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in the denial or abridgment of the right of any citizen of the United States to vote on account of race or color." 52 U.S.C.A. § 10301(a). To prove a voter dilution claim under Section 2 of the VRA, Plaintiffs need to establish the following: (1) "the minority group is sufficiently large and geographically compact to constitute a majority in a single-member district[;]" (2) "the minority group is politically cohesive[;]" and (3) "the white majority votes sufficiently as a bloc to enable it…usually to defeat the minority's preferred candidate. *Thornburg v. Gingles*, 478 U.S. 30, 51 (1986). After plaintiffs meet their burden of satisfying all three *Gingles* preconditions, courts evaluate whether, under the

3

"totality of the circumstances," the minority vote is diluted in contravention of Section 2. *Levy v. Lexington County*, 589 F.3d 708, 713 (4th Cir. 2009). Plaintiffs must prove the *Gingles* preconditions and vote dilution under the totality of the circumstances by a preponderance of the evidence.

In light of the 2020 Census, Defendants' raise several arguments contending that the Court lacks Article III jurisdiction to decide Plaintiffs' Section 2 VRA claim. ECF No. 150. First, because of the new 2020 Census data, Defendants argue that a ruling referencing the 2010 census would be an advisory opinion on a moot question. *Id.* at 13. Second, Defendants argue that a ruling under the 2020 Census data would be an advisory opinion on an unripe question. *Id.* at 12–13. Third, Defendants contend that given the proximity of the November 3, 2020 election, this Court would issue an advisory opinion. *Id.* at 10–12, 14–15. Finally, Defendants argue that Plaintiffs lack standing to bring their Section 2 VRA claim. *Id.* at 15–23. The Court will address each argument in turn.

### a. Mootness

In any federal suit, the case or controversy mandate demands that a plaintiff "continue to have a 'particularized, concrete stake' in the outcome of the case through all stages of litigation." *Greenville Cty. Republican Party Exec. Comm. v. Greenville Cty. Election Comm'n*, 604 F. App'x 244, 252 (4th Cir. 2015) (*citing Williams v. Ozmint*, 716 F.3d 801, 808 (4th Cir.2013)). When the issues presented are no longer live, or the parties lack a legally cognizable interest in the outcome, the claim is considered moot. *Powell v. McCormack*, 395 U.S. 486, 496, (1969); *see also Williams*, 716 F.3d at 809 (4th Cir. 2013)("when a party-plaintiff has already received the relief he or she sought to obtain through the claim, the federal court lacks the power to provide effective relief"); *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 763 (4th Cir.2011); *Church of*

4

*Scientology of California v. U.S.*, 506 U.S. 9, 12 (1992). Once a case becomes moot, a court no longer maintains jurisdiction over the matter. *Williams*, 716 F.3d at 809.

Defendants argue that a ruling based on data from the 2010 Census would be an advisory opinion on a moot question. ECF No. 150 at 9–10, 13. Defendants argue that because of the 2020 Census, Plaintiffs cannot meet the first *Gingles* precondition in proving that the minority group is sufficiently large and geographically compact to constitute a majority in a single-member district. at 9–10. Defendants also contend that Plaintiffs will be unable to establish that any remedial districts would enhance the ability of minority voters to elect the candidates of their choice or that performing districts can be fashioned as remedies. *Id.* at 21.

Plaintiffs' claims are not moot. It is without question that Plaintiffs have not obtained the relief they sought to obtain in the litigation – a ruling that Virginia Beach's at-large method of electing members to the City Council violates Section 2 of the VRA and the implementation of an election system for City Council that complies with Section 2 of the VRA. ECF No. 62 at 16. Nor do the results of the 2020 Census, at this time, render Plaintiff's claims moot. The results of the 2020 census will not be released until April 1, 2021 at the earliest. *See* 13 U.S.C.A. § 141 (West); ECF No. 156 at 5. Given that there are currently no 2020 Census results, the results of the 2010 Census are still in effect. Defendants cite no authority to support the proposition that the 2010 Census is no longer accurate. Though populations change over time, data from the most recent census – here data from the 2010 Census – are presumptively valid as a matter of law. *See United States v. Town of Lake Park, Fla.*, No. 09-80507-CIV, 2009 WL 3667071, at *3 (S.D. Fla. Oct. 23, 2009). Thus, Plaintiff will be able to use the 2010 Census as a data point to demonstrate that the minority group is sufficiently large and geographically compact to constitute a majority in a

5

single-member district.[1] *See id. citing also Garza v. Cty. of Los Angeles*, 918 F.2d 763, 772–73 (9th Cir.1990) ("The Court has never hinted that plaintiffs claiming present Voting Rights Act violations should be required to wait until the next census before they can receive any remedy.")

### b. Ripeness

Ripeness is a justiciability doctrine that requires federal courts to withhold considering any actions that are based "upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (*quoting Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)). In determining whether a case is ripe or not, the Court must "'balance the fitness of the issues for judicial decision with the hardship to the parties of withholding court consideration.'" *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006) (*quoting Franks v. Ross*, 313 F.3d 184, 194 (4th Cir. 2002)). An action is deemed fit "when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." *Id.* (*citing Charter Fed. Sav. Bank v. Office of Thrift Supervision*, 976 F.2d 203, 208 (4th Cir. 1992)).

Defendants argue that there is no ripe controversy over whether a Section 2 VRA claim would exist, or could be remedied, under the forthcoming 2020 census. ECF No. 150 at 12–13. Specifically, Defendants argue that Plaintiffs cannot show that (1) a minority group is sufficiently large and geographically compact to constitute a majority in any single-member districts under the 2020 Census results; (2) alternative remedies would perform as minority opportunity districts as

---

[1] As Plaintiffs point out, in proving the first *Gingles* precondition, they may also rely on statistics from the American Community Survey ("ACS"), which is another sample survey conducted by the Census Bureau. Thus, it is not uncommon for a plaintiff to use the decennial census and ACS data. *See e.g., Benavidez v. City of Irving*, 638 F. Supp. 2d 709, 729-30 (N.D. Tex. 2009) (allowing the use of the 2000 Census data results and the ACS data as population evidence to establish Section 2 liability); *Terrebonne Parish Branch NAACP v. Edwards*, 399 F. Supp. 3d 608, 614 (M.D. La. 2017) ("CVAP [from the ACS] is commonly used in remedial redistricting to assess effectiveness."), *vacated on other grounds, Fusilier v. Landry*, No. 19-30665, 2020 WL 3496856 (5th Cir. June 29, 2020).

configured under the 2020 Census results; or (3) Plaintiffs may benefit personally from single-member districts under the 2020 Census results. *Id.* at 1. Defendants therefore argue that a ruling under the 2020 data would be an advisory opinion on an unripe question. *Id.* at 12–13.

Here, Plaintiffs are not seeking to use the results from the 2020 Census. To prove the first *Gingles* precondition or to establish alternative remedies and prove that Plaintiffs may personally benefit from single member districts, Plaintiffs seek to not only use data from the 2010 Census, which is still in effect, but also results from the annual ACS results as data points. ECF No. 156 at 10–12. Plaintiffs are therefore asking the Court to rely on the current population data that is available. Under the current 2010 Census, and ACS data, Plaintiffs are requesting that the Court look at whether the minority group is sufficiently compact. Thus, ripeness is not an issue in the current litigation.

   **c. Advisory Opinion**

The Court has developed two criteria that must be satisfied to ensure that a case does not call for an advisory opinion. *United States v. McClure*, 241 F. App'x 105, 108 (4th Cir. 2007). First, the case must put against each other "'adverse parties whose contentions are submitted to the court for adjudication.'" *Id. citing Muskrat*, 219 U.S. 346, 357 (1911). Second, a decision in the case must be likely to have some effect on the dispute. *Id.*

Defendants argue that a ruling on Plaintiffs' vote-dilution claim would be abstract and advisory. ECF No. 150 at 9–12. Defendants argue that it is too late for the Court to change the rules of the 2020 election, and therefore cannot adjudicate liability and issue a remedy before the last election of the decade scheduled for November 3, 2020. *Id.* at 9–12, 13–15. Defendants therefore argue that any findings that the Court makes on the 2010 Census would be advisory

7

because the Court will have to consider the 2020 Census to establish a remedy for any future elections. *Id.*

Here, Plaintiffs' case is a direct dispute between the parties, and so the contention present is whether a decision in this case will *likely* have some effect on the dispute. It will. Plaintiffs' requested relief is one where they ask the Court to (1) declare that the Virginia Beach's at-large method of electing members to the City Council violates Section 2 of the VRA; (2) enjoin Defendants from administering any future elections in the City of Virginia Beach under the current at-large method; (3) order the implementation of an election system for City Council that complies with Section 2 of the VRA; and (4) order that all future elections for the City of Virginia Beach comply with Section 2 of the VRA. ECF No. 62 at 16. The trial is currently scheduled before City Council elections on November 3, 2020. If Plaintiffs prevail, a ruling in favor of Plaintiffs will caution Defendants in using an at-large election method that violates Section 2 of the VRA and encourage Defendants to come up with a remedy that complies with Section 2 of the VRA. Granting Plaintiffs declaratory relief would likely have some effect by encouraging Council members to potentially change the at-large election method or to include one or more majority-minority voter districts. *See* ECF No. 156. Such a remedy might be useful in any special election that might occur before the results of the 2020 Census. *Id.* at 16.

Further, nothing prevents this Court, or Defendants for that matter, from using the results of the 2020 Census to come up with an election method that complies with Section 2 of the VRA during the remedy phase. The Court may construct a remedial plan that differs from the illustrative plans used at the liability phase during trial. *See, e.g., Terrebonne Parish Branch NAACP*, 399 F. Supp. 3d at 612, 617 (M.D. La. 2019) (adopting remedial plan developed by special master rather than illustrative plan offered by plaintiffs); *E. Jefferson Coal. for Leadership & Dev. v. Par. of*

*Jefferson*, 926 F.2d 487, 492 (5th Cir. 1991) (noting that district court amended its prior finding on geographic compactness where the Parish did not present definitive evidence on geographic compactness until the remedy phase). The focus of the remedy stage in this case would be on the City of Virginia Beach's election *method* – the at-large voting scheme – which Plaintiffs are directly challenging.

Under Defendants' argument, any decision by any court at the end of a decade when a new census is underway is an advisory opinion. The Court cannot accept such a blanket rule, especially where case law suggests that courts have adjudicated Section 2 VRA cases at the end of a decade when a new census was underway. *See e.g., Kumar v. Frisco Indep. Sch. Dist.*, No. 4:19-CV-00284, 2020 WL 4464502, at *49 (E.D. Tex. Aug. 4, 2020); *Nat'l Ass'n for Advancement of Colored People, Spring Valley Branch v. E. Ramapo Cent. Sch. Dist.*, No. 17-CV-8943 (CS), 2020 WL 2731163 (S.D.N.Y. May 25, 2020); *United States v. Vill. of Port Chester*, 704 F. Supp. 2d 411, 424-25 (S.D.N.Y. 2010) (relying on 2000 Census data to adjudicate Section 2 liability). Any decision in this case will likely have some effect on the dispute. Therefore, an Opinion issued by this Court will not be advisory.

   d. **Standing**

Defendants final argument is that Plaintiffs lack standing to bring a Section 2 VRA claim. ECF No. 150 at 15–22. Standing is a doctrine that refers to a plaintiff's ability to bring a suit before the court. The plaintiff bears the burden of establishing standing. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990); *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir.2006). In ruling on a motion to dismiss for lack of standing, the court must accept as true all material allegations of the complaint and construe the complaint in favor of plaintiff. *Warth*, 422 U.S. at 501; *Lujan*, 504 U.S. at 561.

### i. *Constitutional Standing*

Standing has both constitutional and prudential components. *Bishop v. Bartlett*, 575 F.3d 419, 423 (4th Cir. 2009). To satisfy the constitutional component of standing, a party must meet three elements: (1) an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of – the injury has to be "fairly traceable to the challenged action of the defendant"; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560 (1992).

Defendants argue that Plaintiffs cannot meet the constitutional component of standing. ECF No. 150 at 15. Defendants contend that there is no injury-in-fact or causation because there is currently no available baseline to establish that the at-large seats are causing the injury. *Id.* Defendants also argue that Plaintiffs' are unable to meet the redressability element because they cannot prove that in a new plan of single-member districts, they personally could or likely would reside in a district drawn with sufficiently high minority voting-age population percentages to allow them to participate in the political process and to elect representatives of their choice. *Id.* at 15–16. Related to this point, Defendants ague that any remedy prepared by the Court would be useless once the 2020 Census results are released. *Id.* at 18–19.

Contrary to Defendants' arguments, Plaintiffs have established constitutional standing. The purpose of Section 2 of the VRA is to prevent voter dilution and preclude racial discrimination in voting. Plaintiffs claim that although Minority Voters vote cohesively for particular candidates of choice, these shared political preferences are submerged by the at-large electoral system. ECF No. 1 at ¶¶ 7–8. Plaintiffs both identify as Black and are part of the minority voters who have suffered a dilution of their votes. *Id.* at ¶¶ 14–15; *See Allen v. State Board of Elections*, 393 U.S. 544 (1969)

10

(recognizing that aggrieved voters have standing to enforce their right to vote). Plaintiffs therefore have sufficiently pleaded an injury in fact, that is neither conjectural or hypothetical, and the type of injury Section 2 of the VRA was designed to protect.

Plaintiffs have also demonstrated that this injury is fairly traceable to the challenged conduct of Defendants. Plaintiffs allege that their votes have been diluted because of Virginia Beach's at-large voting system for City Council. ECF No. 1 at 5–6. According to the Complaint, "the at-large method of election for the City Council submerges Minority Voters so that they are rendered ineffective electoral minorities in most elections." *Id.* at ¶ 27. This type of voting system, Plaintiff alleges, denies Virginia Beach Minority Voters an equal opportunity to participate in the political process and elect councilmembers of their choice, by diluting the minority vote. *Id.* at ¶¶ 28–29. To support their argument, Plaintiffs have relied, in part, on Virginia Beach Demographics from the 2010 Census as well as the data from the ACS. *See* ECF No. 62 at 7–8. Plaintiffs also rely on Virginia Beach City Council Election History to demonstrate that the at-large voting scheme is causing the injury. *Id.* at 8–13. Thus, contrary to Defendants' contentions, Plaintiffs' Complaint does establish an available baseline in showing that the injury is connected to the at-large election method. *See* ECF No. 150 at 15.

Regarding redressability, Plaintiffs have sufficiently pleaded that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. The Court has already addressed Plaintiffs' redressability in its discussion of advisory opinion. *See* Part III.C; *see also McClure*, 241 F. App'x at 108 (noting that the second prong of an advisory opinion is very similar to the redressability prong of the standing inquiry). Plaintiffs, in their demand for relief, request that the Court enter an Order declaring Virginia Beach's at-large method of electing members to the City Council a violation of Section 2 of the VRA; enjoin Defendants from administering,

implementing, or conducting future elections in the City of Virginia Beach under the current at-large method of election; order the implementation of an election system for the City Council that complies with Section 2 of the VRA; and order that all future elections for the City of Virginia Beach comply with Section 2 of the Voting Rights Act. ECF No. 1 at 16. Thus, Plaintiffs injury may be redressed by a system that does not dilute their vote. If true, the Court can redress Plaintiffs injury by invalidating the current voting system that undermines their rights under VRA and overseeing a system that adequately protects their rights under the VRA. As the Court indicated above, the Court can do this using the recent population data. *See* Part III.C.

The Court refrains from determining before trial whether a new plan of single-member districts would allow Plaintiffs to elect representatives of their choice, especially where the relief Plaintiffs ask for is based on the current voting system. ECF No. 150 at 15–16. Therefore, in establishing injury in fact, causation and redressability, the Court finds that Plaintiffs have constitutional standing. *See Kumar v. Frisco Indep. Sch. Dist.*, No. 4:19-CV-00284, 2020 WL 1083770, at *5 (E.D. Tex. Mar. 6, 2020) (finding that plaintiff had constitutional standing to bring VRA claims based on similar allegations).

    ii.   *Prudential Standing*

To satisfy the prudential component of standing, courts recognize other limits on a plaintiff's ability to bring a suit before the court. *Bishop*, 575 F.3d at 423. First, "when the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (citation omitted). Second, even when the plaintiff has alleged an injury sufficient to meet the constitutional requirement, "the plaintiff generally must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties."

*Id.* Third, "a plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit." *Bennett v. Spear*, 520 U.S. 154, 162.

Defendants argue that Plaintiffs lack standing to pursue rights belonging to members of other racial groups. ECF No. 150 at 19–23. This implicates the second limit on a plaintiff's ability to bring a suit before the Court – that a "plaintiff generally must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth*, 422 U.S. at 499. Defendants contend that Plaintiffs cannot maintain a minority coalition claim without Plaintiffs themselves being a minority coalition. ECF No. 150 at 19–23.

Here, Plaintiffs have prudential standing. The purpose of the VRA is to protect Minority Voters. *Perry-Bey v. City of Norfolk, Va.*, 678 F. Supp. 2d 348, 363 (E.D. Va.), aff'd, 333 F. App'x 733 (4th Cir. 2009) *citing Roberts v. Wamser*, 883 F.2d 617, 621 (8th Cir. 1989). Section 2 of the VRA provides that "[n]o voting…standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgment of the right of any citizen of the United States to vote on account of race or color." 52 U.S.C.A. § 10301(a). A violation occurs if based on the totality of circumstances, "it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." 52 U.S.C.A. § 10301(b). Under the statute, "an aggrieved person," or voters whose rights have been allegedly denied or impaired, may institute a proceeding to enforce their right to vote. 52 U.S.C.A. § 10302; *Allen v. State Board of Elections*, 393 U.S. 544

13

(1969). A class action is not required to proceed under the VRA. *see e.g., Brewer v. Ham*, 876 F.2d 448 (5th Cir. 1989).

Plaintiffs claim that the rights of Minority Voters are diluted as a result of the at-large system for electing councilmembers. Plaintiffs, who both identify as Black, are members of a minority whose rights have been allegedly denied or impaired. *Perry-Bey*, 678 F. Supp. 2d at 363 (noting that plaintiff lacked standing to allege that the new method of electing the mayor "dilutes the minority voting strength" where plaintiff has not alleged that she was a member of a minority whose voting strength was diluted). Plaintiffs are not seeking third-party standing. Plaintiffs' personal legal interests have been injured, and they plan to show this by putting on statistical evidence that the votes of their community, and minority voters generally, have been diluted. ECF No. 150 at 25–27.

Stated differently, to meet its evidentiary burden in establishing the three *Gingles* preconditions, Plaintiffs plan to put on evidence of a minority coalition of Blacks, Hispanics, and Asians. ECF No. 156; *See Nat'l Ass'n for Advancement of Colored People, Spring Valley Branch v. E. Ramapo Cent. Sch. Dist.*, No. 17-CV-8943 (CS), 2020 WL 2731163, at *4 (S.D.N.Y. May 25, 2020) ("combining minority groups is permissible where the statistical evidence is that the minority groups vote cohesively for the same candidates."). Plaintiffs must show that all three groups are politically cohesive. *Gingles*, 478 U.S. at 51. This *Gingles* precondition is an evidentiary matter and is separate from whether Plaintiffs have standing.

In *Kumar v. Frisco Indep. Sch. Dist.*, No. 4:19-CV-00284, 2020 WL 4464502, at *10 (E.D. Tex. Aug. 4, 2020), the very case Defendants cite, the court recently acknowledged the difference between the *Gingles* preconditions and standing. The *Kumar* Court held that because of the differences in both legal doctrines, Plaintiffs do not have to be a minority coalition in order to put

14

on evidence of a minority coalition. *Id.* at *10 (recognizing that "*Gingles* is not requiring a plaintiff to assert the rights of other unnamed parties, but rather requiring a plaintiff to offer evidence establishing a minority coalition to which he or she belongs"). This Court holds the same. Nowhere in Section 2 of the VRA does it require Plaintiffs seeking to put on evidence of a minority coalition to all be representatives of a minority coalition. Therefore, Plaintiffs who identify with one minority group may meet its *Gingles* preconditions by putting on evidence of a minority coalition, without the threat of losing their own legal standing. Thus, because Plaintiffs are asserting their own legal rights and interests, Plaintiffs have prudential standing.

## IV. CONCLUSION

Based on the foregoing reasons, Defendants' Motion to Dismiss is **DENIED**. The Court **DIRECTS** the Clerk to provide a copy of this Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
August /7, 2020

Raymond A. Jackson
United States District Judge