IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| Latasha Holloway, *et al.*, | |
| Plaintiffs, | |
| | Civil Action No. 2:18-cv-0069 |
| v. | |
| City of Virginia Beach, *et al.*, | |
| Defendants. | |

**PLAINTIFFS' PROPOSED REMEDIAL PLAN
AND RECOMMENDATIONS FOR COURT-APPOINTED EXPERTS**

On May 11, 2021, this Court signed an Order directing the parties to "submit proposed remedial plans by July 1, 2021 to redress the at-large system of election for the Virginia Beach City Council." ECF No. 252 at 1. That Order also stated that each party "may provide the Court with recommendation of an independent expert to evaluate the proposed plan(s). *Id*. Pursuant to that Order, Plaintiffs respectfully submit the following remedial plan and their recommendations of possible independent experts.

I.      **Plaintiffs' Proposed Remedial Plan**

Plaintiffs respectfully submit the 10 single-member district ("SMD") plan attached as Exhibit A and illustrated in Figure 1 below for consideration as a remedy in this case.[1]

---

[1] Plaintiffs intend to submit to the Court (and copy counsel for Defendants) the shape files for their proposed remedial plan so that the independent expert appointed by the Court may more easily evaluate Plaintiffs' submission. The shape files are too large to file in the Court's ECF system.



*Figure 1*

Plaintiffs' proposed 10 SMD remedial plan will remedy the Section 2 violation the Court

found here. To determine whether a party's proposed plan will sufficiently remedy the violation,

the Court must find that the proposed plan "meet[s] the same standards applicable to an original

challenge of a legislative plan in place." *McGhee v. Granville Cty., N.C.*, 860 F.2d 110, 115 (4th

Cir. 1988). Thus, while the "maximum extent to which a particular dilution violation may be remedied by restructuring the districting system is constrained by the size, compactness, and cohesion elements of the dilution concept," a remedy that provides representation "to the maximum extent permitted by these constraints is a 'complete' and legally adequate remedy for such a dilution violation." *Id.* at 118.

As all parties have acknowledged, here, a complete remedy requires the creation of no fewer than three districts with majority-minority populations.[2] Consistent with that requirement, Plaintiffs' proposed remedial plan includes three districts—districts 4, 7, and 10—that contain a Hispanic, Black, and Asian (HBA) Citizen Voting Age Population (CVAP) above 50%. Ex. A at 12 (Plaintiffs' Remedial Maps). District 4 has an HBACVAP of 51.13%, district 7 has an HBACVAP of 52.78%, and district 10 has an HBACVAP of 52.25%. *Id*. With an overall population deviation of 6.36%, *id.*, Plaintiffs' 10 SMD plan also complies with the constitutional one-person, one-vote requirement, *see, e.g.*, *Reynolds v. Sims*, 377 U.S. 533 (1964); *Brown v. Thomson*, 462 U.S. 835 (1983).

Plaintiffs' 10 SMD plan will provide minority voters in Virginia Beach a meaningful and effective opportunity to elect their candidates of choice. After subjecting Plaintiffs' proposed plan to a performance analysis using both endogenous and exogenous elections, Plaintiffs' expert Dr. Douglas Spencer—who the Court has credited as an expert in political science and quantitative analysis, ECF No. 242 at 14—found that minority voters (*i.e.*, the HBA populations) in districts 4, 7, and 10 would have an effective opportunity to elect their communities' preferred candidates. Ex. B (Spencer Declaration). For endogenous (or City Council) elections, Dr. Spencer considered

---

[2] *See* June 1, 2021 Informal Council Mt'g at 21:37-23:24; *see also* City of Virginia Beach, https://www.vbgov.com/government/departments/communications-office/hot-topics/Pages/Holloway-vs-VaBeach.aspx (last visited June 16, 2021).

how HBA candidates of choice would have performed in the proposed remedial districts in seven

past elections for nine available seats (two elections had two seats up) and determined that election

outcomes for HBA-preferred candidates improved in all three proposed remedial districts. In

district 4, the HBA candidate of choice would have won 8 of 9 seats up for election. In districts 7

and 10, the HBA candidate of choice would have won 5 of 9 seats. *Id.* at 4; *see also* ECF 242 at

62 (finding that Plaintiffs' Illustrative Plans enhanced the HBA community's ability to elect

candidates of choice relying on a similar performance analysis).

Because only one candidate can win in a single member district (as opposed to the previous

at-large seat elections in which more than one candidate is selected), it makes sense to consider

the number of elections in which the HBA-preferred candidate placed first. *Id.* at 2. City-wide, of

the 7 elections analyzed, an HBA-preferred candidate placed first in only 2 of 7 elections (Rouse

in 2018 and Bellitto in 2010). *Id.* at 5. Under Plaintiffs' proposed remedial plan, the HBA-preferred

candidate would have placed first in 6 of 7 elections (85%) in district 4, and 5 of 7 elections (71%)

in districts 7 and 10. *Id.* This improved performance for minority voters holds true when the 2

elections in which the HBA-preferred candidate placed first city-wide are excluded from the

analysis as well. In the 5 elections in which the HBA-preferred candidate *did not* place first city-

wide, the HBA-preferred candidate would have placed first in 4 of 5 elections (80%) in district 4,

and in 3 of 5 elections (60%) in districts 7 and 10. *Id.*

The HBA-preferred candidate also carried the vote in all three remedial districts in all nine

of the exogenous elections Dr. Spencer tested. *Id.* at 5. Notably, in the 2017 citywide sheriff's race,

the HBA candidate of choice, a Black candidate, lost the citywide vote by twenty percentage

points, but would have carried all three of Plaintiffs' proposed remedial districts. With respect to

existing city council members, Plaintiffs' proposed remedial plan creates one district (district 4)

4

in which no incumbent currently resides and would thus need to be elected in November 2022, and minimizes incumbent pairings to only one district; incumbent council members Jones and Moss live mere houses away from one another and thus both reside in Plaintiffs' proposed district 9. Both council members Moss and Jones would otherwise be up for election in November 2022 because they were last elected in 2018. Incumbent Black council member Wooten resides in Plaintiffs' remedial district 7, and incumbent Black council member Rouse resides in Plaintiffs' remedial district 10.

## II.      Plaintiffs' Proposed Independent Evaluators

In its May 11, 2021 and July 1, 2021 Orders, the Court noted its intention to appoint an independent expert to provide assistance in assessing the parties' proposed plans to ensure that they comply with Section 2 of the Voting Rights Act and fashioning a final remedial plan. ECF No. 252 at 1 and ECF No. 259. To aid the Court in selecting its expert, Plaintiffs have identified four qualified independent experts, two of whom have previously served in such roles and two others who have served as expert witnesses in other voting rights and redistricting cases: Dr. Bernard Grofman, Dr. Jonathan Rodden, Mr. David Ely, and Dr. Maxwell Palmer.

### a.    _Dr. Bernard Grofman, Department of Political Science, University of California, Irvine_

Dr. Grofman is a leading expert on voting rights and redistricting in the United States. As his Curriculum Vita shows, Ex. C (Grofman CV), Dr. Grofman has extensive experience in this space, publishing numerous leading books on voting rights and redistricting, _id._ at 3-6, authoring 174 professional articles many of which discuss voting rights and redistricting issues, _id._ at 10-42, and participating as an expert or court-appointed consultant for the U.S. Department of Justice, federal courts, and various parties in dozens of major voting rights and redistricting cases, including the landmark cases _Thornburg v. Gingles_, 478 U.S. 30 (1986). He also was appointed a

Special Master by the federal court in *Wright v. Sumter Cty. Bd. of Elections & Registration*, 979

F.3d 1282 (11th Cir. 2020), *id.* at 41-46, 85-88. His research or expert witness testimony on

redistricting has been cited in nearly a dozen U.S. Supreme Court cases. While serving as a Special

Master, Dr. Grofman drew the court-ordered congressional districts for the State of Virginia that

were used in the 2016 elections.

    b.  *Dr. Jonathan Rodden, Department of Political Science, Stanford University*

Dr. Rodden is a Professor of Political Science and the Director of the Spatial Social Science

Lab—a center for research and teaching focusing on geospatial analysis in the social sciences—at

Stanford University and an expert in geo-spatial data analysis as it relates to voting and

redistricting matters. Ex. D (Rodden CV). He has served as an expert witness in more than ten

voting rights cases, including two from Virginia: *Bethune-Hill v. Virginia Board of Elections*, No.

3:14-CV-00852, (ED VA), and *Lee v. Virginia Board of Elections*, 3:15-cv-357, (ED VA). *Id*. at

7-8. Dr. Rodden has also published numerous articles, with several discussing topics related to

voter behavior and political geography. *Id.* at 2-3. Dr. Rodden is experienced in using

computerized modeling and map sampling as well as developing analytical approaches to examine

voter distributions across geography.

    c.  *Mr. David Ely, Compass Demographics*

Mr. David Ely is the President and Founder of Compass Demographics, a consulting and

database management firm that specializes in election data, redistricting, demographic analysis,

and voter behavior. Ex. E (Ely CV). Mr. Ely's CV notes that he was appointed in 2019 by a federal

court in Louisiana (*Terrebonne Parish NAACP et al vs. Governor of Louisiana*) to serve as a

Special Master. Ex. D at 3. Mr. Ely has served as an expert and testified on behalf of not just

plaintiffs and defendant jurisdictions in voting-rights litigation, but also for the United States. He

has more than three decades of experience researching and consulting on redistricting and elections matters, including serving as a consultant or expert witness in nearly 40 voting rights and redistricting cases. *Id.* at 3-5. Mr. Ely has also assisted more than 40 state and local jurisdictions as a consultant during their redistricting processes on matters ranging from database construction and demographic and voter analysis to the development of districting plans and analysis of alternative redistricting plans. *Id.* at 1-3. He has extensive experience managing redistricting projects, analyzing voting behavior, and working with demographic data.

> d.  *Dr. Maxwell Palmer, Department of Political Science, Boston University*

Dr. Palmer is a Professor of Political Science at Boston University. Ex. F (Palmer CV). Dr Palmer's teaching and publishing applies statistical and quantitative methods in the sphere of political science, and his work has discussed topics related to political representation, racial disparities, redistricting, and voter behavior, including a 2015 article entitled *Demography and Democracy: A Global, District-level Analysis of Electoral Contestation* and a 2016 article entitled *A Two Hundred-Year Statistical History of the Gerrymander*. *Id.* 1-5. He is also currently working on a study of racial disparities in local elections. *Id.* at 5. Dr. Palmer has presented expert testimony on racially polarized voting in five voting rights or redistricting cases, including one in Virginia. *Id.* 7-8.

Plaintiffs believe that each of these experts has the qualifications, skills and experience to serve as an independent expert for the Court. Plaintiffs have reached out to each of these individuals only to confirm their availability and obtain consent to propose their names to the Court. Plaintiffs have not otherwise conferred or consulted with these experts on any issues relating to the present case.

Dated: July 1, 2021

Respectfully submitted,

Annabelle E. Harless
Campaign Legal Center
55 W. Monroe St., Ste. 1925
Chicago, IL 60603
(312) 312-2885
aharless@campaignlegal.org

/s/ J. Gerald Hebert
J. Gerald Hebert
VSB. No. 38432
Paul M. Smith
Robert Weiner
VSB No. 95654
Mark Gaber
Danielle Lang
Christopher Lamar
Simone Leeper*
Dana Paikowsky**
Campaign Legal Center
1101 14th Street NW, Suite 400
Washington, DC 20005
(202) 736-2200 (Office)
(202) 736-2222 (Facsimile)
ghebert@campaignlegal.org
psmith@campaignlegal.org
rweiner@campaignlegal.org
mgaber@campaignlegal.org
dlang@campaignlegal.org
clamar@campaignlegal.org
sleeper@campaignlegal.org
dpaikowsky@campaignlegal.org

*Attorneys for Plaintiffs*

*\*Licensed to practice in Florida only; Supervised by a member of the D.C. Bar.*

*\*\*Licensed to practice in California only; Supervised by a member of the D.C. Bar.*

8

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2021, I will electronically file the foregoing with the Clerk

of the Court using the CM/ECF system, which will then send a notification of such filing to the

following:


**Mark D. Stiles** (VSB No. 30683)
**Christopher S. Boynton** (VSB No. 38501)
**Gerald L. Harris** (VSB No. 80446)
**Joseph M. Kurt** (VSB No. 90854)
Office of the City Attorney
Municipal Center, Building One, Room 260 2401 Courthouse Drive
Virginia Beach, Virginia 23456
(757) 385-8803 (Office)
(757) 385-5687 (Facsimile)
mstiles@vbgov.com
cboynton@vbgov.com
glharris@vbgov.com
jkurt@vbgov.com

Katherine L. McKnight (VSB No. 81482)
Richard B. Raile (VSB No. 84340)
BAKER & HOSTETLER, LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 861-1500
Facsimile: (202) 861-1783
kmcknight@bakerlaw.com
rraile@bakerlaw.com

Patrick T. Lewis
BAKER & HOSTETLER, LLP
127 Public Square, Suite 2000
Cleveland, OH 44114
Telephone: (216) 621-0200
Facsimile: (216) 696-0740
plewis@bakerlaw.com

/s/ J. Gerald Hebert
*Counsel for Plaintiffs*