**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

FILED

JUL 1 9 2021

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**LATASHA HOLLOWAY et. al.,
Plaintiff,**

v.

**CIVIL ACTION NO. 2:18-cv-69**

**CITY OF VIRGINIA BEACH, et. al.,**

**Defendant.**

### *MEMORANDUM OPINION AND ORDER*

Before the Court is Defendants' Emergency Motion to Stay Injunction, pursuant to Fed. R. Civ. P. 62, filed on July 7, 2021. ECF No. 262. On July 8, 2021, Plaintiffs responded without opposition and Defendants replied. ECF Nos. 263, 264. Having reviewed the motion and filings, this Court finds that a hearing is not necessary to address this motion. For the reasons set forth below, Defendants' Motion is **DENIED.**

### I. FACTUAL AND PROCEDURAL HISTORY

On March 31, 2021, the Court entered a judgment declaring the City of Virginia Beach's at-large method of election illegal. ECF No. 242. Pursuant to Section 2 of the Voting Rights Act, the Court further enjoined use of the at-large system of election, ordered that the City shall not adopt any system of election for members of its City Council that does not comply with § 2 of the Voting Rights Act, and ordered that the City of Virginia Beach shall not implement or utilize any practice, policy, procedure or other action that results in the dilution of minority participation in the electoral process. *See id.*

On April 29, 2021, Defendants filed an appeal (No. 21-1533) to the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit"). ECF Nos. 247, 249, 250. On May 12, 2021, the Court ordered the parties to submit proposed remedial plans by July 1, 2021 to redress the at-large

1

system of election for the City of Virginia Beach. ECF No. 252. On June 3, 2021, Plaintiffs filed a motion to Modify the Remedial Briefing Schedule and Defendants responded. ECF Nos. 256, 257, 258. On July 1, 2021, the Court denied Plaintiffs' motion to modify the remedial briefing schedule and ordered the parties to file their proposed remedial proposed plans, responses, and replies, all due by July 30, 2021. ECF No. 259.

Meanwhile, on June 3, 2021, Plaintiffs (Appellees) filed a Motion with the Fourth Circuit to Suspend Briefing and Hold the Case in Abeyance pending remedial proceedings in the district court. *See* No. 21-1533 Dkt. No 11. In response, on June 15, 2021, Defendants (Appellants) filed a motion in opposition to abeyance pending remedial proceedings in the district court and a cross-motion to advance the briefing and expedite the appeal on the District Court's memorandum and opinion, ECF No. 242, which found the City in violation of the Voting Rights Act. *Id.* at Dkt. No. 24.

Then, on July 2, 2021, Virginia Beach Councilmember Jessica Abbott announced her resignation from the Virginia Beach City Council, effective immediately, for health concerns. Ms. Abbott represented the Kempsville residency district. *See* ECF No. 262. Accordingly, on July 7, 2021, Defendants (Appellants) filed a letter informing the Fourth Circuit about Ms. Abbott's resignation and arguing that the Plaintiffs (Appellees) Motion to hold the case in abeyance be denied because it would irreparably harm the City and the Motion "no longer has any conceivable merit (if it ever did…)." *See* ECF No. 263 at Exhibit 1; *see also,* No. 21-1533 Dkt. No. 27. At the same time, on July 7, 2021, Defendants' also filed the instant motion before the Court. On July 12, 2021, the Fourth Circuit granted Plaintiffs' (Appellees) motion for abeyance, Dkt. No. 11, as well as denied Defendants' (Appellants) motion to expedite review of the district court's

2

memorandum and opinion and order, Dkt. No. 24. *Id.* at Dkt. No. 29. Accordingly, the Defendants request that the Court lift the permanent injunction.

## II. LEGAL STANDARD

A district court is authorized to suspend or grant equitable relief during the pendency of an appeal by Rule 62(c), F.R.Civ.P.:

> When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.

The moving party effectively asks the court to delay the implementation of its decision until the court of appeals has had an opportunity to consider the validity of that ruling. Since such an action interrupts the ordinary process of judicial review and postpones relief for the prevailing party at trial, the stay of an equitable order is an extraordinary device which should be sparingly granted. "The factors regulating the issuance of a stay are generally the same: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, at 776 (1987); *see also,* Fed.Rules Civ.Proc.Rule 62(c), 28 U.S.C.A.

In circumstances where a stay is requested before the district issues final judgment[1], and thus, appeal is not pending, "[t]he District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). In exercising that discretion, a district court is instructed to "weigh competing interests and maintain an even balance." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936) (explaining that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket."); *see also, Dominion Energy, Inc. v. City of Warren Police & Fire Ret. Sys.*, 928 F.3d 325, 335 (4th Cir. 2019). "Proper use of this authority calls for the exercise of judgment which must weigh competing interests and maintain an even balance." *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983) (citation and internal quotation marks omitted). To determine whether to grant a stay before final judgment, a district court should consider "(1) the length of the requested stay; (2) the hardship or inequity that the movant would face in going forward with the litigation; (3) the injury that a stay would inflict upon the non-movant; and (4) whether a stay would simplify issues and promote judicial economy." *Rajput v. Synchrony*, 221 F. Supp. 3d 607, 609-10 (M.D. Pa. 2016).

Above all, the exercise of this power is especially important "in cases of extraordinary public moment" where a party "may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." *Clinton v. Jones*, 520 U.S. 681, at 707 (1997) (*quoting Landis*, 299 U.S. at 256).

---

[1] 28 U.S.C.A. § 1291 provides that "the courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States. "Final judgment" rule serves several salutary purposes, such as preventing piecemeal appeals that might otherwise undermine independence of district judge, avoiding obstruction to just claims, and promoting efficient judicial administration. *Cunningham v. Hamilton Cty., Ohio*, 527 U.S. 198 (1999). In accord with this historical understanding, the Supreme Court has repeatedly interpreted § 1291 to mean that an appeal ordinarily will not lie until after final judgment has been entered in a case. See, *e.g.*, *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996); *Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994); *Richardson–Merrell Inc. v. Koller*, 472 U.S. 424, 430 (1985).

Nevertheless, the burden of showing the necessity for a stay rests with the moving party and is heightened when a stay will "work damage" to another party. *Landis*, 299 U.S. at 255. "The party seeking a stay must justify it *by clear and convincing circumstances* outweighing potential harm to the party against whom it is operative." *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983) (emphasis added).

## III.   DISCUSSION

Defendants' argue that the Court should stay its injunction prohibiting the City of Virginia Beach from employing the at-large system of election so that the City may conduct a special election in November 2021. In support of this argument, Defendants first contend that they have a substantial likelihood of success on appeal and they set forth their grounds for appeal. *See* ECF No. 262 at 6-7. Second, Defendants argue that the injunction will be irreparably harmed absent a stay because the City Council will become short one member as of November 2021 and a remedial plan "cannot be adopted and administered prior..." to the November election. *Id.* at 8-15. Third, Defendants' argue that Plaintiffs would not be harmed by lifting the injunction. *Id.* at 15-17. Finally, Defendants contend that a stay would benefit the public both in the Kempsville District and across the City. *Id.* at 17-20.

In response, Plaintiffs do not oppose modifying the Court's injunction to allow the special election for the Kempsville residency district. ECF No. 263. Notably, the Plaintiffs assert that the results of a special election for the Kempsville district is unlikely "...to harm Plaintiffs' remedial rights." *Id.* at 2. However, Plaintiffs contend that if the elected candidate in the November 2021 Kempsville special election resides in the area of the district that contains a majority of the Minority population, then "... it *is* likely that this Court's remedial plan will be affected by the

special election." *Id.* at 4 (emphasis in original).[2] Moreover, Plaintiffs state that they reserve the right to "seek an order from this Court truncating the term of the candidate elected in the November 2021 special election in the event that the winning candidate resides in one of the Section 2 remedial districts ordered by the Court." *Id.* at 4.

While F.R.C.P. Rule 62(c) authorizes the Court to grant the Defendants relief by lifting the injunction, the decision is one within the Court's discretion. Moreover, since a stay interrupts the court's proceedings, including devising equitable remedies to issue final judgment, a stay postpones relief for the prevailing party. Therefore, "the stay of an equitable order is an extraordinary device which should be granted sparingly." *See United States v. State of La.*, 815 F. Supp. 947, 948 (E.D. La. 1993); *see also, Atlantic Richfield Co. v. Federal Trade Commission*, 398 F.Supp. 1, 17 (S.D.Tex.1975), *aff'd.* 546 F.2d 646 (5th Cir. 1976); *see also, F.M.C. v. New York Terminal Conference*, 373 F.2d 424, 426 (2nd Cir. 1967).

When an injunction serves as an equitable remedy, albeit temporarily, for constitutional violations, the clear and compelling duty of the Court is to institute meaningful relief to eliminate the effects of past illegality and assure future compliance with the laws of the land. *Louisiana v. United States, 380 U.S. 145*, at 154 ("We bear in mind that the court has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future."); *See e.g., Green v. County School Board*, 391 U.S. 430, at 438, n.4 (1968);*United States v. Crescent Amusement Co.*, 323 U.S. 173*; Standard Oil Co. v. United States*, 221 U.S. 1; *Griffin v. County School Board of Prince Edward County*, 377 U.S. 218, at 232—234*; Green v. Cty. Sch. Bd. of New Kent Cty., Va.*, 391 U.S. 430, at 438 (1968).

---

[2] Plaintiffs note that a portion of the Kempsville district contains 18,000 people, with a citizen voting age population ("CVAP") that is 45.8% Black, 9.3% Hispanic, 5.9% Asian, and 37.1% white. Accordingly, this portion of the district is included in the remedial districts proposed by both parties. *See* ECF No. 262 at 4; *see also,* ECF Nos. 260, 261 (Remedial proposals by Defendants and Plaintiffs).

These general precepts governing requests for interlocutory stays are underscored when relief has been ordered to remedy constitutional violations, as it pertains to fundamentals rights such as voting. Constitutional rights are warrants for the here and now, to be promptly fulfilled in the absence of "an overwhelming compelling reason". *Watson v. Memphis,* 373 U.S. 526, at 533 (1963). Accordingly, with these principles in mind, the Court will examine the Defendants' merits for lifting the equitable injunction currently in place.

### A. Likelihood of Success on the Merits

First, the Court has already determined that Defendants are not likely to succeed on the merits of the underlying case. Although Defendants claim that they will likely succeed on appeal, *see* ECF No. 262, Defendants' legal analysis is misguided. That is, the question before the Court is not whether Defendants will succeed on appeal. Rather, the question is whether Defendants will succeed on the merits of the underlying case to justify lifting the temporary injunction.

Critically, the Court found that the at-large election system used by the City of Virginia Beach is unconstitutional because it dilutes the votes of Minority voters, and, thus, violates § 2(a) of the Voting Rights Act of 1965 ("VRA") and the Fifteenth Amendment. *See* ECF No. 242. Specifically, the Court found that Plaintiffs satisfied the *Gingles* preconditions and determined that "based on the totality of the circumstances, there [was] a violation of Section 2." *United States v. Charleston Cty.,* S.C., 365 F.3d at 345 (4th Cir. 2004); *see also,* ECF No. 242 at 38-132; *Thornburg v. Gingles,* 478 U.S. 30, at 44-45 (1986). Moreover, in conducting the totality of the circumstance's inquiry, the Court found substantial evidence in support of each of the nine Senate factors, and ultimately found that "Plaintiffs [] satisfied their burden of showing that the Minority Community has less opportunity than other members of the electorate to participate in the political process and elect their preferred candidates." *See id.* at 94.

7

While there is an appeal pending regarding the Court's aforementioned findings set out in its memorandum and opinion, *see* ECF Nos. 247, 250, the Fourth Circuit stayed Defendants' appeal because the Court has not issued final judgment as it still must fashion remedies. *See* ECF No. 266; *see also, Van Cauwenberghe v. Biard,* 486 U.S. 517, at 521–522 (1988) (holding that a decision is not final unless it "'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'") (quoting *Catlin v. United States,* 324 U.S. 229, 233 (1945)); *Swint v. Chambers County Comm'n,* 514 U.S. 35, 42, (1995) (A "final decisio[n]" is typically one "by which a district court disassociates itself from a case."); *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (holding the same).[3]

Accordingly, the Fourth Circuit appropriately denied Defendants' motion to expedite appeal proceedings because the Court has not yet concluded the remedies on this matter, and, thus proceedings are ongoing. Therefore, the Court need not consider whether Defendants' will likely succeed on appeal. *See also, e.g., Virginia Petroleum Jobbers Assn. v. FPC,* 104 U.S. App.D.C. 106, at 110 (1958); *Washington Metropolitan Area Comm'n v. Holiday Tours, Inc.,* 182 U.S. App. D.C. 220, at 221–222 (1977).[4]

---

[3] Although, once an appeal is filed district courts are divested from jurisdiction there are situations where the district court's are given jurisdiction to promote judicial efficiency and facilitate the division of labor between trial and appellate courts. *See, Doe v. Pub. Citizen,* 749 F.3d 246, 258-59 (4th Cir. 2014) (explaining that, after the filing of a notice of appeal, a federal district court is divested of jurisdiction to rule on matters related to the appeal unless such rulings "aid[ ] the appellate process"); *but see, e.g., Lytle v. Griffith,* 240 F.3d 404, 407 n. 2 (4th Cir.2001) (concluding that the district court's limited modification of an injunction appropriately "aided in th[e] appeal by relieving [the court] from considering the substance of an issue begotten merely from imprecise wording in the injunction"); *Fobian v. Storage Tech. Corp.,* 164 F.3d 887, 890 (4th Cir.1999) (holding that a district court is authorized, under the in aid of appeal exception, to entertain a Rule 60(b) motion after a party appeals the district court's judgment); *Grand Jury Proceedings Under Seal,* 947 F.2d at 1190 (holding that the district court retained jurisdiction to memorialize its oral opinions soon after a decision was rendered).

[4] However, the Court notes the Judiciary Act of 1789, 1 Stat. 73, "established the general principle that only final decisions of the federal district courts would be reviewable on appeal." *Carson v. American Brands, Inc.,* 450 U.S. 79, at 83 (1981) (emphasis deleted). Notably, § 1292(a)(1) gives the courts of appeals jurisdiction over "[i]nterlocutory orders of the district courts" "granting, continuing, modifying, refusing or dissolving injunctions," "except where a direct review may be had in the Supreme Court." *Abbott v. Perez*, 138 S. Ct. 2305, at 2319 (2018).

Therefore, the Defendants' have failed to show that they will succeed on the merits. Without a substantial case on the merits, Defendants' burden to demonstrate that the circumstances of this case warrant a stay is practically impossible. This is because, in order to carry their burden, the Defendants must provide sufficient proof to show that "the injury and harm, which would inure to their detriment as a result of the implementation of court-ordered relief, would be so overwhelming as to call into question the logic of the remedial plan itself." *United States v. State of La.*, 815 F. Supp. 947, 953 (E.D. La. 1993).

## B. Irreparable Injury to the Moving Party

Second, the Court finds that the Defendants will not suffer irreparable injury if the Court keeps the temporary injunction until it can establish a remedial and constitutional electoral system.

First, the injunction itself is an appropriate temporary measure in this case to prevent further injury to the public. As noted above, case law instructs that remediation of the § 2 violation is part of the judgment. Congress and federal courts have recognized that the appropriate remedy for a §2 violation in a single-member at-large districting scheme is to redraw district lines to create one or more additional districts in which minority voters can exercise electoral control. *See Bush v. Vera*, 517 U.S. 952, 977 (1996); *Shaw v. Hunt,* 517 U.S. 899, 914–15 (1996) (*Shaw II*); *De Grandy*, 512 U.S. at 1008. As Justice O'Connor stated in her concurring opinion in *Vera*,

> [W]here voting is racially polarized, § 2 prohibits States from adopting districting schemes that would have the effect that minority voters "have less opportunity than other members of the electorate to ... elect representatives of their choice." § 2(b). That principle may require a State to create a majority-minority district where the three *Gingles* factors are present....

*Vera,* 517 U.S. at 993 (first alteration in original). In this case, the litigation has not ended with respect to the merits of a remedy and, thus, the Court, at this stage does not have a judgment to execute. *Van Cauwenberghe v. Biard,* 486 U.S. 517, 521–522 (1988) (quoting *Catlin v. United*

9

*States,* 324 U.S. 229, 233 (1945)). A "final decisio[n]" is typically one "by which a district court disassociates itself from a case." *Swint v. Chambers County Comm'n,* 514 U.S. 35, 42, (1995). In the instant case, pursuant to Fed. R. Civ. P. 65, the Court specified that "any further use of the at-large system of election for the Virginia Beach City Council is hereby enjoined." *See* ECF No. 242 at 132. Subsequently, on May 12, 2021, the Court further elaborated by ordering the parties to submit proposed remedial plans by July 1, 2021 to redress the at-large system of election for the City of Virginia Beach. ECF No. 252. *See Abbott v. Perez,* 138 S. Ct. 2305, at 2321 (2018) (noting that the district court's "orders are unequivocal that the current legislative plans 'violate § 2 and the Fourteenth Amendment' and that these violations 'must be remedied.' Thus, the district Court's language had the practical effect of enjoining further use of the invalid legislative districts and, the court properly provided the state an opportunity to remedy.). On July 1, 2021, the Court denied Plaintiffs' motion to modify the remedial briefing schedule and ordered the parties to file their proposed remedial proposed plans, responses, and replies, all due by July 30, 2021. ECF No. 259. Subsequently, the parties filed their respective proposed remedies on July 1, 2021. ECF Nos. 260, 261.

Absent unusual circumstances, "such as where an impending election is imminent and a State's election machinery is already in progress," an injunction is the appropriate temporary remedy " to insure (*sic*) that no further elections are conducted under the invalid plan." *Reynolds v. Sims,* 377 U.S. 533, at 585 (1964). In such circumstances, the "a court is entitled to and should consider the proximity of a forthcoming election and the mechanics and complexities of state election laws, and should act and rely upon general equitable principles. With respect to the timing of relief, a court can reasonably endeavor to avoid a disruption of the election process which might result from requiring precipitat[ing] changes that could make unreasonable or embarrassing

demands on a State in adjusting to the requirements of the court's decree." *Id.* The Court notes that there were no special circumstances at the time the Court enjoined Defendants from using the invalid at-large district system.

However, the Court recognizes special circumstances may arise during the remedial proceedings. At the case at bar, while both parties have been participating in remedial proceedings, there has been an unexpected resignation on the City Council which presents such circumstances. Specifically, on July 2, 2021, Virginia Beach Councilmember Jessica Abbott announced her resignation from the Virginia Beach City Council, effective immediately, for health concerns. Ms. Abbott represented the Kempsville residency district. *See* ECF No. 262. Pursuant to Virginia Law, the City Council must now appoint an interim, temporary successor to fill the vacant seat. Next, the City is required to hold a special election "on the date of the next general election in November," November 2, 2021, to fill the remainder of Ms. Abbott's unexpired term of office. Va. Code Ann. § 24.2-228(A). The temporary successor, by law, cannot remain in office past that date. *Id.* at § 24.2-226. Moreover, pursuant to state law, the City must follow certain procedures and deadlines to fill the vacancy in November 2021. *See* ECF No. 262 at 4-5 (outlining the timeline that the City must follow starting on July 19, 2021 by filing a petition to the circuit court to issue a writ of election to fill the vacancy.).

Accordingly, Defendants argue that the injunction "would inflict irreparable harm on the City and the public" primarily because it frustrates the City's application of state law governing

·

11

elections, creates a council without a tie-breaking vote, and no alternative remedial plan would be in place by November 2021. ECF No. 262 at 8-15.[5]

The Court disagrees with Defendants' position and their legal analysis is, again, misguided. First, Defendants reliance on *Abbott v. Perez,* to argue that the Court's injunction frustrates application of a state law governing elections in the City, is inapplicable. In *Abbott v. Perez,* the Supreme Court overturned a three-judge court in the Western District of Texas which directed the State of Texas not to conduct its election using districting plans the district court previously developed for the 2012 elections, pursuant to a previous VRA case. *See Abbott v. Perez,* 138 S. Ct. at 2313 (2018); *see also, Perry v. Perez,* 565 U.S. 388, (2012). The three-judge panel repealed the State-approved 2011 plans and found that "they were tainted by discriminatory intent and that the 2013 Legislature had not 'cured' that 'taint.'" *Abbott v. Perez,* at 2313. The Supreme Court overturned the three-judge panel's repeal of the 2011 plans because the panel committed a "fundamental legal error" of shifting the burden onto the State to show that the 2013 Legislature did not act with discriminatory intent when it enacted the 2011 plans, and used them in the 2012, 2014, and 2016 elections, which the district court previously approved. *Id.* Therefore, the Supreme

---

[5] Defendants also cite to numerous cases for the proposition that "[c]ourts have, many times, found administration problems to weigh in favor of permitting an election to proceed under a challenged scheme, or even one held unlawful." However, Defendants legal analysis is, again, inapplicable because the cases they cite to are unlike to the facts, proceedings, and case at bar. *See* ECF No. 262 at 15. For example, in *Chisom v. Roemer,* 853 F.2d 1186, 1192 (5th Cir. 1988), the Fifth Circuit vacated a *preliminary injunction* that the district court imposed, after a panel rehearing, to enjoin the electoral system in an upcoming election *before* making any factual or legal conclusions. Defendants also cite to various orders where the Supreme Court vacated a lower court's injunction. However, these cases are also unalike to the circumstances at bar. For example, in *Gill v. Whitford,* 137 S. Ct. 2289, 198 L. Ed. 2d 697 (2017), the Supreme Court stayed the District Court's injunction of a districting plan created by the State legislature pending an appeal while the State legislature developed a remedial plan. *See also, Rucho v. Common Cause,* 138 S. Ct. 923, 199 L. Ed. 2d 619 (2018) (lifting a temporary injunction pending appeal in a case where the district court had placed knowing that the 2018 general election was months away in a case involving state-wide redistricting maps.); *North Carolina v. Covington,* 138 S. Ct. 974, 200 L. Ed. 2d 216 (2018) (similar procedural background involving state redistricting maps where an injunction by the district court was lifted pending appeal).

Court held that the three-judge panel's injunction of the 2011-districting plans was without merit. *Id.*[6]

Here, the Court has not committed a fundamental legal error of shifting the burden of proof. Rather, after a six-day bench trial, the Court meticulously examined the Plaintiffs and Defendants evidence, proposed finds of fact and law, and found that the Plaintiffs did satisfy their burden of proof and demonstrated that the City of Virginia's at-large district system is unconstitutional. Moreover, unlike *Abbott v. Perez,* to-date there have not been any court- or state-approved redistricting plans to remedy the City's unconstitutional at-large district. Critically, as noted above, the Court commenced remedial proceedings on July 1, 2021, and has provided both parties with the opportunity to remedy the constitutional violation. Therefore, the Court is not frustrating implementing of any court- and state-approved districting plans.

The Defendants further argue that it will have "...one less representative of voters to consider, deliberate on, and vote on the myriad issues before the Council. It also creates a governing body with an even number of representatives, without a tie-breaking vote." *See* ECF No. 262 at 9. Here, the Court considers *who* is allegedly being injured by maintaining the injunction and, most importantly, who is not. Notably, the injunction is designed to prevent the City Council from using an unconstitutional electoral system to elect other city council members and further harm the minority community. That is, the injunction is designed to thwart the Defendants' (i.e. the City Council and its governing members) unconstitutional electoral policies, procedures, and system to protect the public, particularly the minority community. The distinction is critical and one that Defendants failed to acknowledge.

---

[6] Moreover, the Court notes that the Defendants' argument that it is ordinary practice to suspend an injunction pending appeal of a district court enjoining state officials from enforcing state laws deemed unconstitutional, is irrelevant for the reasons stated in Section III.A. *See* ECF No. 262 at 8 (citing *Strange v. Searcy,* 135 S. Ct. 940, 940 (2015) (Thomas, J., dissenting).

While the Court recognizes that the City Council may find itself in special circumstances because of Ms. Abbott's sudden resignation, for reasons articulated below, the equities still do not weigh in favor of the Defendants to justify lifting the temporary injunction. Still, though the Court recognizes that being short one-representative may procedurally complicate matters for the Council members themselves, and increase their individual workload, the Court is not persuaded that the Council cannot carry out the people's business with only ten elected officials. Notably, the Defendants did not provide evidence showing that the Council can *only* effectively function with eleven-members or that there is constant gridlock requiring a tie-breaking vote. Moreover, pursuant to the City Charter "a majority of the council shall constitute a quorum for the transaction of business." CODE OF ORDINANCES, City of Virginia Beach, Ch. 3, §§ 3.06; 1973, Ch. 52, §1. Thus, the City can still vote, pass measures, and carry out their business. While the City Charter does not set out specific provisions for how the council can proceed with a ten-member council, the Court has not doubt that the Council has previously operated in the absence of city council members.

Even if the Court accepted the Defendants' claim that there would be an adverse effect upon the councils ability to conduct business in the absence of one-council member, the Court has to balance this claim of injury with the injury that would be inflicted upon the public if the Court did not provide a remedy to address to the constitutional violations it has found. The Court will balance these claims below in Section III.D.

Finally, Defendants argue that it would be injured because the remedial plan has not been developed yet and, thus, argues that "the only way under present law for the City to avoid losing a member of the City Council would be for the Court to rush out a remedial plan and to attempt to conduct the special election in November 2021 under that new plan. But such a strategy is

14

untenable and would impose its own form of irreparable harm on the City." *See* ECF No. 262 at 9-10. The Court disagrees with Defendants argument for three reasons. First, while it is true that the Court is currently in the process of developing a remedial plan, the Court will not "rush out a remedial plan" as Defendants allege because that would be an irresponsible and inappropriate manner to redress the City's longstanding violations of the minority community's constitutional rights, deeply steeped in a history of racial discrimination—namely the right to vote. As the Court recognized in its memorandum and opinion, ECF No. 242, though the City's at-large district has been in place since 1966, the City has elected *only five* Black Councilmembers and *one* Asian-American. ECF No. 190 at ⁋ 25. Moreover, the Court found that the City's policies and procedures dilute the votes of the minority community. Additionally, the Court notes that no Black Councilmember had ever been re-elected. Second, the argument that the City is harmed by the Court's methodical remedial procedure dismisses, or at least obscures, the harm the city's electoral system has inflicted on the minority community. Accordingly, if the Court were to allow a special election to occur under the current invalid and unconstitutional system, the Court could further harm the City's minority community. Finally, as examined in Senate Factor Eight in the Court's memorandum and opinion, there is substantial evidence showing that, under the currently electoral system, the City has been consistently unresponsive to the economic and social needs of the Minority Community (e.g. Burton Station, the Disparity). *See* ECF No. 242 at 122- 131. This finding severely undercuts the Defendants' present argument that a ten-member city council is harmful to the residents of Virginia Beach because on balance a special election could further be harmful to the minority community.

Overall, in carefully weighing the City Councils' challenges in temporarily having a ten-member board with the historic, and possibly ongoing, harms the council has inflicted on the

minority community via the unconstitutional electoral system, the Court finds that any injury to the

Council is not irreparable. Still, the Court recognizes that a ten-member board is not ideal and will

move as expeditiously as possible to craft a remedial plan. Critically, however, the Defendants

have not provided evidence that a stay is justified "...by clear and convincing circumstances [and

that a stay] outweigh[s] potential harm to the party against whom it is operative." *Williford v.

Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983); *see also, Int'l Refugee Assistance

Project v. Trump*, 323 F. Supp. 3d 726, 731 (D. Md. 2018). The Court further notes that the parties

may revisit any injury inflicted by a temporary ten-member Council should evidence arise.

### C. Substantial Injury to Non-Movant

The Court does not agree with Plaintiffs' acceptance of the modification. As noted in the

Court's memorandum and opinion, the Plaintiffs' brought a suit on behalf of the minority

community of Virginia Beach alleging that the City's at-large electoral system dilutes the votes of

the minority community in violation of § 2 of the VRA. The Court found substantial evidence

supporting factual and legal findings demonstrating constitutional violations. Thus, the Court is

puzzled on Plaintiff's counsel position in response to the Defendants motion. First, while Plaintiffs

accept that a modification of the injunction is appropriate, their reasoning is based on speculating

the outcome of the Kempsville November 2021 special election and recognition that a special

election might be contrary to the minority community's interests. That is, Plaintiffs write that:

> If the candidate elected in the November 2021 Kempsville special election resides
> in the area shown in the red circle (or potentially nearby), then it *is* likely that this
> Court's remedial plan will be affected by the special election. This is so because
> Ms. Abbott's term was set to expire in 2024, and therefore it is possible a special
> election will yield a new incumbent, potentially one disfavored by the minority
> community who resides in one of the Section 2 remedial districts ordered by the
> Court and who would remain in office through 2024.

ECF No. 263 at 4 (emphasis in original). However, Plaintiffs then acknowledge that since the "bulk of the Kempsville district is outside the geography likely to be included in the Court's remedial plan...it is likelier than not that the prevailing candidate will reside in the portion of the district outside..." where the majority of the minority community resides. *Id.* Plaintiffs also previously note that a proposed remedial plan includes a portion of the Kempsville district which "contains nearly 18,000 people, with a citizen voting age populations ("CVAP") that is 45.8% Black, 9.3% Hispanic, 5.9% Asian, and 37.1% white." *Id.* Accordingly, Plaintiffs' lack of opposition is based on two flaws. First, Plaintiffs speculate that it is "likelier" that the elected candidate of the Kempsville special election would not be from the minority community, and, thus, this reasoning is speculative. Second, Plaintiffs' reasoning reinforces the logic behind the unconstitutional electoral system. That is, since the Kempsville district is drawn in a way that dilutes the votes of minorities, they are significantly less likely to elect a minority preferred candidate of their choice. As the Court noted in its memorandum and opinion, based on evidence that Plaintiffs presented, there is strong evidence of minority cohesive voting in the 2012 and 2016 voting with some evidence of white bloc voting. *See* ECF No. 242 at 75-76.

Specifically, the Court noted that in the 2012 election for the Kempsville District, Dr. Ross-Hammond (a Black woman), received about 65% (EI) of the all minority vote and 87% (EI) support from Black voters but less than 20% from white voters. *See* ECF No. 242 at 75 (citing P-0077 at 20-21). Thus, there was evidence of minority cohesive voting and Dr. Ross-Hammond became only the third Black member of the City Council in its fifty-five-year history. *Id.* However, in 2016, candidate Ross-Hammond lost re-election. Based on Dr. Spencer's analysis, Ross-Hammond was the preferred candidate of choice for all minority voters, with 59% (EI), and Black voters with 77% (EI) support. *Id.* (citing P-0077 at 16). However, Ross-Hammond received

low white voter support, with 33% (EI). P-0077 at 15-16. On the other hand, her opponent, Jessica Abbot (a white woman) received 69% (EI) of the white vote but less than 40% of the all minority vote and less than 38% of Black vote. *Id.*

Critically, as the Court noted in its analysis, Dr. Ross-Hammond credibly testified at trial that she lost the election in large part due to the split between white and minority voters on the issue of expanding the light rail. *See* Tr. 728:5-16 (Dr. Ross-Hammond supported the light rail and this issue "played a major part" in her re-election loss in 2016.); *see also,* DTX163 (Abbott Dep.) at 162:1-3 (Jessica Abbott, opposed light rail). Ultimately, the Court concluded that "[a]lthough [Dr. Ross-Hammond] had large support from the Minority Community in 2012 and 2016, she only won in 2012 because the white vote was split between three candidates and then lost in 2016 because the white vote consolidated to support her opponent and, thus, block her re-election." ECF No. 242 at 90.

Therefore, the record shows the Kempsville is a district with a history of minority cohesive voting and some evidence of white bloc voting. Accordingly, it is a district that contributes to violating the minority community's right to vote. Therefore, Plaintiffs lack of opposition to Defendants' motion, is incongruent with the evidence in the record. Most of all, if the Court abided by the Plaintiffs' acceptance of the special election, the Court risks further perpetuating the dilution of minority voters in the Kempsville district.

Ultimately, the Court finds that there would be substantial injury to the Plaintiffs', notably the minority community in the Kempsville district if the Court allowed the November 2021 election to occur by lifting the temporary injunction.

18

### D. Public Interest

For the reasons articulated above, the Court finds that it would not be in the public interest to lift the temporary injunction and allow a special election for the Kempsville District in November 2021. Defendants argue that:

> [t]he public's interest lies in favor of an eleven-member Council, not a ten-member Council. The public's interest also lies in favor of being permitted to vote in an election for the vacant seat, not in being denied the opportunity to vote. And the public interest lies in favor of election order, not election chaos.

ECF No. 262 at 17. Additionally, Defendants argue that the public interest would not be served by rushing out a remedial plan. *Id.* at 18. Further, Defendants contend that the public interest could be potentially harmed with the remedial districts because it is unclear, at this time, what their final composition will be. *Id.*

In order to exercise its discretion within the bounds of the law, a district court must "weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, at 254 (1936). As detailed in the Court's memorandum and opinion, *see* ECF No. 242, the current electoral system has demonstrated evidence of harming the minority community of Virginia Beach because it dilutes their votes in violation of the Voting Rights Act. While the Court recognizes that it is currently in remedial proceedings, the Court found that the City Council has not been responsive to the needs of the minority community. Accordingly, on balance, the Court finds that while the city council may face challenges in operating a ten-member board, it is ultimately not in the public interest to hold a special election using an invalid system because it substantially risks further infringing the constitutional rights of the minority community.

19

### E. Additional Factors

As noted above in section III.A, since the motion for a stay is situated before appeal and during ongoing remedial proceedings, the Court may also examine Defendants' request pursuant to other factors for granting a stay. *See, Ctr. for Int'l Envtl. Law v. Office of the U.S. Trade Representative*, 240 F. Supp. 2d 21, 22–23 (D.D.C. 2003) (considering, among other factors, that "this case presents an issue of first impression").

The Court notes that the following factors provide the Court with greater discretion for granting or denying a stay, and, so, it examines them in the alternative to the more rigid test articulated above. Typically, when a moving party requests the court to stay ongoing proceedings, sister courts have also considered "(1) the length of the requested stay; (2) the hardship or inequity that the movant would face in going forward with the litigation; (3) the injury that a stay would inflict upon the non-movant; and (4) whether a stay would simplify issues and promote judicial economy." *Rajput v. Synchrony*, 221 F. Supp. 3d 607, 609-10 (M.D. Pa. 2016); *CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.*, 381 F.3d 131, 135–36 (3d Cir. 2004); *see also, Int'l Refugee Assistance Project v. Trump*, 323 F. Supp. 3d 726, 731 (D. Md. 2018) (stating that "When considering a discretionary motion to stay, courts typically examine three factors: (1) the impact on the orderly course of justice, sometimes referred to as judicial economy, measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected from a stay; (2) the hardship to the moving party if the case is not stayed; and (3) the potential damage or prejudice to the non-moving party if a stay is granted.") (citing *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005); *see also*, *Ortega Trujillo v. Conover & Co. Commc'ns, Inc.*, 221 F.3d 1262, 1265 (11th Cir. 2000) ("[T]he interests of judicial economy alone are insufficient to justify ... an indefinite stay"); *see also*,

20

In considering these additional factors, the Court has already discussed two at-length: 2) the hardship or inequity that the movant would face in going forward with the litigation and (3) the injury that a stay would inflict upon the non-movant. Thus, Court will examine the remaining additional factors.

First, regarding length of the stay, at first glance, Defendants only appear to request a stay until the November 2021 special election, which initially appears unproblematic. *See* ECF No. 262. However, upon further inspection, there is disagreement between the parties regarding how long the stay would apply to the Kempsville district after the special election. That is, Defendants and Plaintiffs disagree about how long the winning elected councilmember for the Kempsville district should be allowed to hold office. On the one hand, Plaintiffs state that it "reserves the right, [] as part of the remedial proceeding, to seek an order [] truncating the term of the candidate elected in the November 2021 special election in the event that the winning candidate resides in one of the Section 2 remedial districts ordered by the Court." ECF No. 263 at 4. On the other hand, Defendants "intend to oppose future requests to alter term lengths of any members." ECF No. 262 at 2. In all, the Court finds that Defendants are functionally asking the Court to stay the injunction until 2024 so that the winning candidate for the Kempsville district can serve a full term. While the Court is cautious to attribute any ulterior motivate behind Defendants request to keep the winning Kempsville candidate in office until 2024, the Court notes that it has factually determined that the City's electoral system, policies, and procedures have a long-history of racial discrimination and undermining the constitutional rights of the minority community. Critically, Defendants have signaled that, even if the Court allowed a stay, Defendants would oppose any equitable measures to limit the winning candidate's term to abide by any Court ordered remedial plan.

Case 2:18-cv-00069-RAJ-DEM Document 269 Filed 07/19/21 Page 22 of 22 PageID# 9313

Second, the Court finds that a stay would not simplify issues and promote judicial economy. As previously noted, the Court has initiated remedial proceedings and has requested that both parties submit their briefings by July 30, 2021. While the Court will not rush remedial proceedings, the Court finds that a stay would negatively impact remedial proceedings as it will detract the from the Court and parties time from crafting a remedial plan. *See Chapman v. Meier*, 420 U.S. 1, 27, 95 S.Ct. 751, 42 L.Ed.2d 766 (1975) (holding that if a state fails to enact "a constitutionally acceptable" remedial districting plan, "the responsibility falls on the District Court"); *Reynolds*, 377 U.S. at 586, 84 S.Ct. 1362 (holding that a district court "acted in a most proper and commendable manner" by imposing its own remedial districting plan, after the district court concluded that the remedial plan adopted by state legislature failed to remedy constitutional violation).

## IV.    CONCLUSION

Therefore, for the foregoing reasons, Defendants' Motion, ECF No. 262, is **DENIED.**

The Clerk is **DIRECTED** to electronically provide this Order to all parties.

**IT IS SO ORDERED**

Norfolk, Virginia
July  / 9 , 2021

UNITED STATES DISTRICT JUDGE

22