UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

LATASHA HOLLOWAY et. al.,
    Plaintiffs,

v.                                        CIVIL ACTION NO. 2:18-cv-69

CITY OF VIRGINIA BEACH, et. al.,

    Defendants.

*MEMORANDUM OPINION AND ORDER*

Before the Court are Plaintiffs Latasha Holloway and Georgia Allen's Motion for Relief from Judgment Pursuant to Federal Rules of Civil Procedure Rule 60(b)(5) and (6) against Defendants City of Virginia Beach, the Virginia Beach City Council, individual members of the City Council, the City Manager, and the Director of Elections (the "City"). ECF No. 322 ("Pls.' Mot."). Defendants responded in opposition. ECF No. 327 ("Defs.' Resp."). Plaintiffs filed a Reply. ECF No. 329 ("Pls.' Reply."). The Court held a hearing on this Motion on June 16, 2025. *See* Excerpt of Proceedings, ECF No. 337. Having carefully reviewed the parties' briefs, the Court finds this matter ripe for judicial determination. For the reasons set forth below, Plaintiffs' Motion for Relief is **GRANTED**.

## I. FACTUAL AND PROCEDURAL HISTORY

On November 13, 2018, Plaintiff Holloway, a Black registered voter and resident of Virginia Beach, Virginia, and Plaintiff Georgia Allen, a Black registered voter and resident of Virginia Beach, Virginia, and an unsuccessful candidate for an at-large seat on Virginia Beach City Council ("City Council") filed an Amended Complaint against Defendants alleging a violation under Section 2 of the Voting Rights Act ("VRA") of 1965. ECF No. 62. Specifically,

1

Plaintiffs argued that Defendants at-large election scheme denied Black, Hispanic or Latino, and Asian American voters ("Minority voters") an equal opportunity to participate in the election process and elect representatives of their choice. *Id.*

On October 6, 2020, a six-day bench trial began before the Court, and the Court deferred ruling by opinion and order. ECF Nos. 209–16. On March 22, 2021, Defendants filed a Notice of New Authority that affected this case. ECF No. 240. In the Notice, Defendants stated that on March 18, 2021, former Governor Ralph Northam signed House Bill 2198 ("HB 2198") into law, which amended "Section 24.2-222 of the Virginia Code to, in relevant part, prohibit at-large voting for candidates 'in a city or town that imposes district-based or ward-based residency requirements for members of the city or town council.'" *Id.* Accordingly, Defendants argued HB 2198 mooted Plaintiffs' challenge to the at-large election scheme because of the change in the law. *Id.*

On March 31, 2021, the Court issued its Memorandum Opinion and Order and found Defendants' at-large election scheme illegal and enjoined Defendants from any further use of the at-large system. ECF No. 242. On April 29, 2021, Defendants appealed the Court's Opinion and Order to the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit"). ECF No. 247. While the appeal was pending, on May 12, 2021, the Court issued an Order directing the parties to submit proposed remedial plans to redress the at-large election system for the Virginia Beach City Council. ECF No. 252. On August 29, 2021, the Court appointed Dr. Bernard N. Grofman as Special Master in this case. ECF No. 275. On December 22, 2021, the Court adopted the Special Master's 10-1 election plan as the appropriate remedy and ordered Defendants to implement the plan immediately.[1] ECF No. 290.

---

[1] Special Master Dr. Grofman reviewed Defendants' proposed 7-3-1 system and rejected it on multiple grounds because it would not yield three minority districts, and it would likely violate Section 2 of the VRA. ECF No. 281-1 at 25–26.

2

On December 27, 2021, Defendants appealed to the Fourth Circuit. ECF No. 292. On July 27, 2022, the Fourth Circuit issued its opinion, vacating the Court's decision. ECF No. 303. The Fourth Circuit stated that the at-large system no longer governs elections in Virginia Beach, and remanded the case for the Court to consider any residual claims Plaintiffs may have against Defendants' new method for electing its City Council, and to consider whether "[P]laintiffs should be granted leave to amend their complaint, or develop the record more fully, to bring any challenges as part of this proceeding." *Id.* After the remand, Plaintiffs filed a Motion to Stay Proceedings, and Defendants filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction. ECF Nos. 306, 307. On November 15, 2022, the Court granted Plaintiffs' Motion to Stay but denied Defendants' Motion to Dismiss. ECF No. 314.

On September 6, 2023, Defendants filed a Notice of City Council Action on Redistricting. ECF No. 317. In the Notice, Defendants stated that the City Council adopted Ordinance No. 74565, which "adopted a redistricting plan and authorized the implementation of a ten single-member district system of local elections" that Special Master Dr. Bernard Grofman had drawn. *Id.* Defendants also outlined the steps they planned to take to implement the 10-1 election system, including requesting a charter change from the Virginia General Assembly. *Id.* On November 27, 2023, the parties filed a Stipulation of Dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). ECF No. 318.

On April 28, 2025, Plaintiffs filed a Motion for Relief from Judgment pursuant to Rule 60(b). According to the Motion, a group of litigants (the "*Branch* Plaintiffs") filed a state court lawsuit challenging Defendants "adoption of the 10-1 system as a violation of the Dillon Rule, a state rule that requires charter changes to occur by the General Assembly rather than by the city itself." *Id.* at 4; *see also Branch, et. al. v. City of Virginia Beach, et. al.*, Case No. CL24-322 (Cir.

Ct. for the City of Virginia Beach Jan. 24, 2024). Defendants filed a response arguing "in defense of the 10-1 system and against the implementation of a 7-3-1 system on both state and federal law grounds." Pls.' Mot. at 4. On May 1, 2024, Plaintiffs filed an amicus brief in support of Defendants in the *Branch* litigation. *Id.* "On August 19, 2024, the state court denied Defendants' demurrer and special pleas in bar . . . reserving final ruling on whether Virginia's state law Voting Rights Act could require the City to depart from the 7-3-1 system set forth in its charter." *Id.* at 5.

"On March 24, 2025, [the] *Branch* Plaintiffs filed a Motion for Summary Judgment, seeking '[a]n order mandating that the Defendants adopt the 7-3-1 System' and 'reinstitute the three at-large seats on City Council.'" *Id.* On April 3, 2025, Defendants filed a motion to join Plaintiffs in the *Branch* litigation as necessary parties and allegedly "[attempted] to force Plaintiffs . . . to argue their *federal VRA claims* against the 7-3-1 system as a part of the Dillon Rule litigation in Virginia state court."[2] *Id.* at 5. Plaintiffs filed a response opposing the joinder, and Defendants replied allegedly asserting that they were seeking to forcibly join Plaintiffs in the *Branch* litigation and require them to assert their federal VRA defenses against the *Branch* Plaintiffs state law claims. *Id.* at 6.

Additionally, Plaintiffs argue that Defendants are no longer taking the steps to implement the 10-1 election system. *Id.* "For example, '[o]n April 1, 2025, the Virginia Beach City Council directed City staff to prepare a resolution for a public hearing on a potential referendum' regarding the City's system of election, specifically asking whether to continue using the 10-1 system or whether voters instead favor the 7-3-1 system." *Id.* Further, Plaintiffs assert that Defendants voted

---

[2] On June 3, 2025, Defendants filed a Notice of Supplemental Authority informing the Court that the state court in the *Branch* case denied their motion to join Plaintiffs as parties to the suit. ECF No. 330. Thus, the City's joinder motion is no longer at issue.

4

against a charter change to include the 10-1 system in its most recent legislative agenda to the Virginia General Assembly. *Id.* at 6–7.

On May 12, 2025, Defendants filed a response in opposition. On May 19, 2025, Plaintiffs filed a reply.

On June 16, 2025, the Court held a hearing on this Motion. During the hearing, Plaintiffs asserted that Defendants were no longer adhering to the representations they previously made to the Court. *See* Excerpt of Proceedings at 3–4. Specifically, Plaintiffs noted that Defendants had ceased efforts to pursue the charter change, voted against a second submission of the charter change to the Virginia General Assembly, and voted to have a referendum of the city to decide whether they want the 7-3-1 or the 10-1 election system. *Id.* Defendants, in response, argued that they did not make any future promises after dismissing this case. *Id.* at 8. However, as the Court noted during the hearing, Defendants did represent to Plaintiffs and the Court that they were ending their contest of this litigation and adopting the 10-1 system. *Id.*

Further, Defendants stated that the City did not include the request to change the charter in its legislative agenda because it thought it would be futile since Governor Glenn Youngkin vetoed the legislation twice and the pendency of the *Branch* litigation. *Id.* at 9. Additionally, the City Attorney informed the Court that he was not involved in drafting the referendum and that private individuals were opposing the proposed charter change. *Id.* at 11–12. At the end of the hearing, the Court ruled from the bench, granting Plaintiffs' Motion for Relief. *Id.* at 15–16.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 41(a)

FRCP Rule 41(a)(1)(A)(ii) provides, "the plaintiff may dismiss an action without a court order by filing . . . a stipulation of dismissal signed by all parties who have appeared." The dismissal is without prejudice unless stated otherwise. Fed. R. Civ. P. 41(a)(1)(B)

### B. Federal Rule of Civil Procedure 60(b)(5) and (6)

FRCP Rule 60(b) provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> **(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or**
> **(6) any other reason that justifies relief.**

The Rule 60(b)(5) "'standard to be applied in determining whether an order or judgment has prospective application within the meaning of Rule 60(b)(5) is whether it is 'executory' or involves 'the supervision of changing conduct or conditions.'" *Schwartz v. United States*, 129 F.R.D. 117, 122 (D. Md. 1990), *aff'd*, 976 F.2d 213 (4th Cir. 1992) (citing *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1138 (D.C. Cir. 1988)). "Rule 60(b)(5) may not be used to challenge the legal conclusions on which a prior judgment or order rests, but the Rule provides a means by which a party can ask a court to modify or vacate a judgment or order if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'" *Horne v. Flores*, 557 U.S. 433, 447 (2009).

Rule 60(b)(6) allows a court to relieve a party from final judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Although Rule 60(b)(6) is a catch-all provision, "a motion under 60(b)(6) may not be granted absent extraordinary circumstances." *Murchison v. Astrue*, 466 F. App'x 225, 229 (4th Cir. 2012). "In determining whether extraordinary circumstances are present, a court may consider a wide range of factors. These may include, in an appropriate case, 'the risk of injustice to the parties' and 'the risk of undermining the public's confidence in the judicial process.'" *Buck v. Davis*, 580 U.S. 100, 123 (2017). A party must raise a Rule 60(b) motion within a reasonable time and not more than a year after entering the judgment for reasons one through three. Fed. R. Civ. P. 60(c)(1).

### III. DISCUSSION

#### i. Vacating the dismissal order is warranted under Federal Rule 60(b).

Plaintiffs argue that the Court may reopen this case under Rule 60(b)(5) or (6). The Court will analyze Plaintiffs' arguments under both sections, beginning with Rule 60(b)(6). For the reasons stated below, the Court finds that relief is warranted under both Rule 60(b)(5) and (6) and will grant Plaintiffs' Motion for Relief and reopen this case.[3]

##### a. *Extraordinary circumstances warrant vacating the dismissal order under Federal Rule 60(b)(6).*

Plaintiffs assert that they would "face a significant 'risk of injustice' should this Court decline to vacate the [stipulation of dismissal order because it would] prevent Plaintiffs from bringing their federal claims before this Court." Pls.' Mot. at 10. Plaintiffs state that this Court is familiar with the procedural history of this case and note, as the Fourth Circuit emphasized on

---

[3] The Court notes that Plaintiffs' Motion is timely under Rule 60(c)(1). Plaintiffs filed this Motion a few days after Defendants filed their reply in state court, Pls.' Mot. Ex. 9, and the vote on the referendum regarding which election system to use. Pls.' Mot. At 12–13. Therefore, Plaintiffs' Motion is timely.

remand, that Plaintiffs may pursue claims against the City should it proceed with implementing the 7-3-1 system. *Id.* at 11. As Special Master Dr. Grofman explained in his report, the "7-3-1 system can only produce two minority opportunity districts, while having three minority opportunity districts 'appears to be mandated' to correct the vote dilution injury here." *Id.*

As such, Plaintiffs voluntarily dismissed this case in reliance on Defendants' representations that they will adopt the 10-1 system, thereby eliminating the need to challenge the 7-3-1 system. *Id.* at 12. However, the 7-3-1 system remains in effect as modified by HB 2198. *Id.* Accordingly, vacating the dismissal and returning to the status quo allows Plaintiffs "'to prove [their] case and obtain [their] relief on the merits of the underlying claims.'" *Id.*

Defendants argue that Plaintiffs' claims are unripe against the 7-3-1 system. Defs.' Resp. at 4. Defendants state that the City is not currently using the 7-3-1 system and has been using the preferred 10-1 system for the past two elections. *Id.* As such, Defendants assert that any opinion the Court issues on the 7-3-1 system would be an advisory opinion. *Id.* Moreover, even if the state court compelled Defendants to adopt the 7-3-1 system, "Plaintiffs might end up with no viable claim against the particular 7-3-1 plan it adopts." *Id.* at 5. Defendants maintain that there are numerous ways to draw the 7-3-1 system that could yield three minority opportunity districts using the latest census data rather than the data the Special Master previously relied on. *Id.* at 6. Further, Defendants argue that holding a referendum allows voters to vote on the system they prefer and request a charter change using that avenue because it would be "inconsistent with democratic principles, for the General Assembly to rebuff a charter change requested by the very people subject to the charter." *Id.* at 9.

Defendants also argue that even if Plaintiffs satisfied the threshold conditions under Rule 60(b), they fail to justify relief. *Id.* at 12. Plaintiffs' dismissal was a litigation tactic and Rule 60(b)(6) does not relieve them from their consequences. *Id.* at 16.

Rule 60(b)(6) applies "when the asserted grounds for relief are not recognized in clauses (1)–(5) of the Rule and there are extraordinary circumstances justifying relief . . . [A]s a general matter, a mere change in decisional law does not constitute an extraordinary circumstance for the purposes of Rule 60(b)(6), and the interest in finality outweighs the losing party's concern that justice was not done." *Tapper v. Hearn*, 833 F.3d 166, 172 (2d Cir. 2016) (internal citation and quotation omitted). "It is clear, for example, that a more compelling showing of inequity or hardship is necessary to warrant relief under subsection (6) than under subsection (5); otherwise, the ready availability of subsection (6) would make meaningless the limitation of subsection (5) to judgments with prospective application." *Twelve John Does*, 841 F.2d at 1140. However, "strategic decisions made during the course of litigation provide no basis for relief under 60(b)(6), even though with hindsight they appear wrong." *Schwartz*, 976 F.2d at 218.

The Court finds that there are extraordinary circumstances justifying relief. In *Fairfax Countywide Citizens Ass'n v. Fairfax Cunty, Va.*, 571 F.2d 1299 (4th Cir. 1978), the plaintiffs entered into two separate settlement agreements, one with the state and the other with the county, to improve the streets and roads in Black neighborhoods. *Id.* at 1301. The parties eventually dismissed the case, and the dismissal order made no mention of the settlement agreements. *Id.* While the state performed its obligations under the agreement, the county did not. *Id.* The court held that "upon repudiation of a settlement agreement which had terminated litigation pending before it, a district court has the authority under Rule 60(b)(6) to vacate its prior dismissal order and restore the case to its docket." *Id.* at 1302–03.

While there was no settlement agreement in this case, Defendants, like the county in *Fairfax*, made representations to the Court through a Notice of City Council Action on Redistricting, ECF No. 317, and during a telephonic conference on October 20, 2023, *see* Docket Sheet, of the precise steps they would take to dismantle the previous system that diluted minority voting strength. Relying on these concrete representations, Plaintiffs agreed to voluntarily dismiss this case, trusting that Defendants were acting in good faith to comply with Section 2 of the VRA. Defendants even stated on the record that they committed to the representations made to Plaintiffs and the Court and fulfilled their promises. *See* Excerpt of Proceedings at 8:7–12. Now, however, Defendants have unilaterally reversed course. They have abandoned efforts to request the necessary charter change and are actively circumventing this Court's authority by seeking a ruling from a state court to decide whether to enforce the discredited 7-3-1 election system—a system this Court, based on Special Master Dr. Grofman's findings, has already indicated violates federal law. Nevertheless, Defendants are actively avoiding the promises made to the Court and Plaintiffs when Plaintiffs decided to dismiss this case. These actions fail to demonstrate the level of commitment Defendants made to the Court.

Furthermore, Defendants informed the Court that they removed the proposed charter change from the legislative agenda because they believed pursuing it would be futile, citing the Governor's veto and the *Branch* litigation. *See* Excerpt of Proceedings at 9:12–17. However, rather than adhering to the plan Defendants promised Plaintiffs and the Court, Defendants are now pursuing a referendum that presents voters with a binary choice between the 7-3-1 system and the 10-1 system. *Id.* at 10. This referendum is problematic for a variety of reasons. First, the City previously surveyed the public, which showed 81% of the public supports the 10-1 system. ECF No. 317 at Ex. 1. Second, this referendum invites the public to legitimize a system that would

10

violate Section 2 of the VRA, specifically, the voting rights of minorities. *See* ECF No. 281-1 at 25–26.

Also, Defendants admitted on the record that the City Attorney of Virginia Beach was not involved in drafting the language in the referendum, which includes the 7-3-1 system that the Court previously determined to be dilutive of the minority population. *See* Excerpt of Proceedings at 11:13–18. Defendants also conceded that private individuals have been exerting significant influence over the City's ability to implement electoral changes, which has impeded the passage of a lawful charter amendment. *Id.* at 11–12.

These facts strongly support the continued need for judicial oversight. Defendants' conduct reflects not a mere lapse in execution but an intentional effort to avoid compliance with federal law and subvert a lawful electoral remedy. Accordingly, the Court finds that vacating the dismissal order is warranted under Rule 60(b)(6). Ultimately, "[t]his restores the litigants to the status quo ante and allows . . . [Plaintiffs] to prove [their] case and obtain . . . relief on the merits of the underlying claim." *Fairfax Countywide Citizens Ass'n.*, 571 F.2d at 1306. Thus, Plaintiffs' Motion for Relief under Rule 60(b)(6) is granted.

### b. *The dismissal order retains prospective effect because the factual conditions have changed under Rule 60(b)(5).*

The Court further finds that vacatur is warranted under Rule 60(b)(5). As described above, Plaintiffs contend that there has been a significant change in the factual circumstances since they voluntarily dismissed this case. Pls.' Mot. at 8. Specifically, Plaintiffs argue that maintaining dismissal would be detrimental to the public interest. *Id.*; *see* Excerpt of Proceedings at 6. Plaintiffs also assert that the dismissal order has prospective application because it is executory. *See* Excerpt of Proceedings at 5:8–13. According to Plaintiffs, the order was predicated on specific

11

representations Defendants made—both in filings and during a telephonic conference—regarding the steps they would take to implement the 10-1 system. *Id.* at 5. In light of Defendants' failure to follow through on their representations, Plaintiffs argue that maintaining the dismissal order would undermine the goals of the VRA and prevent Defendants from implementing a legitimate electoral system. *Id.* at 6.

Defendants counter that the dismissal order lacks prospective effect because the Court did not issue a final judgment enjoining the 7-3-1 system, and the Fourth Circuit vacated the final judgment the Court issued. Defs.' Resp. at 14. Additionally, Defendants note that the dismissal order did not expressly provide for retention of this Court's jurisdiction and ongoing supervision of the City's electoral system. *Id.*

The Court finds Plaintiffs' argument regarding the dismissal order being executory unpersuasive. The dismissal order does not include or reference any obligations for Defendants to take specific actions towards implementing the 10-1 system. In *Schwartz v. United States*, 976 F.2d 213 (4th Cir. 1992), an indictment charged Irvin Kovens, who operated a racetrack, with racketeering activity. *Id.* at 215. The Government believed Schwartz owned an interest in the racetrack as a cover for Kovens. *Id.* A jury found Kovens guilty, and an order was entered ordering Kovens to forfeit his interest in the stock. *Id.* Schwartz filed a suit for declaratory judgment, seeking ownership of the stock. *Id.* The parties reached a settlement, and later, Schwartz sought relief from the settlement under Rule 60(b)(5) because Kovens' conviction was eventually no longer valid. *Id.* at 216. The Fourth Circuit found "that the order has no prospective application. No contention [was] made that the few duties required by the order were not immediately carried out, or that there [was] anything left to do under that order." *Id.* at 218.

As in *Schwartz*, the dismissal order here did not impose ongoing duties or require further implementation because "'[t]here was nothing for the court to implement after' it entered the order." *Griffin v. Sec'y, Fla. Dep't of Corr.*, 787 F.3d 1086, 1092 (11th Cir. 2015). "Virtually every court order causes at least some reverberations into the future, and has, in that literal sense, some prospective effect . . . That a court's action has continuing consequences, however, does not necessarily mean that it has 'prospective application' for the purposes of Rule 60(b)(5)." *Twelve John Does*, 841 F.2d at 1138.

However, while the order itself may not have imposed continuing obligations, the factual conditions under which it was entered have changed so significantly that continued enforcement would now be inequitable. Plaintiffs agreed to voluntarily dismiss this case without prejudice solely in reliance on Defendants' explicit representations that they would implement the 10-1 election system. These were not mere or vague intentions; they were concrete assurances forming the basis for Plaintiffs' consent to dismissal. *See* ECF No. 317. Rather than honoring those representations, Defendants have materially misled both Plaintiffs and the Court. Defendants ceased their efforts to pursue the charter change and initiated a referendum process in the November 2025 election to include the 7-3-1 system as a viable option for voters.

Furthermore, Defendants shifted their litigation posture in *Branch*, where they now seek finality regardless of the election system adopted, further underscoring their retreat from the representations made to this Court and Plaintiffs. *See* Pls.' Mot. Ex. 6 at 5; Pls.' Mot. Ex. 7 at 1–2; Defs.' Mot. at 6. Such actions constitute a material change in circumstances. Maintaining the dismissal under these conditions would be detrimental to the public interest when they, the voters, deserve a legitimate electoral system that complies with the VRA. As Rule 60(b)(5) provides, relief is appropriate where "applying [the dismissal order] prospectively is no longer equitable." Given

13

the significant changes in fact since filing the dismissal, the Court concludes that continued enforcement of this order is no longer equitable. Therefore, Plaintiffs' Motion for Relief under Rule 60(b)(5) is granted.

> ii. **The Court will reopen this case as Plaintiffs have satisfied the requirements under Rule 60(b) and voluntarily dismissed this case without prejudice.**

The Court may reopen this case under Rule 60(b) when the rule's requirements are satisfied. A Rule 41(a) voluntary dismissal without prejudice is a "final proceeding" within the meaning of Rule 60(b). *Waetzig v. Halliburton Energy Servs., Inc.*, 145 S. Ct. 690, 700 (2025). Here, the parties jointly filed a Stipulation of Dismissal under Rule 41(a)(1)(A)(ii), dismissing this case without prejudice. As such, the dismissal qualifies as a final proceeding subject to Rule 60(b). For the reasons set forth above, Plaintiffs have demonstrated that the criteria for relief under Rule 60(b) have been satisfied, and the Court will reopen this case.

## IV. CONCLUSION

For the reasons stated above, Plaintiffs' Motion is **GRANTED**. ECF No. 322. The Court **GRANTS** Plaintiffs leave to file any pleadings they deem appropriate to vindicate the rights of the citizens of Virginia Beach within **THIRTY (30) DAYS** from the date of this Order.

The Court **DIRECTS** the Clerk to provide a copy of this Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
July 8, 2025

Raymond A. Jackson
United States District Judge